## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

Karenza Clincy, Erica Hammond,
Jammie Parker, Kiesha Pough,
Kimberly Jordan, Naturee Wells,
Monica Leaphart, and Summer Sales,
Individually and on behalf of others similarly situated,

        Plaintiffs,

v.

Galardi South Enterprises, Inc. d/b/a/ The Onyx,
Galardi South Enterprises Consulting, Inc.  d/b/a/ The Onyx,
Michael Kapp and Jack Galardi,

        Defendants.               Court File No. 09-CV-2082 (RWS)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CLASS CERTIFICATION

### PRELIMINARY STATEMENT

This case involves only one job position — entertainers — working in a single business location, performing the same job duties, and subject to the same unlawful policies of misclassification and denial of wages.  Specifically, Plaintiffs Karenza Clincy, Erica Hammond, Jammie Parker, Kiesha Pough, Kimberly Jordan, Naturee Wells, Monica Leaphart, and Summer Sales ("Plaintiffs"), as well as opt-in plaintiffs Jessica Appling and British Martin ("opt-in plaintiffs"), worked as entertainers for Defendants Galardi South Enterprises, Inc., Galardi South

1

Enterprises Consulting, Inc., Michael Kapp, and Jack Galardi ("Defendants"), all performing the same job duties at Defendants' adult entertainment nightclub, Club Onyx ("Onyx"). Defendants improperly classified all entertainers as independent contractors and, consequently, failed to pay entertainers a minimum wage, charged entertainers fees in order to work, and subjected entertainers to unlawful fines and penalties for lateness and misconduct. Defendants have also unmistakably retaliated against Plaintiffs Pough, Sales, Parker, Leaphart, Wells, Jordan, Clincy and opt-in Plaintiff Appling by firing them for bringing the instant lawsuit and have, in a blatant attempt to chill further participation, informed current entertainers of same.[1]

Plaintiffs in this wage and hour action now seek conditional collective certification pursuant to Section 216(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, et seq., for the purpose of providing notice to potential plaintiffs. Specifically, Plaintiffs make this Motion for conditional certification of a class consisting of all entertainers who have worked at Onyx in the three years prior to the inception of this lawsuit, for authorization of judicial notice to all class members of this lawsuit, and, in order to facilitate notice, production by

---

[1] The facts relating to Plaintiffs' unlawful termination by Defendants are laid out in detail in Plaintiffs' Memorandum of Law in Support of Emergency Motion for Temporary Restraining Order, Preliminary Injunction and Immediate Hearing. Where not explicitly set forth, those Facts are incorporated by reference herein.

Defendants of an electronic list of class members and class members' most recent contact and indentifying information.

The standard Plaintiffs must meet to win conditional certification and court-facilitated notice is extremely minimal under the FLSA: plaintiffs need only demonstrate that they are "similarly situated" to the potential plaintiffs, with courts in this District requiring simply "some rudimentary showing of commonality between the basis for [plaintiffs'] claims and that of the potential claims of the proposed class…"  Scott v. Heartland Home Finance, Inc., 1:05-CV-2812-TWT, 2006 WL 1209813, at * 2 (N.D. Ga. May 3, 2006).[2]  Indeed, that courts make this determination using such a lenient standard typically results in conditional certification of the proposed collective.   Maddox v. Knowledge Learning Corp., 499 F. Supp. 2d 1338, 342 (N.D. Ga. 2007) (citing Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1218 (11th Cir. 2001).

Here, given that all entertainers perform the same job duties and are all subject to Defendants' blanket classification of entertainers as independent contractors, failure to pay minimum wage, and imposition of fees and fines, Plaintiffs can easily demonstrate that they are similarly situated with the potential plaintiffs to whom they seek to send notice.  Many of these potential plaintiffs — Defendants' current and former entertainers — remain unknown to Plaintiffs and

---

[2] All exhibits referenced herein are attached to the Declaration of E. Michelle Drake.

Plaintiffs' Counsel and may remain so without notice of this lawsuit and, through such notice, information that Defendants' retaliatory actions are illegal.  Further, prompt judicial notice will give these individuals the opportunity to join this lawsuit while they still have claims that are not time-barred.  <u>See</u> 29 U.S.C. § 255(a) (providing a short three-year statute of limitations on FLSA claims); <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1106 (11th Cir. 1996) (indicating statute not tolled for individual opt-in plaintiffs until they file consent forms with the court).  Thus, without notice, potential plaintiffs will be severely prejudiced.

Plaintiffs' proposed notice is attached as Exhibit 1.  Plaintiffs respectfully request that the Court approve this notice and order Defendants to provide contact information for all potential plaintiffs.   Specifically, Plaintiffs request that Defendants provide an updated computer-readable data file containing the names, job title, last known mailing addresses, telephone numbers, dates of employment, location of employment, and the last four digits of the Social Security numbers of all current and former entertainers who have worked at Onyx during the past three years.  For the reasons described above and detailed herein, the Court should grant Plaintiffs' Motion.

