## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

Karenza Clincy, Erica Hammond,
Jammie Parker, Kiesha Pough,
Kimberly Jordan, Naturee Wells,
Monica Leaphart, and Summer Sales,
Individually and on behalf of others
similarly situated,

        Plaintiffs,

   v.                     **SECOND AMENDED COMPLAINT**

Galardi South Enterprises, Inc.
d/b/a/ The Onyx, Galardi South
Enterprises Consulting, Inc.
d/b/a/ The Onyx, Pony Tail, Inc.
d/b/a/ The Onyx, Michael Kapp
and Jack Galardi.

        Defendants.           Court File No. 09-CV-2082 (RWS)

Plaintiffs Karenza Clincy ("Clincy"), Erica Hammond ("Hammond"), Jammie Parker ("Parker"), Kiesha Pough ("Pough"), Kimberly Jordan ("Jordan"), Naturee Wells ("Wells"), Monica Leaphart ("Leaphart"), and Summer Sales ("Sales"), by their attorneys, Nichols Kaster, PLLP, bring this action for damages and other legal and equitable relief for Defendants' violations of laws. Plaintiffs state the following as their claims against Defendants:

## <u>INTRODUCTION</u>

1.    This case is about Defendants' illegal treatment of their employees.

1

2.      Defendants Galardi South Enterprises, Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. own and operate a strip club called The Onyx ("Onyx") in Fulton County, Atlanta.

3.      Defendant Jack Galardi is the Chief Executive Officer of Galardi South Enterprises, Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc.

4.      Defendant Michael Kapp is the Chief Operating Officer of Galardi South Enterprises, Inc.

5.      In direct violation of federal law, Defendants miscategorize entertainers who work at their club as independent contractors and require them to pay to come to work.  The entertainers receive no wage payments from Defendants, but instead only receive gratuities from customers.  Defendants' practices result in employees making less than minimum wage, in violation of federal law.  Defendants' practices also result in employees not being paid one and a half times their regular rate for overtime hours.

6.      Plaintiffs filed their initial Complaint in this matter on July 31, 2009.

7.      On August 11, 2009, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were fired by Defendant Kapp as a direct result of their involvement in this lawsuit.  Appling has since opted out of this lawsuit due to the stress of the lawsuit—specifically, the stress resulting from her being fired.

8.     On August 12, 2009, Plaintiff Jordan was fired by Defendants' agent, "Rick" as a direct result of her involvement in this lawsuit.

9.     On August 13, 2009, Plaintiff Clincy was fired by Defendants' agent "Rick" as a direct result of her involvement in this lawsuit.

10.     Defendant Galardi personally directed the firing of Plaintiffs and the terms under which Plaintiffs were informed they would be allowed to return to work.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question, 29 U.S.C. § 216(b).

13.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the Northern District of Georgia.

14.     Venue is also proper in the Northern District of Georgia, Atlanta division because a substantial part of the events at issue in this lawsuit took place in the Northern District of Georgia, Atlanta division and because corporate Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. reside in the Atlanta division.  On information and belief,

Defendants Kapp and Galardi also reside in the Northern District of Georgia.  On information and belief Defendants Kapp and Galardi can be found in the Northern District of Georgia.

## **PARTIES**

15.    Plaintiff Karenza Clincy is an individual residing in Lawrenceville, Georgia.

16.    Plaintiff Clincy has been employed as an entertainer at Onyx at various points during the two years prior to the filing of this lawsuit.

17.    Plaintiff Erica Hammond is an individual residing in Fairburn, Georgia.

18.    Plaintiff Hammond has been employed as an entertainer at Onyx at various points during the year prior to the filing of this lawsuit.

19.    Plaintiff Jammie Parker is an individual residing in Doraville, Georgia.

20.    Plaintiff Parker has been employed as an entertainer at Onyx at various points during the year prior to the filing of this lawsuit.

21.    Plaintiff Kiesha Pough is an individual residing in Tucker, Georgia.

22.    Plaintiff Pough has been employed as an entertainer at Onyx at various points during the year prior to the filing of this lawsuit.

