# Exhibit 13



Slip Copy, 2009 WL 3103852 (D.Minn.)
 **(Cite as: 2009 WL 3103852 (D.Minn.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Douglas AHLE, Andrew Jordan, and William Wiseman, individually and on behalf of others similarly situated, Plaintiffs,
v.
VERACITY RESEARCH CO., Defendant.
**Civil No. 09-00042 ADM/RLE.**

Sept. 23, 2009.

Paul J. Lukas, Esq., Donald H. Nichols, Esq., Matthew H. Morgan, Esq., Reena I. Desai, Esq., and Robert L. Schug, Esq., Nichols Kaster, PLLP, Minneapolis, MN, on behalf of Plaintiffs.

Joseph M. Sokolowski, Esq., Krista A.P. Hatcher, Esq., and Lindsay J. Zamzow, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Defendant.

**MEMORANDUM OPINION AND ORDER**

ANN D. MONTGOMERY, District Judge.

### I. INTRODUCTION

**\*1** On July 30, 2009, the undersigned United States District Judge heard oral argument on Plaintiffs Douglas Ahle ("Ahle"), Andrew Jordan ("Jordan"), and William Wiseman's ("Wiseman") (collectively "Plaintiffs") Motion for Conditional Certification and Judicial Notice [Docket No. 48]. In their Complaint [Docket No. 1], filed as a putative collective action, Plaintiffs assert claims for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219. For the reasons set forth herein, Plaintiffs' Motion is granted.

### II. BACKGROUND

Defendant Veracity Research Co. ("Veracity"), an Oklahoma corporation, is a private investigative firm specializing in insurance defense investigations. Answer to Compl., Defenses and Am. Counterclaim (Counterclaim) [Docket No. 29] at 9, ¶ 5; Foster Aff., July 7, 2009 [Docket No. 59], ¶ 2. Veracity does business throughout the United States, including Minnesota. Counterclaim at 9, ¶ 5. Ahle, Jordan, and Wiseman are residents of Minnesota, North Carolina, and Florida, respectively, and are former employees of Veracity. Morgan Decl., June 15, 2009 [Docket No. 51], Ex. 3 at 2-4 (Ahle Decl.) ¶¶ 2, 6; Ex. 3 at 5-7 (Jordan Decl.) ¶¶ 2, 6; Ex. 3 at 8-10 (Wiseman Decl.) ¶¶ 2, 6.

Veracity is hired by insurance companies to investigate suspect claims. Ahle Decl. ¶ 5. After Veracity receives a referral from an insurance company, a manager then assigns the case to one of Veracity's investigators. Ahle Decl. ¶ 7; Jordan Decl. ¶ 7; Wiseman Decl. ¶ 7; Morgan Decl., June 15, 2009, Ex. 3 at 11-13 (Abrams Decl.) ¶ 7; Ex. 3 at 14-16 (Blais Decl.) ¶ 7; Ex. 3 at 17-18 (Harris Decl.) ¶ 7; Ex. 3 at 19-21 (Anderson Decl.) ¶ 7. Plaintiffs were employed by Veracity as "Claims Investigators" or "Surveillance Investigators," or both. *See, e.g.,* Ahle Decl. ¶ 5. Investigators generally do not decide which files are assigned to them and have no control over their workload. *Id.* ¶ 7.

All investigators, whether Claims or Surveillance Investigators, have surveillance duties. *Id.* ¶ 5. Surveillance Investigators typically work in the field, monitoring and video recording individuals who submit questionable workers compensation claims to insurance companies. *Id.* at ¶ 6. Surveillance Investigators also submit reports outlining and documenting the activities they observe. Foster Aff., July 7, 2009, ¶ 7. Most individuals hired by Veracity to be investigators start as a "Level 1-3" Surveillance Investigator. *Id.* ¶ 5. Generally, once a Surveillance Investigator gains experience, he is promoted to a "Level 4" Claims Investigator and takes on additional responsibilities. Ahle Decl. ¶ 5. Claims Investigators generally perform the same duties as Surveillance Investigators, but also interview witnesses, obtain statements, and take photographs in connection with their investigations. Ahle Decl. ¶ 6. Certain Claims Investigators also perform sales functions. Foster Aff., July 7, 2009, ¶ 11. Regardless of whether acting as a Surveillance or

Page 2

Slip Copy, 2009 WL 3103852 (D.Minn.)
 (Cite as: 2009 WL 3103852 (D.Minn.))