## SUMMARY OF RELEVANT FACTS

## I.     THE PARTIES.

1.     Defendants Galardi South Enterprises and Galardi South Enterprises Consulting, Inc. jointly own and operate a business known at Club Onyx ("Onyx") located at 1888 Cheshire Bridge Road in Atlanta, Georgia.  (Pough Dec. at ¶¶ 1, 51-62; Appling Dec. at ¶¶ 1, 51-60; Jordan Dec. at ¶¶ 1, 54-56; Sales Dec. at ¶¶ 1, 55-67; Parker Dec. at ¶¶ 1, 53-63; Leaphart Dec. at ¶¶ 1, 56-70; Clincy Dec. at ¶¶ 1, 50; Wells Dec. at ¶¶ 55-69.)   Onyx is an adult entertainment nightclub that requires customers to pay a cover charge to enter (Pough Dec. at ¶¶ 32, 50; Appling Dec. at ¶¶ 32, 50; Jordan Dec. at ¶¶ 36, 53; Sales Dec. at ¶¶ 36, 54; Parker Dec. at ¶¶ 34, 52; Leaphart Dec. at ¶¶ 37, 55; Clincy Dec. at ¶¶ 32, 49; Wells Dec. at ¶¶ 36, 54.)   Onyx then provides customers with the opportunity to observe entertainers in the nude and in various states of undress.  (Id.)  Defendant Jack Galardi is the Chief Executive Officer of Galardi South Enterprises and Galardi South Enterprises Consulting, Inc. (Ex. 1, Galardi South Enterprises, Inc. Filing with Secretary of State of Georgia and Ex. 2, Galardi South Enterprises Consulting Inc. filing with Secretary of State[3]).   Defendant Michael Kapp is the Chief Operating Officer of Galardi South Enterprises, Inc. and functions as a general; manager at Onyx.  (Pough Dec. at ¶ 57).  Both men exercise significant control

_____

[3] All exhibits referenced herein are attached to the Declaration of E. Michelle Drake.

5

over entertainers working conditions at Onyx, including exercising the authority to hire and fire.  (Ex. 3; Ex. 4; Pough Dec. at ¶¶ 51-62; Appling Dec. at ¶¶ 51-60; Sales Dec. at ¶¶ 55-67; Parker Dec. at ¶¶ 53-63; Leaphart Dec. at ¶¶ 56-70; Wells Dec. at ¶¶ 55-69; Supp. Clincy Dec. at ¶¶ 1-5; Jordan Dec. at ¶¶ 54-56.)

Plaintiffs and opt-in plaintiffs all began working as entertainers at Onyx at various points during the past three years.  (Pough Dec. at ¶¶ 1, 51-62; Appling Dec. at ¶¶ 1, 51-60; Jordan Dec. at ¶¶ 1, 54-56; Sales Dec. at ¶¶ 1, 55-67; Parker Dec. at ¶¶ 1, 53-63; Leaphart Dec. at ¶¶ 1, 56-70; Clincy Dec. at ¶¶ 1, 50; Wells Dec. at ¶¶ 1, 55-69.)  On July 31, 2009, Plaintiffs brought this collective action under the FLSA on behalf of themselves and other similarly situated entertainers whom Defendants misclassified as "independent contractors" and, among other things, failed to pay a minimum wage.[4]  (Complaint, Dkt. 1.)  Less than two weeks later, Plaintiffs and opt-in Plaintiff Appling were fired from Onyx.  Specifically, on August 11, 2009, the plaintiffs present in the club that night — Plaintiffs Parker, Pough, Lephart, Wells, and Sales — as well as opt-in Plaintiff Appling, were called into a meeting with management: Defendant Kapp, Rick (a Manager at Onyx whose last name is unknown to Plaintiffs), Cliff (a manager at Onyx whose last name is unknown to Plaintiffs) and Sabrina (a "house mom" at Onyx whose last name is unknown to Plaintiffs) (Pough Dec. at ¶¶ 51-62; Appling Dec. at ¶¶

---

[4] Opt-in plaintiff Appling filed her consent to join this lawsuit on August 4, 2009 (Dkt. 3), and opt-in plaintiff Martin filed her consent on August 18, 2009. (Dkt. 6.)

51-60; Sales Dec. at ¶¶ 55-67; Parker Dec. at ¶¶ 53-63; Leaphart Dec. at ¶¶ 56-70; Wells Dec. at ¶¶ 55-69..)   During the meeting, stating that Plaintiffs were being fired for bringing the instant lawsuit, Defendant Kapp informed Plaintiffs Parker, Pough, Lephart, Wells, Sales and opt-in Plaintiff Appling that they, as well as the other plaintiffs, would have to drop the lawsuit in order for any of them to return to work.[5]  (Ex. 3 at 8; Pough Dec. at ¶¶ 51-62; Appling Dec. at ¶¶ 51-60; Sales Dec. at ¶¶ 55-67; Parker Dec. at ¶¶ 53-63; Leaphart Dec. at ¶¶ 56-70; Wells Dec. at ¶¶ 55-69).