23.    Plaintiff Kimberly Jordan is an individual residing in Atlanta, Georgia.

24.    Plaintiff Jordan has been employed as an entertainer at Onyx at various points during the three years prior to the filing of this lawsuit.

25.    Plaintiff Naturee Wells is an individual residing in Atlanta, Georgia.

26.    Plaintiff Wells has been employed as an entertainer at Onyx at various points during the three years prior to the filing of this lawsuit.

27.    Plaintiff Monica Leaphart is an individual residing in Atlanta, Georgia.

28.    Plaintiff Leaphart has been employed as an entertainer at Onyx at various points during the year prior to the filing of this lawsuit.

29.    Plaintiff Summer Sales is an individual residing in Lithonia, Georgia.

30.    Plaintiff Sales has been employed as an entertainer at Onyx at various points during the year prior to the filing of this lawsuit.

31.    The Onyx is an adult entertainment nightclub located at 1888 Cheshire Bridge Road, Atlanta, Georgia.

32.    Galardi South Enterprises, Inc. is a Georgia corporation with headquarters at 1730 Northeast Expressway, Suite 200 Atlanta, GA 30329.

33.    Galardi South Enterprises, Inc. owns and operates The Onyx and has done so at all times for the three years prior to the filing of this Complaint.

34.    Galardi South Enterprises, Inc. is not in compliance with the Georgia Secretary of State's annual corporate filing requirements.

35.    Galardi South Enterprises, Inc. has not filed its annual registration with the Georgia Secretary of State since 2007.

36.    Galardi South Enterprises Consulting, Inc. is a Georgia corporation with headquarters at 1730 Northeast Expressway, Suite 200 Atlanta, GA 30329.

37.    Galardi South Enterprises Consulting, Inc. operates The Onyx and has done so at all times for the three years prior to the filing of this Complaint.

38.    Pony Tail, Inc. is a Georgia corporation with its headquarters at 1730 Northeast Expressway, Suite 200 Atlanta, GA 30329.

39.    Pony Tail, Inc. owns and operates The Onyx and has done so at all times for the three years prior to the filing of this Complaint.

40.    On information and belief, Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc. and Pony Tail, Inc. jointly own and operate The Onyx and have done so at all times for the three years prior to the filing of this Complaint.

41.    Defendant Jack Galardi is the Chief Executive Officer of Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc.  Each corporate Defendant's current annual registration information with the Georgia Secretary of State is attached as Exhibit F.

42.     On information and belief Defendant Michael Kapp is the Chief Operating Officer of Defendant Galardi South Enterprises Consulting, Inc.

43.     On information and belief, Defendants Kapp and Galardi direct the day-to-day operations of Club Onyx.  Defendants Kapp and Galardi indirectly set Onyx's policies regarding employee schedules. Defendants Kapp and Galardi directly and indirectly hire and/or fire employees of Onyx.  Defendants Kapp and Galardi directly and indirectly determine the policies by which employees of Onyx will be compensated.

44.     Defendant Galardi South Enterprises, Inc., Defendant Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. operate as joint employers.  On information and belief these corporate entities, along with, Defendants Galardi and Defendant Kapp jointly: (1) exercised control over the conditions and terms of Plaintiffs' employment; (2) supervised, directly and indirectly, the work performed by Plaintiffs; (3) directly and indirectly exercised the right to hire, fire, or modify Plaintiffs' employment conditions; (4) determined Plaintiffs' classification as independent contractors and method of compensation; (5) decided not to pay Plaintiffs any amount as wages.

45.     On information and belief Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. engage in the adult

46.     On information and belief Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. jointly own and have invested in the physical facilities of Club Onyx.

47.     On information and belief, Defendant Jack Galardi personally owns a controlling interest in Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc.

48.     On information and belief, Defendant Galardi South Enterprises, Defendant Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. have highly interrelated operations, with Galardi South Enterprises Consulting, Inc. providing day to day management services for a variety of different adult entertainment nightclubs owned and operated by Galardi South Enterprises and Pony Tail, Inc.