Claims Investigator, an investigator is required to enter findings of his investigation into an on-line database and to enter specific information, including when the investigator left his home, the drive time, when he arrived at the site, notes regarding his observations, when he departed the site, and when he arrived back at his home. Ahle Decl. ¶ 8. However, neither Surveillance nor Claims Investigators provide opinions as to whether fraud occurred, whether a claim should be paid, or whether further investigation should be conducted; rather, they report the facts. *Id.*

**\*2** When investigators are promoted to "Level 5," they become either "Senior Field Investigators" or "Senior Operations Investigators." Foster Aff., July 7, 2009, ¶ 13. A Senior Field Investigator supervises and manages Surveillance and Claims Investigators in the field. *Id.* In addition, Senior Field Investigators train new investigators and perform various promotion and sales duties. *Id.* Plaintiffs aver the primary duty of Senior Field Investigators is to conduct investigations. Morgan Decl., July 20, 2009 [Docket No. 65], Ex. 1 (Wiseman Supp. Decl.) ¶¶ 4-5. Senior Operations Investigators perform similar functions to Senior Field Investigators, but they work in an office rather than in the field and focus more on scheduling, client interaction, recruiting, and training. *Id.* ¶¶ 14-15. On occasion, Senior Operations Investigators also conduct investigations. *Id.* ¶ 16.

When Veracity began its business in 1995, it classified all investigators as "exempt" employees who are not required by the FLSA to be paid overtime for work in excess of forty hours per week. Morgan Decl., July 20, 2009, Ex. 2 (Foster Dep.) 19:24-20:14. The decision to classify investigators as exempt employees was, according to Veracity's president, based on an "industry standard." Foster Dep. 66:25-67:18. There was no consideration of job duties in classifying investigators as exempt. *Id.* Plaintiffs now claim they were improperly classified by Veracity as exempt and that they routinely worked more than forty hours per week without overtime pay. Compl. ¶¶ 9-10.

To date, Plaintiffs are joined by twenty other investigators who have opted-in to this lawsuit. *See* Notices of Consent Filing [Docket Nos. 3, 10-12, 24, 25, 43, 45, 46, 54, 57, 62, 72, 79, 80, 82, 84, 85, 92, 96].[FN1] Plaintiffs filed the current Motion, seeking conditional certification of this case as a "collective action" under the FLSA and court-facilitated notice to putative class members who might wish to opt-in to this lawsuit. Plaintiffs describe the putative class as being "[a]ll persons who work or have worked for [Veracity] as a claims or surveillance investigator anywhere in the United States ... who were not paid for all hours worked in excess of 40 hours per week." Morgan Decl., June 15, 2009, Ex. 1 (Proposed Judicial Notice) at 2.

> [FN1.] One opt-in plaintiff, [Docket No. 83], recently withdrew from the litigation, [Docket No. 86].

### III. DISCUSSION

**A. Proposed Class**

As an initial matter, the parties dispute which levels of investigators are included in the putative class, as it has been pleaded by Plaintiffs. Plaintiffs contend that Level 5 Senior Field Investigators are included because their primary duty is performing claims or surveillance investigations. By contrast, Plaintiffs maintain, Level 5 Senior Operations Investigators' primary duties are administrative, and, for that reason, they are not similarly situated to the other class members. Pls.' Reply Mem. in Supp. of Conditional Cert. [Docket No. 63] at 2 n. 2. During oral arguments, Veracity argued that by seeking to include Level 5 Senior Field Investigators in the class, Plaintiffs are improperly attempting to expand the class beyond the scope that had previously been identified.