Following the meeting, management informed the other entertainers at Onyx that Plaintiffs brought this lawsuit, that they were fired as a result, and that all entertainers would only make minimum wage if the lawsuit was successful.  (Ex. 4 at 10; Supp. Clincy Dec. at ¶¶ 1-5.)   On August 20, 2009 Plaintiffs filed their Amended Complaint, adding a claim of retaliation under the FLSA.

---

[5] Plaintiffs Kimberly Jordan and Karenza Clincy, who were not present at the August 11, 2009 meeting, each received the same information from management. On August 12, 2009, Plaintiff Jordan arrived for work and was told that she was not allowed on the premises.  (Jordan Dec.  ¶¶ 54-56.)  The manager named Rick specifically informed Plaintiff Jordan that she could not return to work until all Plaintiffs dropped the lawsuit.  (Id.)  Similarly, Rick informed Plaintiff Clincy that she was terminated when she arrived at Onyx on August 13, 2009. (Supp. Clincy Dec. at ¶¶ 1-5; Clincy Ex. 4.)

## II.   PLAINTIFFS SHARE SIMILAR JOB DUTIES WITH THE PUTATIVE CLASS MEMBERS.

2.     As entertainers, Plaintiffs' job was to entertain Defendants' customers at Onyx by dancing on stage and performing personal dances for customers. (Pough Dec. at ¶¶ 51-62; Appling Dec. at ¶¶ 51-60; Sales Dec. at ¶¶ 55-67; Parker Dec. at ¶¶ 53-63; Leaphart Dec. at ¶¶ 56-70; Wells Dec. at ¶¶ 55-69.)  Defendants carefully monitor entertainers' conduct, requiring all entertainers to sign a document describing "Rules of Conduct."  (Jordan Dec. at ¶¶ 31-34 & Ex. A; Sales Dec. at ¶¶ 31-34 & Ex. A; Parker Dec. at ¶ 32; Leaphart Dec. at ¶¶ 32-35 & Ex. A; Wells Dec. at ¶¶ 31-34 & Ex. A.)  Further, there are numerous other rules that Onyx requires entertainers to follow, making entertainers unable to exercise control over many aspects of their work.  For example, entertainers are required to dance on stage, are told when to dance on stage, and have no discretion over the music that they dance to, or how much clothing they can remove or leave on while on stage.  (Pough Dec. at ¶ 31; Appling Dec. at ¶ 31; Jordan Dec. at ¶ 35; Sales Dec. at ¶ 35; Parker Dec. at ¶ 33; Leaphart Dec. at ¶ 36; Clincy Dec. at ¶ 31; Wells Dec. at ¶ 35.)  Onyx also requires that entertainers share the tips or gratuities they receive while dancing on stage equally with whichever and however many other entertainers Onyx selects to dance on stage at the same time. (Pough Dec. at ¶¶ 35-36; Appling Dec. at ¶¶ 35-36; Jordan Dec. at ¶¶ 39-40; Sales Dec. at ¶¶ 39-40; Parker Dec. at ¶¶ 37-38; Leaphart Dec. at ¶¶ 40-41; Clincy Dec. at ¶¶ 35-36; Wells

Dec. at ¶¶ 39-40.)  What is more, entertainers have no discretion over the amount they charge customers for personal dances performed off stage—that amount is set by Onyx, and is not dependent upon which entertainer performs the dance.  (Pough Dec. at ¶ 31; Appling Dec. at ¶ 31; Jordan Dec. at ¶ 35; Sales Dec. at ¶ 35; Parker Dec. at ¶ 33; Leaphart Dec. at ¶ 36; Clincy Dec. at ¶ 31; Wells Dec. at ¶ 35.)

Onyx also controls advertising and marketing for the club, with entertainers maintaining no control over the type or content of advertising or marketing done. (Pough Dec. at ¶ 43; Appling Dec. at ¶ 43; Jordan Dec. at ¶ 47; Sales Dec. at 47; Parker Dec. at ¶ 45; Leaphart Dec. at ¶ 48; Clincy Dec. at ¶ 43; Wells Dec. at ¶ 47.)   Additionally, Onyx prohibits entertainers from leaving the club with customers, (Pough Dec. at ¶ 37; Appling Dec. at ¶ 37; Jordan Dec. at ¶ 41; Sales Dec. at ¶ 41; Parker Dec. at ¶ 39; Leaphart Dec. at ¶ 42; Clincy Dec. at ¶ 37; Wells Dec. at ¶ 41.) and tightly controls entertainers' appearance, requiring that entertainers spend no more than 45 minutes getting ready for work and often prohibiting entertainers from dancing on stage unless Onyx approves of their weight.  (Pough Dec. at ¶ 31; Appling Dec. at ¶ 31; Jordan Dec. at ¶ 35; Sales Dec. at ¶ 35; Parker Dec. at ¶ 33; Leaphart Dec. at ¶ 36; Clincy Dec. at ¶ 31; Wells Dec. at ¶ 35.).  There have been no changes to entertainers' primary job duties over the past three years.  (Pough Dec. at ¶ 68; Appling Dec. at ¶ 65; Jordan Dec. at ¶60; Sales Dec. at ¶ 71; Parker Dec. at ¶ 67; Leaphart Dec. at ¶ 74; Clincy Dec. at ¶54;