49.     On information and belief, Defendant Galardi South Enterprises, Defendant Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. maintain centralized control of labor relations with Galardi South Enterprises Consulting, Inc. serving as the entity which directly claims responsibility for establishing the terms and conditions of entertainers' work at various clubs owned and operated by Defendant Galardi South Enterprises including Onyx.

50.    Defendants Galardi South Enterprises, Defendant Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. share common management and common ownership or financial control.  On information and belief, a controlling interest in both entities is owned by Defendant Jack Galardi.

51.    On information and belief Defendant Galardi South Enterprises, Defendant Galardi South Enterprises Consulting, Inc., and Pony Tail, Inc. share corporate officers, corporate officers, have the same registered agent, share legal representation and pool their financial resources.

52.    Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this Collective Action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA") for failure to pay minimum wage and overtime compensation.

53.    Plaintiffs and others similarly situated (the "FLSA Collective") are individuals who have worked as entertainers at Club Onyx in the three years prior to the filing of this lawsuit.

54.    Plaintiffs have consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).  Attached as Exhibit A are Plaintiffs' signed consent forms.

## FACTUAL ALLEGATIONS

55.     The above paragraphs are incorporated by reference as if fully set forth herein.

## MISCLASSIFICATION

56.     At all times for the three years prior to the filing of the initial Complaint in this matter, Defendants have employed female entertainers at Onyx.

57.     At all times for the three years prior to the filing of the instant complaint, Defendants have categorized all entertainers working at Onyx as "independent contractors."

58.     At all times for the three years prior to the filing of the instant complaint, Defendants have not required entertainers to have any specialized training or background.  Defendants have, however: established specific work schedules for entertainers; required entertainers to dance at specified times and in a specified manner on stage and for customers; regulated entertainers' attire and interactions with customers; set the price entertainers were allowed to charge for dances; required entertainers to attend meetings at Defendant's business; financed all advertising and marketing efforts undertaken on behalf of the Onyx; made capital investments in the facilities, maintenance, sound system, lights, food, beverage and inventory; and made all hiring decisions regarding waitstaff, security, entertainer, managerial and other employees at Onyx.

59.    Defendants have established a variety of written guidelines and policies which govern entertainers' conduct at Onyx. A copy of these written guidelines and policies is attached hereto as Exhibit B.

60.    At all times for the three years prior to the filing of the instant complaint, Defendants have required entertainers, including Named Plaintiffs, to pay a specific amount, often referred to as a "house fee" or a "bar fee" in order to work on any given shift.

61.    The specific amount entertainers, including Class Representatives, were required to pay has varied over the last three years, but a single schedule has been in place for all entertainers at any given time.

62.    The required bar fee has generally been at least $29 per shift.  Often, entertainers have been required to pay as much as $100 per shift.

63.    If entertainers are late for work, fail to appear for a scheduled shift, or are deemed to have violated any of Onyx's rules, they are charged additional fees. or "fines."  Class Representatives have been subject to a variety of these fines.

64.    The fees described in Paragraphs 60-63 constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act.

65.    Named Plaintiffs worked over forty hours in some weeks they worked for Defendants.

66.   Entertainers are also required to attend mandatory meetings at Defendants' place of business, but are not paid for their attendance at those meetings.

67.   Defendants have never paid entertainers any amount as wages. Instead, entertainers' source of work related income is gratuities they receive from customers.

68.   Because Defendants did not pay Plaintiffs any wages, Defendants did not pay Plaintiffs one-and-a-half times their regular rate of pay when Plaintiffs worked over forty hours in a given workweek.

69.   Defendants knew, or showed reckless disregard for the fact that it misclassified these individuals as independent contractors, and accordingly failed to pay these individuals the minimum wage and failed to pay overtime at the required rate under the Fair Labor Standards Act.

70.   The recklessness of Defendants' classification is demonstrated by the participation of Defendants' managerial and supervisory employees in various professional organizations, including but not limited to the Association of Club Executives (ACE), which publish newsletters cautioning their members (including Defendants) against misclassifying their entertainers as independent contractors.