**\*3** Plaintiffs' initial identification of the individuals within the class focuses on their status as "investigators" and the primary job duties of those individuals, namely, the investigation of allegedly suspicious insurance claims. *See* Compl. ¶¶ 7-8. Prior to Veracity's arguments highlighting the alleged difference among the five different levels of "investigators," Plaintiffs did not distinguish the levels of investigators. The Court is not convinced that Plaintiffs are attempting to improperly expand the class; rather, it appears that they are responding to Veracity's arguments that Level 5 Senior Field Investigators are not similarly situated to the other individuals in the proposed class. Veracity argues that Plaintiffs should be precluded from seeking to include Level 5 Senior Field Investigators in the proposed class because Plaintiffs allegedly failed to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

specifically "mention the word 'senior' " when identifying the investigators in the proposed class. Def.'s Supp. Mem. in Opp'n to Conditional Cert. [Docket No. 73] at 3. The status of "investigator" has always been the focus of Plaintiffs' identification of the individuals within the proposed class and that word is indeed present in the job title of Level 5 Senior Field *Investigators.*[FN2] All levels of investigators at Veracity, except for Level 5 Senior Operations Investigators, will be considered as part of the putative class.

> FN2. Veracity's thirteen page supplemental brief (specifically, pages four through ten) improperly raised additional arguments against granting conditional certification, in direct contravention of the Court's explicit instruction that Veracity confine the supplemental briefing to only (1) the claimed "procedural impropriety" of Plaintiffs' arguments in favor of including Level 5 Senior Field Investigators in the proposed class; and (2) objections and requests for modifications to Plaintiffs' proposed notice in the event that conditional certification is granted. The Court will not consider those additional arguments in its analysis.

**B. Motion for Conditional Certification**

Under 29 U.S.C. § 216(b), employees may bring a collective action to collect unpaid overtime compensation against an employer "for and in behalf of himself or themselves and other employees similarly situated." For a case to proceed as a collective action under § 216(b), the plaintiffs bear the burden of establishing that they are "similarly situated." See *Smith v. Heartland Auto. Servs., Inc.,* 404 F.Supp.2d 1144, 1149 (D.Minn.2005). This burden is "not so rigorous that [the plaintiffs] must demonstrate their positions are identical," but merely that their positions are "similar." *Nerland v. Caribou Coffee Co., Inc.,* 564 F.Supp.2d 1010, 1018 (D.Minn.2007) (quotation omitted). Because neither the FLSA nor the Eight Circuit has defined the term "similarly situated," district courts in this circuit have typically approached the issue of whether plaintiffs are similarly situated through a two-stage process. *Frank v. Gold'n Plump Poultry,* Inc., 2005 WL 2240336, *5 (D.Minn. Sept. 14, 2005); *Greenwald v. Phillips Home Furnishings Inc.,* No. 4:08CV1128, 2009 WL 259744, at *4 (E.D.Mo. Feb. 3, 2009) (collecting cases).

During the first stage, a court determines whether the class should be conditionally certified for notification and discovery purposes. *Burch v. Qwest,* 500 F.Supp.2d 1181, 1186 (D.Minn.2007) (quoting *Dege v. Hutchinson Tech., Inc.,* No. 06-3754, 2007 WL 586787, *1 (D.Minn. Feb. 22, 2007)). "Plaintiffs' burden ... is not onerous." *Dominquez v. Minn. Beef Indus., Inc.,* No. 06-1002, 2007 WL 2422837, at *1 (D.Minn. Aug. 21, 2007). The Plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan. *Burch,* 500 F.Supp.2d at 1186. In determining whether Plaintiffs have met the burden, the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *Dege,* 2007 WL 586787, at *2. In the second stage, which occurs after discovery is complete and usually is prompted by a motion to decertify, a district court must make a factual determination on whether the plaintiffs are similarly situated. See *Nerland,* 564 F.Supp.2d at 1017; *Frank,* 2005 WL 2240336, at *2. Courts typically make this determination by considering several factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations. *Nerland,* 564 F.Supp.2d at 1018. Because the parties have not completed discovery, this case is in the first stage.