9

Wells Dec. at ¶73.)

## III.  PLAINTIFFS AND THE OTHER ENTERTAINERS ARE OR WERE MISCLASSIFIED AS "INDEPENDENT CONTRACTORS" AND DENIED MINIMUM WAGES.

Entertainers at Onyx are classified by Defendants as independent contractors.  (Pough Dec. at ¶ 65; Appling Dec .at ¶ 62; Jordan Dec. at ¶57; Sales Dec. at ¶ 68; Parker Dec. at ¶ 64; Leaphart Dec. at ¶ 71; Clincy Dec. at ¶ 51; Wells Dec. at ¶ 70.)  All entertainers are required to pay a "house fee" or "bar fee" in order to work each night.  (Pough Dec. at ¶¶ 8-12, 16; Appling Dec. at ¶¶ 8-12, 16; Jordan Dec. at ¶¶ 8-12, 16; Sales Dec. at ¶¶ 8-12, 16; Parker Dec. at ¶¶ 8-12, 16; Leaphart Dec. at ¶¶ 8-12, 16; Clincy Dec. at ¶¶ 8-12, 16; Wells Dec. at ¶¶ 8-12, 16.)  As there is only one house fee schedule in place at any time, all entertainers are required to pay the same house fees to work.[6]  (Id.)  Entertainers are also assessed other charges based on a whole host of other factors.  (Pough Dec. at ¶ 31; Appling Dec. at ¶ 31; Jordan Dec. at ¶ 35; Sales Dec. at ¶ 35; Parker Dec. at ¶ 33; Leaphart Dec. at ¶ 36; Clincy Dec. at ¶ 31; Wells Dec. at ¶ 35.)  While entertainers are allowed to develop their own schedule, they are required to specify when they are going to work in advance, to always arrive before 11 o'clock PM, and to work

---

[6] The fee schedule is based on the day of the week and time an entertainer arrives for work, with higher fees charged for busier nights and later arrivals. (Pough Dec. at ¶¶ 12, 16, 25-27; Appling Dec. at ¶¶ 12, 16, 25-27; Jordan Dec. at ¶¶ 12, 16, 25-27; Sales Dec. at ¶¶ 12, 16, 25-27; Parker Dec. at ¶¶ 12, 16, 25-27; Leaphart Dec. at ¶¶ 12, 16, 25-27; Clincy Dec. at ¶¶ 12, 16, 25-27; Wells Dec. at ¶¶ 12, 16, 25-27.)

a set number of days per week and "slow days" per month.[7] (Pough Dec. at ¶¶ 25-27; Appling Dec. at ¶¶ 25-27; Jordan Dec. at ¶¶ 25-27; Sales Dec. at ¶¶ 25-27; Parker Dec. at ¶¶ 25-27; Leaphart Dec. at ¶¶ 25-27; Clincy Dec. at ¶¶ 25-27; Wells Dec. at ¶¶ 25-27.)  Onyx also prohibits entertainers from leaving the club after work without going through a "check out" process that includes paying both the house mom and disc jockey ("DJ") a set amount or percentage of the entertainer's earned gratuities or tips for the night and paying $0.50 for and passing a breathalyzer test.  (Pough Dec. at ¶¶ 13-14, 20-21; Appling Dec. at ¶¶ 13-14, 20-21; Jordan Dec. at ¶¶ 13-14, 20-21; Sales Dec. at ¶¶ 13-14, 20-21; Parker Dec. at ¶¶ 13-14, 20-21; Leaphart Dec. at ¶¶ 13-14, 20-21; Clincy Dec. at ¶¶ 13-14, 20-21; Wells Dec. at ¶¶ 13-14, 20-21.)