71.   On information and belief, Defendants' officers and managerial employees have received newsletters concerning the prospect of lawsuits such as

## **RETALIATION**

72.   On August 11, 2009, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling went to Onyx.

73.   On August 11, 2009, management provided the entertainers with a packet of documents which they were told they were required to sign as a condition of continued employment at Onyx.

74.   A copy of one of the documents Plaintiffs were told they were required to sign is attached to this Complaint as Exhibit C.

75.   The document Plaintiffs were required to sign as a condition of continued employment states that Plaintiffs are independent contractors and not employees.  (Ex. C.)

76.   The document Plaintiffs were required to sign as a condition of continued employment purported to alter the terms of Plaintiffs' employment since the date of their first employment with Onyx and to render them independent contractors since that date, regardless of the actual factual circumstances surrounding the relationship.  (Ex. C.)

77.   The document Plaintiffs were required to sign as a condition of continued employment purported to determine that if Plaintiffs were adjudged to

have actually been Onyx's employees, that Plaintiffs agreed they would have permitted Onyx to keep the gratuities Plaintiffs received from customers during that time.  (Ex. C.)

78.    The above described paperwork was provided to a large group of entertainers on the evening of August 11, 2009.  The large group included both Plaintiffs in this lawsuit as well as other women who work as entertainers at Onyx.

79.    After the paperwork was distributed to the large group of entertainers, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were called in to a meeting with management staff at Onyx.  The individuals who were present on behalf of Onyx were Defendant Kapp, Rick (a Manager at Onyx whose last name is unknown to Plaintiffs), Cliff (a manager at Onyx whose last name is unknown to Plaintiffs) and Sabrina (a "house mom" at Onyx whose last name is unknown to Plaintiffs).

80.    The meeting between Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling and Onyx management was partially recorded by one of the attendees (the beginning of the meeting was not recorded.)   A transcript of the recording is attached to this Complaint as Exhibit D.

81.    On the transcript attached as Exhibit D, the person who is identified as "Male 1" is Rick, a night manager at Onyx.

82.    On the transcript attached as Exhibit D, the person who is labeled as "Male 2" is Defendant Kapp.

83.    During the meeting on August 11, 2009, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were told that they were "not going to be allowed to work" at Onyx and that they were "not going to be allowed on [club] property."  (Ex. D at 9.)

84.    During that same meeting, meeting on August 11, 2009, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were told that the "reason behind" their being fired was "litigation."   Defendant Kapp explained, "You don't need to be in the building now. You're suing us."  (Ex. D at 15.)

85.    Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were told that they could have their jobs back if they convinced all Named Plaintiffs to drop the lawsuit.  Defendant Michael Kapp stated "the only way that it's going to go away and you all are going to be able to work in this club is if all eight or nine of you, whoever is on the class action lawsuit that you all decided to file, get together and decide to drop it.  Once you all decide to drop it and you all talk amongst each other, then you can all come back to work and wipe the slate clean, and any of this B.S. we can basically sit down and go over."  (Ex. D at 8.)

86.     Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were specifically informed during this meeting that all of them must drop this lawsuit in order for any of them to be allowed to return to work. Defendant Kapp made clear that none of them would be allowed to return to work if only some of them elected to drop their claims in this lawsuit, stating, "Basically, you all did this together.  You all are going to walk away together, or you're going to go to court together…. All or nothing." (Ex. D at 14.)

87.     During the August 11, 2009 meeting, Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling were also threatened in a variety of other ways.  Specifically, management threatened to talk on "the streets" in order to prevent the individuals involved in this case from working at other adult entertainment clubs in Atlanta.   (Ex. D at 11.)

88.     After the August 11, 2009 meeting with Plaintiffs Parker, Pough, Wells, Leaphart, Sales, and then-opt-in plaintiff Appling, Defendant Kapp and Rick had a meeting with other entertainers who work at Onyx.  During that meeting, the other entertainers were informed about the lawsuit, informed that Named Plaintiffs had been fired, and told that if Plaintiffs were successful, all entertainers at Onyx would receive only the minimum wage as payment.

89.     Plaintiff Jordan was not present at the August 11, 2009 meeting but went to work on August 12, 2009.

90.    When Plaintiff Jordan arrived at work on August 12, 2009 she was told by the secretary that she was not allowed on the premises.