**\*4** Plaintiffs argue Veracity's investigators are similarly situated because "they share substantially similar job duties and responsibilities, and are subject to the same company-wide policy denying them overtime compensation." Pls.' Mem. in Supp. of Conditional Cert. [Docket No. 50] at 11. Plaintiffs argue that Claims Investigators, Surveillance Investigators, and Senior Field Investigators are similarly situated. *Id.* at 14; Pls.' Reply Mem. in Supp. of Conditional Cert. at 2 n. 2. Plaintiffs acknowledge that Claims Investigators perform some additional responsibilities, such as interviewing witnesses, obtaining statements and taking photographs, that Surveillance Investigators do not perform. Plaintiffs' Mem. in Supp. of Conditional Cert. at 14. Despite these additional duties, Plaintiffs contend, the primary duties of Claims Investigators, Surveillance Investigators, and Senior Field Investi-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2009 WL 3103852 (D.Minn.)
 (Cite as: 2009 WL 3103852 (D.Minn.))

gators are investigating questionable claims and, therefore, they all are similarly situated. *Id.* Additionally, Plaintiffs emphasize that because Veracity itself classified all investigators as exempt from the overtime requirements of the FLSA, regardless of the type of investigator, and because all investigators had to go through similar training when they were first hired, they are similarly situated.

Veracity responds that Plaintiffs are not similarly situated because there are four different job titles and five levels of investigators: Surveillance Investigators (Levels 1-3), Claims Investigators (Level 4), Senior Field Investigators (Level 5), and Senior Operations Investigators (Level 5). Def's. Mem in Opp. to Conditional Cert. at 1. Veracity argues that the job duties vary significantly across the different job titles and that determining whether employees in these varying titles and levels were improperly classified as exempt will require a highly individualized and fact-specific analysis into the disparate factual and employment settings of each plaintiff. Def's. Mem in Opp. to Conditional Cert. at 13, 19. Veracity highlights differences exist across the different job titles and levels of investigators including that the higher level investigators perform non-investigative duties such as sales, supervision, management, and training that the lower level investigators do not.

Although higher level investigators may well have additional duties, there is evidence of basic commonalities in job duties among Veracity's levels of investigators. All levels of investigators can and do conduct surveillance and claims investigations. Foster Dep. 47:1-13, 49:17-51:4; Foster Aff., July 7, 2009, ¶¶ 7, 8, 9, 13, 16; Morgan Decl., July 20, 2009, Ex. 1 (Wiseman Suppl. Decl.) ¶¶ 3-5; Ex. 4 (Ahle Supp. Decl.) ¶¶ 4-6. Level 1-3 Surveillance Investigators conduct investigations, ranging from surveillance, undercover, background, and activity checks. Foster Aff., July 7, 2009, ¶ 7. Plaintiffs Wiseman and Ahle allege their primary duty as Level 4 Claims Investigators was to conduct investigations. Wiseman Supp. Decl. ¶ 3; Ahle Supp. Decl. ¶¶ 3-4. And even with regard to Level 5 Senior Field Investigators, there is evidence that their primary job duty is to conduct investigations. Wiseman Supp. Decl. ¶¶ 4-5. Significantly, the fact that Veracity's classification of all investigators as exempt was based not on any specific duties but rather on an "industry standard" that typically deemed investigators as exempt, regardless of job title or level. Foster Dep. 19:24-20:14, 66:25-67:18.

**\*5** The evidence adduced by Plaintiffs demonstrates a *colorable basis* that they are similarly situated to the putative class members, having worked in excess of forty hours per week without being paid overtime compensation because they all were improperly classified as exempt employees pursuant to a single policy or plan implemented by Veracity. Veracity's declarations disputing Plaintiffs' characterization that the "primary" duty of all levels of investigators is the same is not appropriate rebuttal at this stage of the certification process, where factual disputes are not resolved. *See Dege,* 2007 WL 586787, at \*2.