Other than the portion of earned gratuities or tips Defendants allow entertainers to keep, Defendants do not pay wages to entertainers.  (Pough Dec. at ¶ 67; Appling Dec. at ¶ 64; Jordan Dec. at ¶ 59; Sales Dec. at ¶70; Parker Dec. at ¶66; Leaphart Dec. at ¶73; Clincy Dec. at ¶53; Wells Dec. at ¶72.)  In fact, the entertainers' sole source of income for their work at Onyx is any gratuities or tips from customers, in the form of money received for performing stages and personal dances.  In addition to setting the price for personal dances and requiring that

---

[7] Strip clubs in Atlanta are known for being busy on certain nights. (Pough Dec. at ¶ 39; Appling Dec. at ¶ 39; Jordan Dec. at ¶ 43; Sales Dec. at ¶ 43; Parker Dec. at ¶ 41; Leaphart Dec. at ¶ 44; Clincy Dec. at ¶ 39; Wells Dec. at ¶ 43.)  "Slow days" refers to those days of the week that are typically not busy.

entertainers share their tips or gratuities, Onyx is able to limit the amount of money entertainers can make by restricting the cash available to customers. (Pough Dec. at ¶ 33; Appling Dec. at ¶ 33; Jordan Dec. at ¶ 37; Sales Dec. at ¶ 37; Parker Dec. at ¶ 35; Leaphart Dec. at ¶ 38; Clincy Dec. at ¶ 33; Wells Dec. at ¶ 37.)  In short, entertainers not only perform similar job duties, but are also misclassified and subject to similar provisions governing money or pay.

## ARGUMENT

## I.    CONDITIONAL CLASS CERTIFICATION AND JUDICAL NOTICE ARE PROPER IN THIS CASE.

Plaintiffs seek conditional certification and court-facilitated notice in this collective action pursuant to Section 216(b) of the FLSA, which provides that an action may be maintained against any employer in Federal court "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The collective action mechanism allows for efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.   See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)

A collective action under Section 216(b) of the FLSA is defined by three important features: First, in order to participate in a collective action, an employee must "opt in," meaning the employee must consent in writing to join the suit and

that consent must be filed with the court.  Hoffmann-La Roche, 493 U.S. at 168;

Hipp, 252 F.3d at 1216 (citing Grayson, 79 F.3d at 1106).  Second, the statute of

limitations runs on each employee's claim until that individual files a consent form

with the court, unless the statute is tolled.  Grayson, 79 F.3d at 1106.  Third, to

serve the "broad remedial purpose" of the FLSA, courts can order notice to other

potential similarly situated employees to inform them of this opportunity to opt

into to the case.  Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562,

1567 (11th Cir. 1991) (citing Braunstein v. E. Photographic Labs., Inc., 600 F.2d

335, 336 (2d Cir. 1978)).  Critically, judicial notice avoids a "multiplicity of

duplicative suits," allows the court to set deadlines to advance the disposition of an

action, and it protects potential plaintiffs' claims from expiring under the statute of

limitations.  Hoffmann-La Roche, 493 U.S. at 171-73.

Here, conditional certification and judicial notice are proper because

Plaintiff satisfies the lenient standard for demonstrating that she is similarly

situated to the putative class.

### A.   The Eleventh Circuit and Courts in this District Apply a Two-Stage Certification Process.

The Eleventh Circuit and courts in this District, like most courts, have

adopted a two-stage approach to determine whether a case should be certified as a

collective action.   Hipp, 252 F.3d at 1218; Davis v. Precise Communication

Services, Inc., No. 1:07-CV-3128-JOF, 2009 WL 812276, at * 2 (N.D. Ga. Mar.

27, 2009); <u>Cash v. Gwinnett Sprinkler Co., Inc.</u>, No. 1:08-CV-2858-JOF, 2008 WL

5225874, at * 1 -2  (N.D. Ga. Dec. 12, 2008).  The first step is the "notice stage,"

where the court determines, based simply on the pleadings and any affidavits

submitted by plaintiffs, whether plaintiffs and potential opt-in plaintiffs are

sufficiently "similarly situated" to issue notice and allow the case to proceed as a

collective action through discovery.  <u>Davis</u>, 2009 WL 812276, at * 2 (citing <u>Hipp</u>,

252 F.3d at 1218).  Once the court determines that potential opt-in plaintiffs may

be "similarly situated" for the purposes of authorizing judicial notice, the court

"conditionally certifies" the collective action, and plaintiffs send court-approved

notice to potential plaintiffs.  <u>Davis</u>, 2009 WL 812276, at * 3; <u>Cash</u>, 2008 WL

5225874, at * 2.  Upon receiving notice, the potential plaintiffs may elect to opt

into the lawsuit pursuant to section 216(b) by filing written consents with the court.

<u>Id.</u>  Once notice is accomplished, the action proceeds as a collective action through

discovery.  <u>Hipp</u>, 252 F.3d at 1218.

At the second step, typically on a motion for decertification, the court

undertakes a more stringent factual determination as to whether members of the

collective class are, in fact, similarly situated.  <u>Davis</u>, 2009 WL 812276, at * 2

(citing <u>Grayson</u>, 79 F.3d at 1096).  If, after discovery, it is apparent that plaintiffs

and others are not similarly situated, the court may "de-certify" the collective and

dismiss the claims of the opt-in plaintiffs without prejudice.  <u>Cash</u>, 2008 WL 5225874, at * 2 (citing <u>Hipp</u>, 252 F.3d at 1218).