91.    Rick, the manager at Onyx, told Plaintiff Jordan on August 12, 2009 that it was her responsibility to get the other people involved in this lawsuit to drop the case.

92.    Rick also told Plaintiff Jordan that she was "suspended" unless and until all the plaintiffs in this case dropped the lawsuit.

93.    Plaintiff Clincy was not present at the August 11 meeting but went to Onyx on August 13, 2009.

94.    While at Onyx on August 13, 2009, Plaintiff Clincy spoke to Rick.

95.    Plaintiff Clincy's conversation with Rick on August 13, 2009 was recorded.  A transcript of this conversation is attached as Exhibit E.

96.    During her conversation with Rick on August 13, 2009, Plaintiff Clincy was told that her employment had been terminated.  (Ex. E at 5.)

97.    During the August 13 conversation, Rick stated Defendants' intention to use improper discovery tactics to threaten and harass Plaintiff Clincy and the other Plaintiffs in this matter.   Specifically, Rick stated, "Ever been in a deposition?  It's ugly.  They'll ask you all kinds of personal questions (inaudible) anything you've ever done wrong.  Now you, granted, may not be as bad off as

98.    Rick also told Plaintiff Clincy that the plaintiffs in this case are all "suspended until it goes to trial which will be about three or four years."  (Ex. E at 5.)

99.    Defendants also threatened to use the judicial system to retaliate against Plaintiffs. Rick told Plaintiff Clincy told that "Jack" (presumably referring to Jack Galardi, the CEO of Galardi South Enterprises) was going to countersue each of the Named Plaintiffs.  (Ex. E at 4.)

100.   In contrast to what the individuals were told at the August 11, 2009 meeting, Rick told Plaintiff Clincy said that people would be allowed to come back to work if they simply dropped their individual claims.  According to Rick, this employment decision was made by Defendant Galardi personally. "The only way anybody can come back is if everything is dropped or, **I was talking to Jack today, he said if an individual entertainer was to drop off of the lawsuit they can come back to work (inaudible) it with the attorney first.**" (Ex. E at 5, emphasis added.)

101.   During his meeting with Plaintiff Clincy on August 13, 2009, Rick made clear that the statements he was making were consistent not only with his

conversation with "Jack" but also with his conversations with Defendant Kapp, stating "I'm saying to you everything that Mike said." (Ex. E at 10.)

102.   Rick also informed Plaintiff Clincy that Defendant Kapp told all the other entertainers who worked at Onyx about the lawsuit, informed them that the individuals who filed the case had been terminated, and made a series of representations to them about what kinds of repercussions they would face if Plaintiffs were successful in this lawsuit, including the representation that they would only be paid the minimum wage. Rick stated, "Mike went in the back and addressed all the other entertainers on staff and let them know what was going on and asked them, would you guys rather be employed, and explained to them the tax rate. And everybody, hell, no. Who wants to work for minimum wage?" (Ex. E at 10.)

103.   At the end of her conversation with Rick, Plaintiff Clincy was escorted off the property by a security guard. (Ex. E at 15.)

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION—MINIMUM WAGE
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *ET. SEQ.*

104.   The above paragraphs are incorporated by reference as if fully set forth herein.

105.   This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay a minimum wage to Plaintiffs and the FLSA Collective to which they were entitled.

106.   At all times relevant, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201, *et. seq.*  At all times relevant, Defendants have employed and continue to employ, employees, including Plaintiffs and each of the members of the FLSA Collective, who engage or engaged in commerce or in the production of goods for commerce.  At all times relevant, upon information and belief, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

107.   The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendant and protect Plaintiffs and the FLSA Collective.

108.   Plaintiffs have consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).  As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

20

109.   Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiffs and the FLSA Collective were entitled to be compensated at a rate of $5.15 per hour before July 24, 2007; $5.85 per hour from July 24, 2007 to July 23, 2008, $6.55 per hour beginning July 24, 2008, and $7.25 per hour beginning July 24, 2009.