Veracity next argues that conditional certification should be denied on the alternative ground that the number of investigators who have opted-in demonstrates an inadequate interest by putative class members. Courts frequently require a demonstration of adequate interest because "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." *Knutson v. Blue Cross & Blue Shield of Minn., No. 08-584, 2008 WL 4371382, at \*3 (D.Minn. Sept. 23, 2008)* (alteration in original) (quotation omitted); *see also Brennan v. Qwest Commc'n Intern., Inc., No. 07-2024, 2008 WL 819773, at \*5 (D .Minn. Mar. 25, 2008)*. As of the date of this order, nineteen putative class members joined the three named plaintiffs by filing consent forms. Veracity avers that this number of investigators represents a small percentage of a potential class of approximately 500 individuals. But there is no evidence of record showing how many investigators worked for Veracity in the relevant time frame, and, thus, Veracity's assertion that there will be more than 500 investigators in the class is unsupported. On the current record, the Court is not persuaded that conditional certification should be denied due to a lack of interest. After the class notice has been issued, the Court will perhaps be in a better position to gauge interest.

**C. Judicial Notice**

Plaintiffs request authority to issue their proposed notice of this FLSA action to potential opt-in plaintiffs employed by Veracity in the past three years as in-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3103852 (D.Minn.)
 (Cite as: 2009 WL 3103852 (D.Minn.))

vestigators. "[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential tiffs." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989). The Court finds this is an appropriate case for facilitated notice to potential opt-in plaintiffs. The details of what should be included in such a court-facilitated notice is left to the broad discretion of a district court. See Id. at170.

As requested by the Court, Veracity submitted supplemental briefing, raising several specific objections and requested modifications to the proposed notice. Plaintiffs do not oppose two of Veracity's objections: (1) Veracity's objection requesting that a provision be added to the notice informing potential opt-in plaintiffs that they are entitled to representation of counsel of their choice and are not required to be represented by Plaintiffs' counsel; and (2) Veracity's objection that the 90-day notice period proposed by Plaintiffs be reduced to 60 days. In light of Plaintiffs' consent to these objections, the proposed notice shall be modified accordingly.

**\*6** Veracity next argues that potential opt-in plaintiffs have a right to know who defense counsel is and, for that reason, the notice should be modified to identify Veracity's counsel. Plaintiffs disagree, arguing that identifying Veracity's counsel will be confusing and that it is "uncertain what [Veracity's] counsel could ethically say to a putative class member who desires to join the case." Pls.' Ltr. [Docket No. 78]. This issue has been considered by several courts, which have disagreed on whether defense counsel should be identified.[FN3] The Court finds the decisions that have questioned any possible utility that could be gained by identifying defense counsel to be more soundly reasoned. The request to modify the proposed notice to identify defense counsel is denied.

> FN3. Compare Cryer v. Intersolutions, Inc., No. 06-2032, 2007 WL 1053214, at \*304 (D.D.C. Apr. 7, 2007) ("The Court also sees no reason to include defense counsel on the class notice. Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion of those who receive the notice."), and Morden v. T-Mobile USA, Inc., No. C05-2112RSM, 2006 WL 2620320, at \*4 (W.D.Wash. Sept. 12, 2006) (holding that the request to include defense counsel's contact information has " 'no basis in law or logic' ") (quoting Gambo v. Lucent Technologies, Inc., No. 05-C03701, 2005 WL 3542485, at \*7 (N.D.Ill.Dec. 22, 2005)), with Creten-Miller v. Westlake Hardware, Inc., No. 08-2351, 2009 WL 2058734, at \*3 (D. Kan. Jul 15, 2009) (finding "no evidentiary or legal basis" for the argument that including defense counsel's contact information "could lead potential plaintiffs to inadvertently contact defense counsel, who might encourage putative plaintiffs not to join the action or frighten them from participating in the suit" and therefore directing that the proposed notice be modified to include defense counsel's contact information), and Krzesniak v. Cendant Corp., No. C 05-05156, 2007 WL 4468678, at \*3 (N.D.Cal. Dec. 17, 2007) (finding that a class notice should identify defense counsel as a matter of "fairness"), cited with *approval* in Sibley v. Sprint Nextel Corp., No. 08-2063, 2009 WL 662630, at \*3 (D.Kan. Mar. 13, 2009).