**B.    The Standard for Conditional Class Certification and Judicial Notice in FLSA Collective Actions is Minimal.**

The burden at the notice stage is very low, with plaintiffs only having to demonstrate a "reasonable basis" for determining potential plaintiffs to be "similarly situated."  <u>Grayson</u>, 79 F.3d at 1097; <u>see</u> <u>Hipp</u>, 252 F.3d at 1214-1218 (describing the standard for determining conditional certification as "flexible" and "not particularly stringent"); <u>Davis</u>, 2009 WL 812276, at * 2 (stating that the standard at the notice stage is "fairly lenient"); <u>Maddox v. Knowledge Learning Corp.</u>, 499 F. Supp. 2d 1338, 1342 (noting that motions for conditional certification are typically granted).  A plaintiff's burden is particularly low in the Eleventh Circuit.  Indeed, though many courts have held that the notice stage requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," the Eleventh Circuit has stated that even these allegations may not be required to satisfy the similarly-situated requirement of Section 216(b).  <u>Hipp</u>, 252 F.3d at 1219 (quoting <u>Grayson</u>, 79 F.3d at 1095); <u>see also</u> <u>Russell v. ProMove, LLC</u>, No. 1:06-cv-00659-RWS (Nov. 9, 2006) (requiring only a "factual nexus" between plaintiff's situation and that of current and former employees); <u>Cash</u>, 2008 WL 5225874, at * 2 (looking only to whether there are other employees who wish to opt-in to the action and whether

those employees are "similarly situated" with respect to their job requirements and pay provisions); Davis, 2009 WL 812276 at * 2 (same); Scott, 2006 WL 1209813 at * 2 (requiring only a rudimentary showing beyond job duties and pay provisions).

Thus, plaintiffs who allege a single decision, policy or plan applicable to putative class members — for example, a policy of misclassification — will likely have met and exceeded their burden.  See Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007) (noting that the Eleventh Circuit does not require allegations of a single decision, policy, or plan and going on to grant conditional certification where plaintiffs alleged simply a widespread policy of misclassification); Simpkins v. Pulte Home Corp., No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at * 7 (M.D. Fla. Aug. 21, 2008) (finding a reasonable basis to grant conditional certification where all employees were subject to the same classification and there were some commonalities among the relevant job duties (citing Grayson, 79 F.3d at 1096)); Bradford v. Bed Bath & Beyond, 184 F. Supp. 2d 1342, 1344, 1352 (N.D. Ga. 2005) (granting conditional certification and later denying defendant's motion to decertify in a misclassification case); see also Williams v. Accredited Home Lenders Inc., No. 1:05-CV-1681-TWT, 2006 WL 2085312, at * 4 (N.D. Ga. Jul 25, 2006) (indicating that, where a plaintiff

challenges his exempt classification, conditional certification may be more easily granted than it would be in other contexts).

### C. Plaintiff Has Easily Met the "Similarly Situated" Standard Necessary at this Stage of the Litigation.

This case is in the early stages of litigation, the parties having undertaken no discovery and Defendants Answer to Plaintiffs' Amended Complaint will not be due for several weeks.  Plaintiffs, at this first stage or notice stage, can easily meet the similarly situated standard necessary for conditional certification.  Simply put, the case at bar is about Defendants' misclassification of Plaintiffs and all other former and current entertainers as independent contractors.  Plaintiffs have met their burden by establishing, through their Complaint and supporting declarations, Defendants' company-wide policy of treating Plaintiffs and members of the putative class as independent contractors, and consequently failing to pay them a minimum wage for all hours worked at Onyx.

In addition to the showing based solely on misclassification, conditional class certification is appropriate under the other facts of this case: All entertainers perform the same job duties of performing on stage for Defendants' customers, and providing those customers with personal dances off stage.  Further, all entertainers perform these job duties under Defendants' constant supervision and within the confines of Defendants' written and other enforced rules of conduct that apply to all entertainers at Onyx.  With respect to pay, no entertainers are paid hourly wages

and all are required to pay "house fees" or "bar fees" pursuant to a uniform fee schedule.  Entertainers are also required to adhere to a schedule of work days and hours, and are assessed charges for arriving late or otherwise not complying with Defendants' rules of conduct.