110.   Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq.* because Defendant provided no notice to employees of its intention to take a tip credit and because Plaintiffs were not allowed to keep all their tip money.

111.   Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage to Plaintiffs and the FLSA Collective.

112.   By failing to compensate Plaintiffs and the FLSA Collective, Defendants violated, and continued to violate, their statutory rights under FLSA, 29 U.S.C. § 206.

113.   The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

114.   Plaintiffs, on behalf of themselves and the FLSA Collective, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

115.    Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION—OVERTIME**
**FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *ET. SEQ.***

116.    The above paragraphs are incorporated by reference as if fully set forth herein.

117.    This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay overtime compensation to Plaintiffs and the FLSA Collective to which they were entitled.

118.    The overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendants and protect Plaintiffs and the FLSA Collective.

119.    Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiffs and the FLSA Collective were entitled to be compensated at one-and-a-half times their regular rate of compensation for all hours worked over forty hours in any given workweek.

120.    Defendants, pursuant to their policies and practices, refused and failed to pay any wage at all to Plaintiffs and the FLSA Collective.

121.    Defendants did not pay one-and-a-half times Plaintiffs' regular rate for hours worked in excess of forty hours per week because Defendants paid no wages at all.

122.    The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

123.    Plaintiffs, on behalf of themselves and the FLSA Collective, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

124.    Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION—RETALIATION
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *ET. SEQ.*

125.    The above paragraphs are incorporated by reference as if fully set forth herein.

126.    This claim arises from Defendants' unlawful and willful retaliation against Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, .

127.    It is a violation of 29 U.S.C. § 215(a)(3) "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter."

128.    Any employer who violates the provisions of 29 U.S.C. § 215(a)(3) "shall be liable for such legal or equitable relief as may be appropriate to effectuate

the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

129.   On August 11, 12, and 13 Plaintiffs Clincy, Hammond, Parker, Pough, Jordan, Wells, Leaphart, Sales and then-opt-in plaintiff Appling were retaliated against by being terminated and threatened.

130.   Defendants willfully and recklessly terminated Plaintiffs employment and threatened Plaintiffs in violation of 29 U.S.C. § 215(a)(3).

131.   Plaintiffs, on behalf of themselves and the FLSA Collective seek reinstatement, back and front pay, emotional distress damages, punitive and/or liquidated damages, and all other damages available at law, as applicable.

132.   Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants as follows:

a. Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all entertainers who worked for Defendants during any portion of the three years immediately preceding the filing of this action.  Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit without fear of reprisal, retaliation, or abuse by Defendants;

b. Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages, overtime pay and unlawful kickbacks;

c. Judgment against Defendants for reinstatement, back and front pay, emotional distress damages, punitive and/or liquidated damages, and all other damages available at law, as applicable;

d. Judgment against Defendants that their violations of the FLSA were willful;

e. An equal amount to Plaintiffs' damages as liquidated damages;

f. An award of prejudgment interest;

g. All costs and attorneys' fees incurred in prosecuting these claims;

h. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of themselves and similarly situated individuals demand a trial by jury.

Dated: August 28, 2009                 NICHOLS KASTER, PLLP

                                     s/E. Michelle Drake
                                       E.  Michelle Drake (GA Bar No. 229202)
                                       Donald H. Nichols (GA Bar No. 450212)
                                       Steven Andrew Smith (MN Bar No. 260836)
                                           *Admitted Pro Hac Vice*
                                       Anna P. Prakash (MN Bar No. 0351362)
                                           *Admitted Pro Hac Vice*
                                       4600 IDS Center
                                       80 South 8th Street
                                       Minneapolis, MN  55402
                                       Telephone (612) 256-3200
                                       Fax (612) 338-4878

                                       And

                                       BUCKLEY & KLEIN, LLP
                                       Edward D. Buckley (GA Bar No. 092750)
                                       Atlantic Center Plaza, Suite 1100
                                       1180 West Peachtree Street
                                       Atlanta, Georgia 30309
                                       Telephone (404) 781-1100
                                       Fax (404) 781-1101

                                       ATTORNEYS FOR PLAINTIFFS