Veracity's next objection is that the proposed notice fails to "advise potential opt-in claimants of their obligations and potential exposure." Def.'s Supp. Mem. in Opp'n to Conditional Cert. at 12. Specifically, Veracity claims that "[a]ny notice ... should indicate that opt-in claimants may have to respond to written questions, sit for depositions, and testify in court." *Id.* Further, Veracity claims that the notice should explain to putative class members that if Veracity prevails in this action, those who opted-in "will be entitled to no relief and may be responsible for costs." *Id.* Plaintiffs essentially consent to adding language indicating that opt-in plaintiffs will have to be actively involved in this litigation, however, they request that instead of using the word, "have," the notice should inform putative class members that they "will be expected to participate in the litigation" if they opt-in. Pls.' Ltr. The Court modifies the proposed notice to include the language, "If you choose to join this action, you will be expected to participate in the litigation, which may include being asked to respond to written questions, appear for a deposition, and testify at trial." See Reab v. Elec. Arts, Inc., 214 F.R.D.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

<1234567>

<1>

<0>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

<1234567>

623, 630 (D.Colo.2002) (approving the use of "precatory rather than mandatory language" when informing potential opt-in plaintiffs about their potential obligations). The request to add language warning that if Veracity prevails, individuals who opted-in will be entitled to no relief and may be responsible for costs is denied.

Lastly, Veracity argues that the proposed notice is "misleading regarding the statute of limitations. Any notice ... should clarify that opt-in claimants may be able to recover damages if they were improperly denied compensation within two or three years of the date they file a consent form." Def.'s Supp. Mem. in Opp'n to Conditional Cert. at 12. The statute of limitations for suits brought under the FLSA is two years if based on non-willful violations but three years if based on willful violations. *See* 29 U.S.C. § 255(a). Plaintiffs' Complaint alleges willfulness, charging that Veracity either "knew, or showed reckless disregard for the fact, that it failed to pay [its] investigators overtime compensation in violation of [the FLSA]." Compl. ¶ 11; *see McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988) (adopting a standard of willfulness that considers whether the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"). For the limited purpose of deciding the contents of the court-facilitated notice, the Court finds the allegation of willful conduct sufficient to warrant reference to the FLSA's three-year statute of limitations. *See Longrier v. HL-A Co.,* Inc., 595 F.Supp.2d 1218, 1242 (S . D.Ala.2008) (approving the inclusion of a three-year statute of limitations in a court-facilitated notice when the plaintiffs adequately alleged willfulness); *Cryer,* 2007 WL 1053214, at *3 (applying a three-year statute of limitations for purposes of defining the initial class period in a court-facilitated notice when a plaintiff had sufficiently alleged willful conduct). Veracity's proposed language ("opt-in claimants may be able to recover damages if they were improperly denied compensation within two or three years of the date they file a consent form") is likely to cause confusion. Def.'s Supp. Mem. in Opp'n to Conditional Cert. at 12.

**D. Equitable Tolling the Statute of Limitations**

**\*7** Finally, Plaintiffs request that the Court equitably toll the statute of limitations from the day Plaintiffs filed the Motion for Conditional Certification, June 15, 2009. The Court concludes that the issue of equitable tolling need not be decided now. At this early stage of the litigation, it is unclear whether tolling the statute of limitations, if it were appropriate, would impact the claims of any opt-in plaintiff. If, after the opt-in period has closed, it appears that tolling impacts any opt-in plaintiffs' claim, the issue of equitable tolling can be revisited.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Conditional Certification and Judicial Notice [Docket No. 48] is **GRANTED;**

2. Veracity is ordered to identify all Level 1-3 Surveillance Investigators, Level 4 Claims Investigators, and Level 5 Senior Field Investigators who worked for Veracity in the past three years; and

3. The issuance of Plaintiffs' proposed notice, as modified by this Order, to all potential opt-in plaintiffs is authorized.

D.Minn.,2009.
Ahle v. Veracity Research Co.
Slip Copy, 2009 WL 3103852 (D.Minn.)

END OF DOCUMENT