What is more, as demonstrated throughout this Memorandum and in addition to the detailed allegations in the Complaint, Plaintiffs' Motion is supported by declarations from seven of the eight Plaintiffs in this action, all of whom observed through their work at Onyx that other entertainers performed the same job duties and paid the same fees and fines as a condition of employment.[8]  Further, despite the fact that this litigation has only just begun, there are already two opt-in Plaintiffs, one of whom, Jessica Appling, has submitted a declaration consistent with those submitted by Plaintiffs.  Thus, Plaintiffs have certainly demonstrated there to be other similarly situated individuals who wish to join this lawsuit.  See Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 947-948 (M.D. Fla.1994) (finding

---

[8] Notably, Federal District Courts around the country have routinely authorized notice to putative class members based on many fewer records than Plaintiffs have provided here.  See, e.g., Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all had same job and were all classified as exempt); Hoffman v. Securitas Sec. Services, Case No. CV 07-502-S-EJL, 2008 WL 5054684, at * 9(D. Idaho Aug. 27, 2008) (granting conditional certification where plaintiff submitted only four declarations and recognizing that some courts approve conditional certification based solely on the allegations in the complaint); Kelly v. Bluegreen Corp., 256 F.R.D. 626, 632 - 633 (W.D. Wis. 2009) (granting conditional certification where plaintiffs submitted declarations from only five individuals).

there to be similarly situated employees who wished to opt-in where two individuals consented to join the lawsuit after it had been filed).[9]

Given the totality of the evidence presented, Plaintiffs have more than met their light burden of showing themselves to be "similarly situated" to the putative collective.  As such, the Court should grant Plaintiffs' Motion.

### D.    Factors Not Considered at the Notice Stage.

Given the minimal showing that Plaintiffs must make at the conditional certification stage, it is important to clarify what is not considered for purposes of conditional certification.  Many standards commonly applied to other kinds of motions are not appropriate here.  For example, at the notice stage, courts do not

---

[9] In light of Defendants' actions, Plaintiffs should not be held to any higher standard or required to produce additional opt-in plaintiffs at this stage.  Indeed, that there are only two opt-in plaintiffs in this case is likely a product, in large part, of Defendants' illegal retaliation against Plaintiffs and the chilling effect of Defendants informing all current entertainers that Plaintiffs had been fired for bringing the instant lawsuit—a factor which the Court should take into account in deciding this Motion.  See Prater v. Commerce Equities Management Co., Inc., No. H-07-2349, 2007 WL 4146714, at * 8 (S.D. Tex. Nov. 19, 2007) (noting that allegations of retaliation and intimidation are relevant to the analysis of whether there are individuals who wish to opt into an action).  That is to say, Defendants' illegal conduct, and any of its likely effects, should not serve as a bar to conditional certification. Regardless, the declarations of the Plaintiffs in addition to Defendants' uniform policy of misclassification certainly create a reasonable basis for believing that there are other aggrieved entertainers.  See id. at * 5 (relying on affidavits of named plaintiffs in granting conditional certification in a misclassification case); see also Lima v. International Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 799-800 (E.D. La. 2007) (granting certification in the absence of affidavits from opt-in plaintiffs and noting that the issue could be "revisit[ed]… after some discovery").

weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." Kreher v. City of Atlanta, Georgia, No. 1:04-CV-2651-WSD, 2006 WL 739572, at * 4 (N.D. Ga. Mar. 20, 2006) ("The focus… is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'.... [A] court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists." (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54-55 (S.D.N.Y.2005))).

Similarly, courts have refused to undertake an examination of day-to-day tasks at this early conditional certification stage. Scott, 2006 WL 1209813, at * 3 (declining to "resolve factual issues or make credibility determinations at this stage." (citing Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992))). "[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage." Scott, 2006 WL 1209813, at * 3.

Because courts do not weigh the merits of the claim or examine factual variations at the notice stage, extensive discovery is not necessary, and the need for individual discovery is not considered. Id.; Kreher, 2006 WL 739572, at *4 n. 8, 9 (issues of individualized nature of employees' claims, although potentially meritorious, should be considered during second stage of analysis, not the first).

Further still, courts do not look to the standard for class certification under Rule 23 of the Federal Rule of Civil Procedure when deciding on conditional certification under the FLSA.  <u>Cash</u>, 2008 WL 5225874, at * 1-2 (citing <u>Grayson</u>, 79 F.3d at 1096).  In fact, unlike Rule 23, section 216(b) requires no showing of numerosity, typicality, commonality, or representativeness.  <u>Grayson</u>, 79 F.3d 1096 n. 12 ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23.").  As a result, the standard for authorizing notice to similarly-situated workers is much lower than under Rule 23.  <u>Id.</u>

### E.    Plaintiffs' Case is Appropriate for Judicial Notice.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  <u>Hoffmann-La Roche</u>, 493 U.S. at 170. District courts are encouraged to become involved in the notice process early, to insure "timely, accurate, and informative" notice and to help maintain control of the litigation.  <u>Id.</u> at 171-72.  Short of a bright-line standard, the Supreme Court in <u>Hoffmann-La Roche</u> established that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "*appropriate cases*," discretion lying with

the district court.  Id. at 169-70 (emphasis added).  The case at bar is one such appropriate case.

Here, prompt judicial notice is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations.  Grayson, 79 F.3d at 1106.  Unlike Rule 23 class actions, the statute of limitations in FLSA collective actions continues to run on each individual's claim—reducing the amount in damages an individual could recover— until the individual files a consent form the with the Court.  Id. at 1106 n. 38.  Court-facilitated notice will prevent such erosion of claims while the parties work to resolve this litigation.  See id.  Further, judicial notice providing all entertainers the opportunity to pursue their claims in one forum will create the significant judicial economies recognized in Hoffmann-La Roche.  Indeed, because similar—if not identical—issues of law and fact exist amongst all of Defendants' entertainers, one action benefits the judicial system by resolving this case collectively at least through the discovery phase.  Hoffmann-LaRoche, 493 U.S. at 170.

Judicial notice is also warranted in this case because of Defendants' unabashed firing of Plaintiffs for filing this lawsuit, and Defendants' informing current entertainers of doing so.  Judicial notice will not only give these potential plaintiffs prompt notice of this action, but may also ease their fears about opting in. At present, the entertainers at Onyx are exposed to what is essentially bullying on

Defendants' part, with Defendants' retaliatory actions against Plaintiffs as an example of what will come to those who join this action.  There is no neutral voice informing these entertainers of their right to participate in this lawsuit.  Judicial notice should serve as that neutral voice, assuring entertainers that retaliation is illegal, and that entertainers have a right to join this lawsuit if they so choose.  This District has approved notice informing potential plaintiffs of as much, and should do so again here.  (See Ex. 5.)

### F.   Plaintiffs' Proposed Judicial Notice Is Accurate, Informative, and Has Been Routinely Adopted.

Plaintiffs' proposed judicial notice is attached as Exhibit 6.  As required, it is "timely, accurate, and informative."  See Hoffmann-La Roche, 493 U.S. at 172. Plaintiffs proposed notice is carefully drafted to mirror notice forms that this District approved in Russell, No. 1:06-cv-00659-RWS (Nov. 9, 2006), a previous case handled by Plaintiffs' Counsel's law firm.  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

## II.   PRODUCTION OF A LIST OF ENTERTAINERS IS NECESSARY TO FACILITATE NOTICE.

As discussed above, all entertainers employed by Defendants within the past three years are "similarly situated" employees for purposes of the FLSA.  Prompt disclosure of the names and contact information of those similarly situated is

necessary in order for Plaintiffs to provide those individuals with notice of the action as contemplated by the law.  See Hoffmann-La Roche, 493 U.S. at 170[10]; see also Russell, No. 1:06-cv-00659-RWS (Nov. 9, 2006) (ordering production of list in electronic and importable format within five days).  Accordingly, Plaintiffs respectfully request that, in addition to entering an order granting conditional certification and approving Plaintiff's notice, the Court order Defendants to produce to Plaintiff the following within five (5) days of its order:

> A list, in electronic and importable format, of all persons employed by Defendants as entertainers during the last three years, including their name, job title, address, telephone number, dates of employment, location of employment, date of birth, and last four digits of their Social Security number.[11]

## CONCLUSION

At this preliminary stage, Plaintiffs have come forward with the factual basis from which this Court can determine that similarly situated plaintiffs exist.  Thus, the Court should 1) promptly authorize this case to proceed as a collective action;

---

[10] Hoffmann-LaRoche recognizes that Plaintiffs in collective actions under the FLSA are entitled to the discovery of the names and addresses of co-workers regardless of whether judicial notice is appropriate.  Id. at 170.  In so ruling, the Court acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." Id.

[11] Due to the transient nature of the business, as discussed above, the social security numbers are needed because the contact information Defendants have will likely be outdated.  The social security numbers will help in obtaining current contact information of putative class members.  See Declaration of Donald H. Nichols.

2) order the identification of all entertainers who worked for Defendants during the applicable statutory period; and 3) authorize the issuance of Plaintiffs' proposed notice to be mailed to all potential opt-in plaintiffs employed by Defendants in the past three years.

### STATEMENT OF COMPLIANCE WITH LOCAL RULE 7.1(D)

This brief has been prepared with one of the font and point selections approved by the court in Local Rule 5.1(C), namely Times New Roman 14 pt.

Dated: August 20, 2009                    NICHOLS KASTER, PLLP

s/E. Michelle Drake
E.  Michelle Drake (GA Bar No. 229202)
Donald H. Nichols (GA Bar No. 450212)
Steven Andrew Smith (MN Bar No. 260836)
   *Pro Hac Vice Application Forthcoming*
Anna P. Prakash (MN Bar No. 0351362)
   *Pro Hac Vice Application Forthcoming*
80 South 8th Street, Suite 4600
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 338-4878

And

BUCKLEY & KLEIN, LLP
Edward D. Buckley (GA Bar No. 092750)
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, Georgia 30309
Telephone (404) 781-1100
Fax (404) 781-1601
ATTORNEYS FOR PLAINTIFFS