## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KARENZA CLINCY, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **CIVIL ACTION FILE NO.** |
| **v.** | ) **NO. 1:09-CV-2082-RWS** |
| | ) |
| **GALARDI SOUTH ENTERPRISES,** | ) |
| **INC., d/b/a THE ONYX, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS FILED IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW GALARDI SOUTH ENTERPRISES, INC., GALARDI SOUTH ENTERPRISES CONSULTING, INC., PONY TAIL, INC. MIKE KAP and JACK GALARDI, Defendants in the above-styled civil action, and pursuant to Local Rule 56.1(B)(2) file their Response to Plaintiffs' Statement of Undisputed Facts Filed in Support of Their Motion for Partial Summary Judgment.

## I. DEFENDANTS' GENERAL OBJECTIONS

1. Defendants object to Plaintiffs' Statement of Facts on the grounds that, if, as Plaintiffs contend, all 226 of Plaintiffs' Statements of Fact are material,

which Plaintiffs contend they are, than disputing any of them should result in the denial of Plaintiffs' Motion for Partial Summary Judgment.

2. Defendants object to Plaintiffs' Statement of Facts on the ground that they rely upon disputed material facts, or facts which are not viewed in a light most favorable to Defendants, the non-movants.

3. Defendants object to Plaintiffs' 226 separate Statements of Fact to the extent they purport to rely upon the declarations of witnesses who have never before been identified by Plaintiffs in discovery as individuals with information or knowledge relevant to this civil action. (*See:* Defendants' Objections to Plaintiffs' Declarations Filed in Support of their Motion for Partial Summary Judgment.)

4. Defendants object to Plaintiffs' Statement of Undisputed Material Facts to the extent they have not accurately re-stated, or may have mischaracterized witness testimony.

5. Defendants object to any factual material presented by Plaintiffs within "footnotes" to their Statements of Fact on the ground that said "facts" do not comply with the requirements contained in Local Rule 56.1(B)(2)(a)(1).

6. Defendants object to Plaintiffs' use of certain words throughout their Statement of Material Facts, like "work," "employ", "hire," "fire,"

"discipline" to the extent the use of those words imply or infer a formal employer-employee relationship , rather than an "independent contractor" relationship between Club Onyx and its entertainers.

## II.   PLAINTIFFS' STATEMENT OF MATERIAL FACTS WHICH THEY CONTEND NO GENUINE ISSUE REMAINS TO BE TRIED

1.     At all times since July 2006 ("class period"), the business located at 1888 Cheshire Bridge Road in Atlanta has been operating as Club Onyx ("Onyx"). (**Ex. 2:** Williams Feb. 3 Dep. at 12, 59).

**RESPONSE:   Defendants object to the Court considering any "facts" contained in Plaintiffs' footnote no. 2 on the ground that said "facts" fail to comply with the requirements of Local Rule 56.1(B)(1).   Defendants also object to Plaintiffs' characterization of the class period reaching back to July 2006.   First, the definition of the "class period" or applicable statute of limitations is a question of law for the Court to decide, not a statement of fact. Second, it is undisputed that Club Onyx was the victim of an arson fire on January   1,   2007,   which   resulted   in   the   Club's   closure   for reconstruction/renovation for approximately six months.  (Adams Decl., Par. 12; Williams Dep. 73-74 (Feb. 3, 2010)).   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

2.     Onyx is a strip club that features nude dancers ("entertainers") (**Ex. 3: Adams Dep. at 56; Named Plf. Decs. at ¶ 3.**)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Adams's deposition does not support this Statement. Subject to those objections, Defendants do not dispute this Statement.**

3.     Each of the Named Plaintiffs in this action has worked as an entertainer at Onyx during the class period.  (Named Plf. Decs. at ¶ 1.)

**RESPONSE:   Defendants also object to Plaintiffs' characterization of the class period reaching back to July 2006.   First, the definition of the "class period" or applicable statute of limitations is a question of law for the Court to decide, not a statement of fact.   Second, it is undisputed that Club Onyx was the victim of an arson fire on January 1, 2007, which resulted in the Club's closure for reconstruction/renovation for approximately six months. (Adams Decl., Par. 12; Williams Dep. 73-74 (Feb. 3, 2010)).   Subject to those objections, for purposes of their Motion for Partial Summary Judgment Motion, Defendants do not dispute that each of the named Plaintiffs have performed at Club Onyx as a dancer, at one point or another, and for varying lengths of time, since July 2006.**

4.     Entertainers' primary job duties are to perform personal dances, during which they disrobe, for customers on the main floor of the club and dance on stage.  (**Ex. 2:** Williams Feb. 3 Dep. at 46.)

**RESPONSE:  Denied.  (Williams Dep. 46)(Feb. 3, 2010).**

5.     Onyx sets the price of table dances at $10 and entertainers cannot negotiate this price with customers.  (**Ex. 4:** Leaphart Dep. at 90-91; **Ex. 5:** Wells Dep. at 44; **Ex. 6:** Clincy Dep. at 95; **Ex. 7:** Pough Dep. at 70; **Ex. 8:** Parker Dep. at 87.)

**RESPONSE:  Denied.  (Williams Dep. 60 (Feb. 3, 2010); Adams Dep. 44 (table-side dances fees are sometimes $5); Wells Dep. 50 (table-side dance fee consistent with other clubs at which she performs); Leaphart Dep. 90-91 (same).**

6.     All entertainers who perform at Onyx have been characterized as independent contractors throughout the class period.  (**Ex. 2:** Williams Feb. 3 Dep. at 8.)

**RESPONSE:  For purposes of their Motion for Partial Summary Judgment Motion, Defendants do not dispute that since July 2006, all entertainers performing at Club Onyx have been characterized by Defendants as independent contractors, but for the reasons stated *supra,* Defendants object**

**to Plaintiffs' characterization of the class period as reaching back to July, 2006, which is a question of law for the Court to decide, not a statement of material fact.**

7.      Defendant Jack Galardi, together with the General Counsel of Defendant Pony Tail, Inc. made the decision to classify entertainers at Onyx as independent contractors.  (**Ex. 2:** Williams Feb. 3 Dep. at 32.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

8.      Onyx does not pay entertainers wages or include them in payroll. (**Ex. 2:** Williams Feb. 3 Dep. at 75-76.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

9.      Rather, to earn money for working at Onyx, entertainers rely solely on tips from customers.  (See id.; Sales Dec. at ¶ 53; Pough Dec. at ¶ 49; Parker Dec. at ¶ 51; Leaphart Dec. at ¶ 54; Jordan Dec. at ¶ 52; Clincy Dec. at ¶ 48; Wells Dec. at ¶ 53.)

**RESPONSE:  Denied.  Dancers who perform at Club Onyx earn not only tips from the Club's customers, but they also earn fees from performing table-side**

**dances and private dances in Club Onyx's VIP rooms.  (Sales Dep. 71; Jordan Dep. 89-90, 100; Leaphart Dep. 127; Pough Dep. 64; Wells Dep. 44-45, 51).**

10.    At no time during the class period has the money that entertainers receive from customers been included in Defendant Pony Tail's gross receipts. (**Ex. 2:** Williams Feb. 3 Dep. at 72-73, 80.)

**RESPONSE:  For purposes of their Motion for Partial Summary Judgment Motion, Defendants do not dispute that since 2006, money earned by dancers has not been taken into Pony Tail, Inc.'s gross receipts, but for the reasons stated *supra*, Defendants object to Plaintiffs' characterization of the class period as reaching back to July, 2006, which is a question of law for the Court to decide, not a statement of material fact.**

### UNDISPUTED FACTS RELATED TO THE RELATIONSHIP AND ORGANIZATION OF DEFENDANTS

11.    Defendants claim that the Defendant Pony Tail, not any of the other Defendants, is the entity that would be the employer of Onyx's entertainers, including the Named Plaintiffs, in the event this Motion is granted.  (See Williams Aug. 25, 2009 Dec.; **Ex. 10:** Murphey Aug. 25, 2009 Let.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants**

further object to this "Statement of Fact," inasmuch as it is not a statement of fact at all; rather, it is a conclusion of law not properly contained within Plaintiffs' Local Rule 56.1(B)(1) Statement of Facts.  Plaintiffs' citation to counsel's letter is improper, since it is not "evidence," but statement of counsel.   Defendants further object to Plaintiffs' characterization of Defendant Pony, Tail, Inc. as Plaintiffs' "employer" for the reasons set forth in Defendants' Motion for Summary Judgment, which is incorporated herein by reference.

12.    Defendants further claim that throughout the class period, Defendants GSE and GSEC have been mere flags or handles for the "corporate office" located at 1730 Northeast Expressway in Atlanta, Georgia.  (**Ex. 9:** Williams Feb. 10 Dep. at 6-8, 15-16; **Ex. 11:** Pepper Dep. at 12.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

13.    1730 Northeast Expressway in Atlanta, Georgia is the business address for the Named Corporate Defendants, Pony Tail, Inc. ("Pony Tail"), Galardi South Enterprises, Inc. ("GSE"), and Galardi South Enterprises

Consulting, Inc. ("GSEC").  (**Ex. 9:** Williams Feb. 10 Dep. at 6-8, 15-16; **Ex. 11:** Pepper Dep. at 12.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion,  Defendants do not dispute this Statement.**

14.    Defendant Jack Galardi ("Galardi") is CEO and shareholder of each of the three Named Corporate Defendants and owns a controlling interest in each. (**Ex. 9:** Williams Feb. 10 Dep. at 26; **Ex. 12:** Pony Tail Interrog. Resp. No. 2.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

15.    Defendant Jack Galardi owns several clubs, including Onyx, that "answer" to the corporate office.  (**Ex. 9:** Williams Feb. 10 Dep. at 17.)

**RESPONSE:      Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground it is vague and unclear what Plaintiffs mean by "several clubs, including Onyx 'answer' to the corporate**

office."  **Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute this Statement.**

16.    Many of the clubs that answer to the corporate office, including Onyx, are listed on the website www.showbars.com, which is maintained by the "corporate office."  (**Ex. 9:** Williams Feb. 10 Dep. at 17-18; **Ex. 2:** Williams Feb. 3 Dep. at 27.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that Plaintiffs' citation does not support this Statement of Fact.  Subject to those objections, the Statement is denied.  (Williams Dep. 17-18)(Feb. 10, 2010).**

17.    Defendants Jack Galardi and Michael Kap ("Kap") have offices at the corporate office.  (**Ex. 9:** Williams Feb. 10 Dep. at 9; **Ex. 13:** Hayes Dep. at 17.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

18.     Defendant Kap is known as the Chief Operating Officer of GSEC and was handpicked for this role by Defendant Galardi.  (**Ex. 9:** Williams Feb. 10 Dep. at 21-22.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that Plaintiffs' citation to Mr. Williams's deposition does not support Plaintiffs' Statement that Mr. Kap was "handpicked for this role by Defendant Galardi."  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

19.     Defendant Kap acts as Defendant Galardi's "eyes and ears" in his various clubs, including Onyx.  (**Ex. 2:** Williams Feb. 3 Dep. at 96; **Ex. 9:** Williams Feb. 10 Dep. at 23, 39 (explaining how Kap's duties are dictated by Defendant Galardi).)

**RESPONSE:     Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

20.     In other words, Defendant Kap's duties include conveying Defendant Galardi's directions to the clubs, including Onyx, and informing Defendant Galardi about any issues with management or entertainers, policy-making, maintenance, repairs on the buildings, and potential acquisition of future properties related to or at the clubs, including Onyx.  (**Ex. 9:** Williams Feb. 10 Dep. at 21-24.)

**RESPONSE:     Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

21.     Named Plaintiff Monica Leaphart went with another entertainer to the "corporate office" on one occasion and met with Defendant Kap in the hopes of resolving a dispute involving an entertainer at Onyx.  (**Ex. 4:** Leaphart Dep. at 187-189.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that Objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

22.     The other individuals who work at the corporate office include an office manager, payroll secretary, three other secretarial staff, an accountant, the

director of security, Mr. Williams, and the marketing director.  (**Ex. 9:** Williams Feb. 10 Dep. at 9.)

**RESPONSE:      Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

23.    The individuals who work in the corporate office, including Defendant Kap, are paid through Defendant Galardi's various corporations as decided by Defendant Galardi, or paid directly by Defendant Galardi himself.  (**Ex. 9:** Williams Feb. 10 Dep. at 34-35.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object on the ground that Plaintiffs' citation to Mr. Williams's deposition does not support this Statement.**

**UNDISPUTED FACTS RELATED TO MANAGEMENT OF ONYX**

Undisputed Facts Related to Managers at Onyx

24.    At all times since July 2006 ("class period"), the formal management team at Onyx has included a night manager, relief manager, and general manger.  (**Ex. 2:** Williams Feb. 3 Dep. at 18-19.)

**RESPONSE:   Defendants object to Plaintiffs' characterization of the so-called "class period" reaching back to July 2006.   First, the definition of the "class period" or applicable statute of limitations is a question of law for the Court to decide, not a statement of fact.   Second, it is undisputed that Club Onyx was the victim of an arson fire on January 1, 2007, which resulted in the Club's closure for reconstruction/renovation for approximately six months. (Adams Decl., Par. 12; Williams Dep. 73-74 (Feb. 3, 2010)).  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute that since 2006, Club Onyx's management team included a night manager, relief manager and general manager.**

25.   Managers at Onyx are usually interviewed by Defendant Michael Kap and the ultimate hiring decision is made by Defendant Jack Galardi.   (**Ex. 2:** Williams Feb. 3 Dep. at 13.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.   LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

26.     Rick Hayes has worked in a management position at Onyx throughout the class period and has been the General Manager at Onyx since 2008.  (**Ex. 13:** Hayes Dep. at 5-7; **Ex. 2:** Williams Feb. 3 Dep. at 20.)

**RESPONSE:       Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to Plaintiffs' characterization of the so-called "class period" reaching back to July 2006.  First, the definition of the "class period" or applicable statute of limitations is a question of law for the Court to decide, not a statement of fact.  Second, it is undisputed that Club Onyx was the victim of an arson fire on January 1, 2007, which resulted in the Club's closure for reconstruction/renovation for approximately six months.  (Adams Decl., Par. 12; Williams Dep. 73-74 (Feb. 3, 2010)).   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute that since 2006, Rick Hayes has worked as a manager at Club Onyx.**

27.     Cliff Adams is presently the night manager at Onyx, and has held that position since 2008.  (**Ex. 2:** Williams Feb. 3 Dep. at 18; **Ex. 3:** Adams Dep. at 5-6.)  Prior to being night manager, Mr. Adams worked as "security" at Onyx.  (**Ex. 3:** Adams Dep. at 6.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment Motion, Defendants do not dispute that Cliff Adams is presently the night manager at Club Onyx and that prior to 2008 he worked security there.**

28.   Managers are responsible for hiring entertainers and other staff, including bartenders, waitresses, and floormen.  (**Ex. 2:** Williams Feb. 3 Dep. at 36, 41; **Ex. 13:** Hayes Dep. at 7, 14-15 (testifying to consulting with house mom and DJ about whether to hire entertainers).)

**RESPONSE:   Defendants object to Plaintiffs' use of the word "hiring" to the extent it implies an employer-employee relationship.   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx Managers decide which entertainers are invited to perform there, and which bartenders, waitresses and floormen are hired.**

29.   Management also has the authority to suspend entertainers.  (**Ex. 15:** Swinger Dep. at 29; **Ex. 3:** Adams Dep. at 60.)

**RESPONSE:   Defendant objects to this Statement on the ground that Plaintiffs' citations do not support this Statement.   Neither witness states Club management has the authority to suspend entertainers.**

30.    Management, on their own, too, as well as Defendant Galardi and Defendant Kap at the direction of Defendant Galardi, have the ability to fire entertainers.  (**Ex. 3:** Adams Dep. at 60-61; **Ex. 2:** Williams Feb. 3 Dep. at 37; **Ex. 12:** Pony Tail Admission No. 8; <u>see also</u> **Ex. 9:** Williams Feb. 10 Dep. at 24-25 (testifying that Defendant Galardi has authority to fire entertainers as CEO of GSE and GSEC).)

**RESPONSE:  Defendants object to Plaintiffs' use of the term "fire" to the extent it implies a formal employer-employee relationship.  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that some of the individuals referenced in the Statement have the authority to end the Club's relationship with an entertainer, but not others.  (Adams Dep. 61:7-12).**

31.    Management has sought the house mom Sabrina Swinger's opinion as to suspension and other discipline.  (**Ex. 15:** Swinger Dep. at 28-29.)

**RESPONSE:    Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii). Defendants further object to the Statement on the ground that Plaintiff's citation to Ms. Swinger's deposition testimony does not support Plaintiffs' Statement that Management has sought her opinion about suspensions.**

32.     Swinger would recommend suspension if an entertainer had problems with drugs or was simply causing problems in the dressing room in a way that could impact the morale of other entertainers.  (**Ex. 15:** Swinger Dep. at 28-29.)

**RESPONSE:    Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

33.     At one point during the last three years, Onyx management also allowed floormen to impose fines on entertainers if they were breaking laws or if they were rude or getting into arguments or potential fights with customers.  (**Ex. 3:** Adams Dep. at 32.)

**RESPONSE:    Defendants object to the Court considering any "facts" contained in Plaintiffs' footnote no. 8 on the ground that said "facts" fail to comply with the requirements of LR 56.1(B)(1).  Defendants further object to this Statement as not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

34.     Some of managers' other duties include making sure that entertainers follow Onyx's policies and rules, as well as the rules of the City of Atlanta, and supervising entertainers on a day-to-day basis.  (**Ex. 3:** Adams Dep. at 8, 11; **Ex. 2:** Williams Feb. 3 Dep. at 36-37.)

**RESPONSE:    Defendants dispute that their "rules" are regularly enforced. (Jordan Dep. 122-124; Sales Dep. 107; Wells Dep. 85:6-22; Hayes Dep. 24-26; Adams Dep. 86; Swinger Dep. 46; Adams Decl., Par. 8).**

35.     The day-to-day operational decisions at Onyx are made by club management, unless Defendant Kap conveys specific instructions from Defendant Galardi.  (**Ex. 2:** Williams Feb. 3 Dep. at 17.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

36.     Managers are also responsible for hiring "house moms."   (**Ex. 2:** Williams Feb. 3 Dep. at 41; **Ex. 15:** Swinger Dep. at 6; **Ex. 13:** Hayes Dep. at 90; **Ex. 3:** Adams Dep. at 21.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to**

that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.

<u>Undisputed Facts Related to House Moms and Disc Jockeys at Onyx</u>

37.     There are presently four house moms at Onyx, all of whom report to the General Manager.  (**Ex. 13:** Hayes Dep. at 46, 90; **Ex. 3:** Adams Dep. at 20 (as to supervising house moms).)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

38.     Defendant Pony Tail characterizes the "house moms" as independent contractors.  (**Ex. 2:** Williams Feb. 3 Dep. at 8.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

39.     House moms work directly with the entertainers, splitting their time between the dressing room and the floor of the club.  (**Ex. 15:** Swinger Dep. at 14-15.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.**

40.    House moms are generally responsible for signing entertainers in when they arrive, making sure entertainers are ready to go on stage, making sure there are no problems in the dressing room, and maintaining the cleanliness of the dressing room.  (**Ex. 15:** Swinger Dep. at 13.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.**

41.    Sabrina Swinger is currently a house mom at Onyx, and has been since mid-2007.  (**Ex. 15:** Swinger Dep. at 6-7.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

42.    Ms. Swinger holds herself out as and considers herself and the other house moms to be the entertainers' "direct managers."  (**Ex. 15:** Swinger Dep. at 7-8, Ex. 1)

**RESPONSE:    Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Subject to those objections, the Statement is denied.  (Swinger Dep. 30:19-24).**

43.    If an entertainer has too much "attitude" or is causing problems with the other entertainers, Ms. Swinger will talk to the entertainer and try to resolve the problem.  (**Ex. 15:** Swinger Dep. at 13.)

**RESPONSE:    Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.**

44.    If management wants to talk to an entertainer, Ms. Swinger will go get the entertainer for the manager.  (**Ex. 15:** Swinger Dep. at 15.)

**RESPONSE:    Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to**

**that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

45.    Ms. Swinger also has disciplinary authority over entertainers.  (<u>See</u> *infra* at ¶¶ 128, 132; <u>see e.g.</u>, **Ex. 15:** Swinger Dep. Exs. 2, 5-11.)

**RESPONSE:    Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition exhibits does not support the Statement that she has disciplinary authority over the entertainers. Defendants further object to Plaintiffs' citation to and reliance upon other Statements within their Statement of Undisputed Material Facts as opposed to original source material, such as deposition or declaration testimony.   LR 56.1(B)(1).   Subject to those objections, this Statement is denied.   (Swinger Dep. 108-109).**

46.    There are also disc jockeys ("DJs") that work at Onyx, providing the music that entertainers are required to dance to, and providing instruction to entertainers dancing on stage.  (<u>See generally</u> Named Plf. Decs.)

**RESPONSE:    Defendants object to this Statement on the ground that Plaintiffs' general citation to "Named Plf. Decs" violates LR 56.1(B)(1).**

### <u>UNDISPUTED FACTS RELATING TO ONYX'S METHODS OF</u> <u>CONTROL OVER ENTERTAINERS</u>

Undisputed Facts Related to Onyx's Scheduling Requirements

47.     Entertainers who work at Onyx must work during the business hours established by Defendant Jack Galardi.  Entertainers have no role in deciding Onyx's business hours.  (**Ex. 2:** Williams Feb. 3 Dep. at 39-40.)

**RESPONSE:  Defendants object to this Statement on the ground it contains multiple facts in violation of LR 56.1(B)(1).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Defendant Jack Galardi owns Pony Tail, Inc., the company which operates Club Onyx, and that he established the hours that Club Onyx would operate, consistent with state law and municipal ordinance. Defendants do not dispute that entertainers cannot perform at Club Onyx unless it is open for business.**

48.     Onyx management decides the hours of each shift that entertainers are permitted to work.  (**Ex. 2:** Williams Feb. 3 Dep. at 40-41.)

**RESPONSE:  Defendants dispute that Club Onyx only permits entertainers to work the shifts they sign up to work.  (Sales Dep. 43-44; Pough Dep. 47; Adams Decl. Par. 5(c)-(d);** *See also:*  **Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel**

**Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(d)).  Defendants dispute that Club Onyx regulates when dancers must perform.  (Leaphart Dep. 63:8-10, 70-71, 76-77; Jordan Dep. 58, 133).**

49.     Entertainers are required to sign up for shifts (i.e., draw up their work schedule) during the preceding week; such schedules are posted in the management office and the dressing room at Onyx.  (**Ex. 15:** Swinger Dep. at 85-86; see e.g., **Ex. 15:** Swinger Dep. at Ex. 21; **Ex. 13:** Hayes Dep. at Ex. 25.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citations do not support this Statement.  Subject to those objections, the Statement is denied.  (Leaphart Dep. 63, 70-71, 76-77; Pough Dep. 96-97; Sales Dep. 43-44; Hayes Dep. 25; Adams Dep. 36; Adams Decl. Par. 5(c)-(d); *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Pars. 7(c)-(d)).).**

50.     Entertainers are generally required to work four days a week, and are fined or otherwise disciplined for working fewer days.  (**Ex. 15:** Swinger Dep. at

33-34, 90-91 (testifying to entertainers having to pay a higher bar fee if they only want to work a certain day a week); **Ex. 3:** Adams Dep. at 92.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Subject to that objection, the Statement is denied.   (Jordan Dep. 50; Leaphart Dep. 70, 77; Sales Dep. 43-44; Hayes Dep. 25; Adams Decl. Par. 5(c)-(d); *See also:*   Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(c)).).**

51.    For example, Onyx management completed a "notice of corrective action" (discussed below) for Named Plaintiff Karenza Clincy when she failed to sign up for shifts in advance.  (**Ex. 15:** Swinger Dep. at 32-33, Ex. 6.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx completed a form entitled "Notice of Corrective Action," but deny any implication raised by the Statement that there was any consequence or discipline meted out by Club Onyx to Karenza Clincy as a result of the Notice of Corrective Action.**

52.     The requirement that entertainers work four days a week may be waived only with management's permission.  (**Ex. 15:** Swinger Dep. at 33-34 (testifying that Onyx may allow an entertainer to work three days a week if the entertainer is in school and can demonstrate as much with a school transcript); **Ex. 13:** Hayes Dep. at 25 ("We do **allow** a lighter schedule if you are in school") (emphasis added); <u>accord</u> **Ex. 3:** Adams Dep. at 92.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Ms. Swinger's testimony is that Club Onyx "*ask[s]* that [the entertainer] bring in a transcript or something.   But sometimes they do; sometimes they don't."   (Swinger Dep. 34:1-3) (italics added).   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Adams's and Mr. Hayes's depositions do not support this Statement.   (Hayes Dep. 25)(stating entertainers are asked, not required, to work a 4 day schedule – rule very rarely enforced).  *See also:*  Jordan Dep. 122-124; Sales Dep. 107; Leaphart Dep. 70, 77; Wells Dep. 85:6-22; Sales Dep. 43-44; Adams Dep. 36; Adams Decl., Par. 5(c); Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows,**

**Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(c)).**

53.     Named Plaintiffs Karenza Clincy and Kiesha Pough, for example, were allowed to work three days a week because they were in school.  (**Ex. 6:** Clincy Dep. at 43-44; **Ex. 7:** Pough Dep. at 46-47.)

**RESPONSE:     Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that the named entertainers are free to perform only three days a week if they are in school.**

54.     Entertainers do not always have the discretion to choose which of the mandatory three or four days they work.  (**Ex. 6:** Clincy Dep. at 45.)

**RESPONSE:  Denied.  (Sales Dep. 43-44; Hayes Dep. 25; Adams Decl. Par. 5(c).  *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(c)).**

55.    Management sometimes requires proof that an entertainer had obligations preventing her from working when determining whether to fine or discipline an entertainer for failing to work required or scheduled days.  (**Ex. 6:** Clincy Dep. at 46 (testifying to bringing in notes from teachers or obituaries); **Ex. 8:** Parker Dep. at 160 (testifying to bringing in an obituary to prove she had been at a funeral).)

**RESPONSE:  Denied.  (Adams Dep. 92; Hayes Dep. 25; Swinger Dep. 33-34).**

56.    Additionally, entertainers are required to work a certain number of "slow days" per month.  (**Ex. 3:** Adams Dep. at 37; **Ex. 15:** Swinger Dep. at 73.)

**RESPONSE:    Defendants object to the Court considering any "facts" contained in Plaintiffs' footnote no. 10 on the ground that said "facts" do not comply with the requirements of LR 56.1(B)(1).  Defendants further object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.  Subject to that objection, the Statement is denied.  (Swinger Dep. 73; Wells Dep. 94).**

57.    All of the Named Plaintiffs have been subject to fines for failing to work the required days a week or month.  (Parker Dec. at ¶ 26; Clincy Dec. at ¶ 26; **Ex. 5:** Wells Dep. at ¶ 93-94; **Ex. 4:** Leaphart Dep. at 139-140; **Ex. 17:** Sales Dep. at 58; **Ex. 7:** Pough Dep. at 69; **Ex. 16:** Jordan Dep. at 94-95; see also Martin Dec.

at ¶ 27; Bloedoorn Dec. at ¶ 27; Jefferson Dec. at ¶ 27; Appling Dec. at ¶ 26; Hughes Dec. at ¶ 25.)

**RESPONSE:   Defendants object to these Declarations on the ground that these individuals would have no first-hand knowledge of whether the Named Plaintiffs had been subjected to fines, and therefore the cited portions of these Declarations do not support this Statement.   Subject to those objections, the Statement is denied.   (Sales Dep. 43-44; Hayes Dep. 25-26; Adams Decl., Par. 5(c)).**

58.     Entertainers are also fined for not working the required number of slow days each month.  This is true even if an entertainer was out of town or on vacation during the month.  (**Ex. 3:** Adams Dep. at 36; **Ex. 15:** Swinger Dep. at 73, 86-87; **Ex. 7:** Pough Dep. at 152-153; <u>see e.g.</u>, **Ex. 6:** Clincy Dep. at 129.)

**RESPONSE:   Defendants object to Plaintiffs' Statement on the ground that Plaintiffs' citations to Ms. Swinger's deposition and Mr. Adams's deposition do not support this Statement.    Subject to that objection, the Statement is denied.  (Wells Dep. 94; Sales Dep. 43-44).**

59.     If entertainers do not come to work on nights they are scheduled to work and do not call ahead ("no call no show"), they are fined or otherwise

disciplined.  (**Ex. 13:** Hayes Dep. at 50; **Ex. 3:** Adams Dep. at 35-36; <u>see also</u> **Ex. 12:** Pony Tail Admission No. 3.)

**RESPONSE:  Denied.  (Wells Dep. 31:15-20; Sales Dep. 43-44).**

60.    Entertainers are also fined or otherwise disciplined even if they call to say that they will not be working a scheduled shift.  (**Ex. 13:** Hayes Dep. at 26; <u>see e.g.,</u> **Ex. 6:** Clincy Dep. at 113-114; **Ex. 4:** Leaphart Dep. at 133; **Ex. 5:** Wells Dep. at 94; **Ex. 17:** Sales Dep. at 66; **Ex. 7:** Pough Dep. at 92-93; **Ex. 16:** Jordan Dep. at 41 (all fined for not coming to work when scheduled, some even after calling to report an upcoming absence).)

**RESPONSE:   Defendant objects to this Statement on the ground that Plaintiffs' citation to the deposition of Mr. Hayes does not support this Statement.  Subject to that objection, the Statement is denied.  (Sales Dep. 43-44).**

61.    As an example of other discipline, Onyx's general manager has fired entertainers for working at another club if that work was during a time they were scheduled to work at Onyx.  (**Ex. 13:** Hayes Dep. at 86.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation does not support this Statement.  (Hayes Dep. 86).**

62.     Only management has the discretion to waive fines for failing to work a required shift.  (**Ex. 2:** Williams Feb. 3 Dep. at 47-48; **Ex. 13:** Hayes Dep. at 26 (testifying that for a call out fine to be waived, it must be "understandable, such as a car accident, doctor's notice….").)

**RESPONSE:  Defendants object to this Statement on the ground the citations to the depositions of Mr. Williams and Mr. Hayes do not support this Statement.**

63.     Additionally, only management has the discretion to tell entertainers which shifts they are allowed to work.  (**Ex. 13:** Hayes Dep. at 82-83 (testifying to telling an entertainer that she can only work the day shift until she loses weight).)

**RESPONSE:   Denied.   (Sales Dep. 43-44; Hayes Dep. 26; Swinger Dep. 115:19; Adams Dep. 59; Adams Decl., Par. 5(c)-(d);** *See also:*  **Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Pars. 7(c)-(d)).).**

64.     Onyx, for example, required Plaintiff Karenza Clincy to work 30 days on mid-shift in order to work night shifts when she first started.  (**Ex. 6:** Clincy Dep. at 32-34.)

**RESPONSE:     For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

65.    Similarly, Plaintiff Wells was required to work the day shift for a month when she first started at Onyx.  (**Ex. 5:** Wells Dep. at 25-26.)

**RESPONSE:  Denied.  (Wells Dep. 26).**

66.    If entertainers arrive to work after a certain time, management has used its discretion to send them home.  (**Ex. 3:** Adams Dep. at 34; **Ex. 15:** Swinger Dep. at 88, Ex. 21.)

**RESPONSE:     Defendants object to this Statement on the ground that Plaintiffs' citations to Ms. Swinger's deposition and Mr. Adams's deposition do not support this Statement.  Subject to that objection, the Statement is denied.  (Wells Dep. 29, 31; Jordan Dep. 63; Pough Dep. 50).**

67.    On one occasion, Plaintiff Karenza Clincy requested permission to arrive for work after 11:00 p.m., and management denied the request.  (**Ex. 6:** Clincy Dep. at 49-50.)

**RESPONSE:     For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

68.     On some occasions when they have arrived after 11:00 p.m., Plaintiffs Leaphart and Wells have been told that they cannot dance.  (**Ex. 4:** Leaphart Dep. at 63-64; **Ex. 5:** Wells Dep. at 32.)

**RESPONSE:  Denied.  (Leaphart Dep. 63:11-13; Wells Dep. 34).**

69.     Similarly, Plaintiff Parker has been sent home by management for arriving to work later in the evening.  (**Ex. 8:** Parker Dep. at 110.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

House or Bar Fees

70.     When entertainers arrive for their shift at Onyx, they are expected to go to the dressing room and report to the house mom, who then records their name and arrival time on a paper list.  (**Ex. 13:** Hayes Dep. at 41; **Ex. 4:** Leaphart Dep. at 79.)

**RESPONSE:  Denied.  Plaintiffs' citations to the deposition of Mr. Hayes and Ms. Leaphart do not support that dancers/entertainers are "'expected'" to go to the dressing room and report to the house mom."   (Hayes Dep. 41; Leaphart Dep. 79).**

71.     At all times since July of 2006, entertainers have been required to pay in order to work at Onyx and this payment is known as a "house fee" or "bar fee."

Entertainers are expected to pay the house fee when they report to the house mom, as opposed to owing the fee over time.  (**Ex. 13:** Hayes Dep. at 26, 42 (testifying to management discretion in this regard); **Ex. 3:** Adams Dep. at 72, 92; **Ex. 15:** Swinger Dep. at 18-19 (testifying to house moms being required by Onyx management to inform entertainers of this); see e.g., **Ex. 15:** Swinger Dep. Ex. 3 (text message to entertainers).)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citations to Ms. Swinger's deposition and Mr. Hayes's deposition do not support this Statement.   Defendants also object to Plaintiffs' use of the phrase "at all times since July 2006," since it is undisputed that Club Onyx was the victim of an arson fire on January 1, 2007, which resulted in the Club's closure for reconstruction/renovation for approximately six months. (Williams Dep. 73-74 (Feb. 3, 2010); Adams Decl., Par. 12).  Subject to those objections, this Statement is denied in part.  Defendants deny that Plaintiffs are not permitted to owe Club Onyx their bar fees which are collected at a future time.  (Wells Dep. 35; Adams Dep. 95).**

72.   The house fee schedule was established by Defendants and has been the same since at least mid-2008.  At any given time since, there is only one house

fee schedule in place.  All entertainers pay the same house fees as one another. (**Ex. 13:** Hayes Dep. at 42-43; **Ex. 3:** Adams Dep. at 72; Named Plf. Decs. at ¶ 12.)

**RESPONSE:  Defendants object to this Statement on the ground it contains multiple statements of fact in violation of LR 56.1(B)(1).  Defendants further object to this Statement on the ground that Plaintiffs' citations do not support that the house fee schedule was established by all "Defendants."  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that the house fee schedule was established by Club Onyx.**

       73.    The current house fee schedule is as follows:

*Monday*
$29 regardless of arrival time

*Wednesday*
$45 regardless of arrival time

*Tuesday, Thursday, Saturday*
$45 if entertainer arrives between 8:00 p.m. and 9:00 p.m.
$75 if entertainer arrives between 9:00 p.m. and 10:00 p.m.
$100 if entertainer arrives between 10:00 p.m. and 11:00 p.m.

*Sunday:* Closed

(**Ex. 13:** Hayes Dep. at 42; **Ex. 12:** Pony Tail Interrog. Resp. No. 2, Set II.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

74.     The house fees that entertainers pay go directly to LVA Management and Consulting, Inc., which is a separate closely held corporation of Defendant Jack Galardi's.  (**Ex. 2:** Williams Feb. 3 Dep. at 83-84.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants show that the house fees paid by the entertainers to Club Onyx go to LVA Management and Consulting, Inc.**

75.     All of the Named Plaintiffs have been required to pay house fees to work at Onyx.  (Named Plf. Decs. at ¶ 8; <u>see also</u> Bloedoorn Dec. at ¶ 9; Jefferson Dec. at ¶ 9; Martin Dec. at ¶ 9; Appling Dec. at ¶ 8; Hughes Dec. at ¶ 9.)

**RESPONSE:     For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

<u>Undisputed Facts Related to Dressing Room and Attire</u>

76.     Once entertainers have signed in with the house mom and paid their bar fee, they start to get dressed.  (**Ex. 3:** Adams Dep. at 72.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

77.    Onyx makes it clear to entertainers that it wants entertainers dressed and working quickly.   (**Ex. 15:** Swinger Dep. at 21 (testifying to wanting entertainers out on the floor within an hour); <u>see also</u> **Ex. 4:** Leaphart Dep. at 79-80; **Ex. 5:** Wells Dep. at 32-33; **Ex. 8:** Parker Dep. at 67-68; **Ex. 6:** Clincy Dep. at 86 (testifying to having to "leave out the dressing room unfinished").)

**RESPONSE:     Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Subject to that objection, the Statement is denied.   (Wells Dep. 85:6-22; Swinger Dep. 21:19-20) ("We would like for [the entertainers] to get on the floor  within an hour.").   (Swinger Dep. 46:13-14)("We rarely enforce [that request.]").   See also: Sales Dep. 69-70, 75-76; Jordan Dep. 122-124).**

78.    In fact, Onyx has written up notices of corrective action and fined entertainers for not getting dressed and on the floor quickly enough.   Named Plaintiffs Monica Leaphart and Karenza Clincy were written up for this reason. (**Ex. 15:** Swinger Dep. at 45-47, Ex. 11 (explaining reason for fine and corrective action as "loss of business" and "failure to comply with house policies"); <u>see also</u> **Ex. 16:** Jordan Dep. at 95 (testifying to paying a fine for taking too long to get dressed).)

**RESPONSE: Defendants object to the Court considering any "facts" contained in Plaintiffs' footnote no. 13 on the ground that said "facts" fail to comply with the requirements of LR 56.1(B)(1). Defendants further object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement. Defendants further object to this Statement on the ground it purports to rely upon Ms. Swingers' deposition to authenticate and verify the accuracy of a document which she neither prepared nor signed. (Swinger Dep. Ex. 11).**

79. Onyx management has discretion to restrict what entertainers are allowed to wear when performing at Onyx. (**Ex. 2:** Williams Feb. 3 Dep. at 79, 82 (testifying to telling entertainers that they were wearing inappropriate clothing, including clothing with political statements or drug paraphernalia); **Ex. 15:** Swinger Dep. at 50 (testifying that she would stop entertainers from going out on the floor if they were wearing sweatpants); <u>see also</u> **Ex. 3:** Adams Dep. at 63 (testifying that the house mom's job is to tell entertainers if they are wearing something inappropriate) and 61-63 (testifying that the standard applied at Onyx is two-piece costumes as opposed to gowns).)

**RESPONSE: Defendants object to this Statement on the ground that Plaintiffs' citations do not support this Statement. Ms. Swinger did not testify**

that she has ever actually "restricted" what entertainers wear on the dance floor.  (Swinger Dep. 50). Subject to that objection, this Statement is denied. (Adams Dep. 13:7-8, 61:17 – 64; Adams Decl., Par. 5(a);  Leaphart Dep. 156; Wells Dep. 68.  *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez and Karen Robinson at Par. 7(a)).

80.    Onyx management has told entertainers to change their hairstyles and to wear makeup to cover scars and disfigurements.  (**Ex. 13:** Hayes Dep. at 83; see also **Ex. 15:** Swinger Dep. at 52 (testifying to advising entertainers on their hair and makeup and being told by management to talk to entertainers about the same "to fix something that is wrong").)

**RESPONSE:   Defendant Objects to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.  (Swinger Dep. 52-53; Adams Decl., Par. 5(a); *See also:* Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie**

**Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Par. 7(b)).**

81.     Onyx does not approve of entertainers wearing their hair in ponytails. (**Ex. 5:** Wells Dep. at 68-69.)

**RESPONSE: Denied.  *See:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Par. 7(b)).**

82.     Management has asked Named Plaintiff Jammie Parker to change her hair because it was "too big."  (**Ex. 8:** Parker Dep. at 189-190.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

83.     Entertainers are allowed to work with tattoos at the discretion of Onyx management.  (**Ex. 13:** Hayes Dep. at 83.)

**RESPONSE:  Denied as written.  Entertainers at Club Onyx are permitted to wear tattoos.  (Swinger Dep. 53).**

84.     Additionally, Onyx management has instructed entertainers to lose weight, and has written up notices of corrective action for failure to do so.  (**Ex.**

**13:** Hayes Dep. at 83, Ex. 27; <u>see also</u> **Ex. 15:** Swinger Dep. at 51 (testifying to talking to "overweight" entertainers and instructing them to "tone up").)

**RESPONSE:  Denied.  (Swinger Dep. 51, 115:19).**

85.     Management has also disciplined entertainers in other ways for not losing weight.  For example, management told Named Plaintiff Jammie Parker that she could not dance on stage until she lost weight.  (**Ex. 8:** Parker Dep. at 82; <u>see also</u> **Ex. 13:** Hayes Dep. Ex. 27.)

**RESPONSE:  Denied.  (Swinger Dep. 115:19).**

<u>Undisputed Facts Related to Stage Rotation</u>

86.     Once entertainers have signed in with the house mom, paid their bar fees and gotten dressed, they go out on the main floor of the club to perform personal dances for customers or dance on stage.  (**Ex. 13:** Hayes Dep. at 47-48; **Ex. 15:** Swinger Dep. at 73-75.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

87.     At 11:00 p.m., the stage rotation begins, and entertainers who arrive after 11:00 p.m. are not guaranteed the opportunity to dance on stage.  (**Ex. 13:** Hayes Dep. at 47-48; **Ex. 15:** Swinger Dep. at 98, Ex. 22 p. NKA0003219.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

88.     The rotation (i.e., the order in which entertainers dance on stage) is determined by the order in which entertainers signed in with the house mom when arriving.  The DJ calls the entertainers to the stage in this order.  (**Ex. 3:** Adams Dep. at 73.)

**RESPONSE:   Defendants object to the "facts" contained in Plaintiffs' footnote numbers 14 and 15 on the ground they fail to comply with the requirements of Local Rule 56.1(B)(1).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, the Statement is denied. (Hayes Dep. 48).**

89.     During the rotation, entertainers dance on stage in groups of as many as five, depending on how many entertainers are working that night.  (**Ex. 3:** Adams Dep. at 74-75.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

90.     Entertainers are supposed to be on stage when their name is called by the DJ.  (**Ex. 3:** Adams Dep. at 9 (testifying that one of management's

responsibilities is to make sure entertainers are on stage when their names are called).)

**RESPONSE:  Denied.  Dancers are not required to appear on stage.  (Hayes Dep. 48; Sales Interrogatory Resp. No. 21;  Wells Dep. 71; Leaphart Dep. 152; Pough Dep. 66.  *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Par. 7(m)).**

91.     Plaintiffs Parker and Jordan, for example, have been fined for getting to the stage late.  (**Ex. 8:** Parker Dep. at 100; **Ex. 16:** Jordan Dep. at 87.)

**RESPONSE:  Defendants object to this Statement on the ground that their citation to Ms. Parker's deposition does not support this Statement.**

92.     Customers throw money on the stage during each dance, or hand money to the entertainers.  (**Ex. 4:** Leaphart Dep. at 93-94; **Ex. 6:** Clincy Dep. at 55.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, but show that customers are not required to tip dancers on stage.  (Wells Dep. 45:1-4).**

93.     The general rule at Onyx is that entertainers on stage take their top off when they receive $10 and they take their bottoms off when they receive another $10.  (**Ex. 13:** Hayes Dep. at 80.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

94.     The DJ generally announces for entertainers to remove all articles of clothing once $100 or more is thrown onto the stage for five entertainers.  (**Ex. 13:** Hayes Dep. at 80 (explaining that "No customer wants to spend thousands of dollars not to see someone naked").)

**RESPONSE:     Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, other than to show that Club patrons are not required to tip dancers on stage.  (Wells Dep. 45:1-4).**

95.     During the stage rotation, the DJ will often give instructions like "ladies remove your clothes," "go ahead and get naked," "tops" or "tops off," and "bottoms" or "bottoms off."  (**Ex. 13:** Hayes Dep. at 81; <u>see</u> Pough Dec. at ¶ 31e;

Sales Dec. at ¶ 35f; Jordan Dec. at ¶ 35e; Wells Dec. at ¶ 35f; Parker Dec. at ¶ 33f; Clincy Dec. at ¶ 31e; Leaphart Dec. at ¶ 36f ("I want to see elbows and assholes.") (quoting DJ).)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that it constitutes inadmissible hearsay evidence.  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that the DJ will occasionally comment or suggest that entertainers remove articles of their clothing, but Plaintiffs have presented no evidence that any entertainer has ever been fined or disciplined for failing or refusing to comply with the DJ's comments/suggestions.**

96.     Entertainers can be fined for not taking off clothes when told or not being fully naked on stage.  (**Ex. 13:** Hayes Dep. at 80-82 (explaining such action as a "massive breach").)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement.**

97.     Entertainers are required to dance when they are on stage and have been fined for not doing so.  (**Ex. 13:** Hayes Dep. at 49-50.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement. Subject to that objection the Statement is denied.  *See:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(m)).**

98.     Onyx does not want their entertainers to two-step, which is considered "lazy" dancing and this and other expectations as to the manner of dance are conveyed by the DJ to entertainers.  (**Ex. 13:** Hayes Dep. at 11; **Ex. 17:** Sales Dep. at 100; Jefferson Dec. at ¶ 52; Hughes Dec. at ¶ 52; Martin Dec. at ¶ 49; **Ex. 6:** Clincy Dep. at 94 (testifying to DJ instructing entertainers to bend over); Bloedoorn Dec. at ¶ 51 ("sometimes the DJ would instruct us to 'work harder' or tell us not to 'two-step,' which is a kind of dance.").)

**RESPONSE:     Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement. Subject to that objection, the Statement is denied.  (Wells Dep. 75).  *See also:* Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell**

**Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 7(f)).**

99.    When customers throw money on the stage, Onyx's floormen gather it up and give the sum to the entertainers to divide later.  (**Ex. 3:** Adams Dep. at 76.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

100.   Onyx's rule is that entertainers are supposed to split all tips received on stage evenly among the dancers who danced that stage set.  (**Ex. 13:** Hayes Dep. at 58-59, **Ex. 15:** Swinger Dep. at 53 (testifying to help divide the tips evenly); **Ex. 3:** Adams Dep. at 75.)

**RESPONSE:     Defendants object to this Statement on the ground that Plaintiffs' citations do not support this Statement.  (Adams Dep. 75; Hayes Dep. 58-59).  Subject to that objection, the Statement is denied.  Splitting tips among entertainers on stage is not a Club "rule"; rather it is something the entertainers and the Club have agreed upon is fair.  (Williams Dep. 63 (Feb 3. 2010)).**

101.   Disputes about which or how much money belongs to which entertainer are investigated and handled by Onyx management.  (**Ex. 13:** Hayes Dep. at 59.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx's management team tries to aid the entertainers by assisting in resolving disputes among them.**

Undisputed Facts Related to Post-Shift Requirements and Mandatory Tip Requirements

102.   Onyx imposes a check-out process on entertainers.   Entertainers are required to check out before leaving, and may not simply leave at the end of the night.  (**Ex. 3:** Adams Dep. at 79-80; **Ex. 15:** Swinger Dep. at 17.)

**RESPONSE:   Denied in part.   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx has a check-out procedure for its entertainers, designed primarily to ensure their safety and security.   (Hayes Dep. 53-56; Adams Dep. 79:21; Wells Dep. 86; Sales Dep. 85).   Defendants dispute that entertainers are not permitted to leave early if they need to.  (Wells Dep. 77; Jordan Dep. 133).**

103.   Although management has discretion to waive this rule, generally entertainers will be fined or otherwise disciplined for leaving early without approval from management.  (**Ex. 3:** Adams Dep. at 20, 35; **Ex. 15:** Swinger Dep. at 16-17, 43-45, Ex. 10 (notice of corrective action for leaving without authorization); **Ex. 13:** Hayes Dep. at 27 (as to "early out fees"); **Ex. 2:** Williams Feb. 3 Dep. at 47; see e.g., **Ex. 5:** Wells Dep. at 76-77; **Ex. 8:** Parker Dep. at 144-146.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition and Mr. Adams's deposition do not support this Statement.  (Swinger Dep. 16-17, 43-45).  Subject to that objection, the Statement is denied.  (Hayes Dep. 26; Jordan Dep. 133).**

104.   At closing time, Onyx management, the floormen, and/or the DJ announce over the microphone that the club is closed and that patrons should exit. Entertainers are told to return to the dressing room.   Floor staff escorts the customers out of the building.  (**Ex. 3:** Adams Dep. at 79-80; **Ex. 13:** Hayes Dep. at 54-55; **Ex. 7:** Pough Dep. at 75 ("the DJ will say things like, you know, get your A-S-S to the dressing room, get off the floor, move your A-S-S.  And he'll call out names, Little Sexy, get your A-S-S in the dressing room or whatever.").)

**RESPONSE:  Defendants object to this Statement on the ground it contains multiple factual statements which violates the requirements of Local Rule 56.1(B)(1).  Defendants further object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to those objections, for purposes of Plaintiff's Motion for Partial Summary Judgment, Defendants do not dispute that when the house lights come up at the end of the night, the entertainers typically proceed to the dressing room to change and floor staff escort patrons out of the building.**

105.   After getting dressed, entertainers wait in line to complete the mandatory check-out process.  (**Ex. 16:** Jordan Dep. at 103-104; **Ex. 4:** Leaphart Dep. at 145-146.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

106.   Onyx requires that entertainers pay $0.50 for and pass a breathalyzer test prior to leaving.  The house mom and floor manager monitor this process.  (**Ex. 13:** Hayes Dep. at 54, 76.)

**RESPONSE:  Defendants object to this Statement on the ground it contains more that a single statement of fact in violation of Local Rule 56.1(B)(1).  Defendants further object on the ground that the Plaintiffs' citation to Mr.**

**Hayes's deposition does not support this Statement.   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that for the safety of the entertainers, who are permitted to drink alcohol while performing, Club Onyx does request that its entertainers take and pass a breathalyzer test before driving themselves home. (Leaphart Dep. 117). Entertainers are free to decline the Breathalyzer and call themselves a cab or otherwise find a ride home.**

107.   Onyx also requires that entertainers pay at least $7.00 to the house mom prior to leaving.  (**Ex. 3:** Adams Dep. at 80; **Ex. 15:** Swinger Dep. at 77; **Ex. 13:** Hayes Dep. at 73.)

**RESPONSE:  Denied.  (Swinger Dep. 113).**

108.   The house mom keeps the entire amount entertainers pay her.  (**Ex. 3:** Adams Dep. at 82.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

109.   Additionally, Onyx requires that entertainers pay the DJ the greater of 10% of the money the entertainers received from customers or $20.  (**Ex. 3:** Adams Dep. at 80; **Ex. 15:** Swinger Dep. at 77; **Ex. 13:** Hayes Dep. at 73.)

**RESPONSE:  Denied.  (Wells Dep. 39, 41).  *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 10).**

110.   These required payments were established by Onyx management, through Defendants Galardi and Kap, and not by the entertainers.   (**Ex. 15:** Swinger Dep. at 77; **Ex. 2:** Williams Feb. 3 Dep. at 42-43.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, the Statement is denied.  (Swinger Dep. 113).**

111.   Onyx management has discretion to fine entertainers if management believes they have not paid the DJ the full 10% or $20.  (**Ex. 15:** Swinger Dep. at 79; **Ex. 3:** Adams Dep. at 81; **Ex. 12:** Pony Tail Admission No. 4; see also Jefferson Dec. at ¶ 16 ("I usually tried to give the DJ at least $25 to attempt to

avoid any trouble with management."); see e.g., **Ex. 6:** Clincy Dep. at 65-66; **Ex. 17:** Sales Dep. at 64-65; **Ex. 8:** Parker Dep. at 117-118; see also **Ex. 16:** Jordan Dep. at 118; Hughes Dec. at ¶ 20 ("Sometimes [during the check out process itself] the DJ would demand more money, threatening to 'fix' the stage rotation so that the entertainer would make less money on stage if she did not pay the DJ more.").)

**RESPONSE:   Defendants object to the Court considering any "facts" contained in Plaintiffs' footnote no. 16 on the ground that they fail to comply with the requirements of LR 56.1(B)(1).   Defendants further object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement.   Defendants further object to this Statement on the ground that Plaintiffs' citation to the Declaration of Ms. Hughes does not support this Statement and constitutes inadmissible hearsay evidence which the Court cannot consider.   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement other than to show that customers are not required to tip dancers performing on stage.   (Wells Dep. 45:1-4).**

112.   The DJ is required to give 40% of what he is paid by entertainers to management.   Half of that 40% is forwarded to the corporate office and the other

half is split among Onyx management.  (**Ex. 3:** Adams Dep. at 81-82; **Ex. 13:** Hayes Dep. at 73-74.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue raised in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii). Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

113.  The house mom, floor staff, and DJ all sign off on an "exit ticket" for each entertainer to show that she has paid all required fees and passed the breathalyzer test.  These tickets are kept in the management office at Onyx.  (**Ex. 13:** Hayes Dep. at 75-76.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground it contains multiple set of facts in a single Statement.  Defendants further object to this Statement on the ground that Plaintiffs' citation does not support that this Statement.  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

114.   Entertainers and the DJ also sign the DJ fee sheet, which shows how much the entertainer paid the DJ and the time she did so at the end of the night. (**Ex. 13:** Hayes Dep. at 92; **Ex. 2:** Williams Feb. 3 Dep. at 94-95, Ex. 24.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement.   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

115.   Entertainers are not allowed to exit the building following the check out process until the parking lot has been cleared of all customers.  (**Ex. 3:** Adams Dep. at 79-80; **Ex. 13:** Hayes Dep. at 53-54, Ex. 13 (explaining Onyx's "policy").)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that for the entertainers own safety and security, Club Onyx requests that they only exit after the parking lot has been cleared of customers.   (Hayes Dep. 54-55; Wells Dep. 86; Sales Dep. 85). Defendants deny this Statement to the extent it suggests or infers that entertainers are required to remain in the building and/or held inside the**

**Club against their will until the check out process is complete and/or the parking lot has been cleared.**

116.   After the parking lot is cleared, and provided they have paid and passed the breathalyzer test, entertainers are only allowed to exit the building in small groups.  (**Ex. 13:** Hayes Dep. at 54.)

**RESPONSE:   Denied as written.   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that they prefer entertainers to leave Club Onyx in small groups for their own safety and security.  (Hayes Dep. 54-55; Wells Dep. 86; Leaphart Dep. 117; Sales Dep. 85).**

Undisputed Facts Related to Additional Rules

117.   Onyx has and generally distributes to entertainers upon hiring them, written rules of conduct.  (See e.g., **Ex. 2:** Williams Feb. 3 Dep. at Ex. 9.)

**RESPONSE:   Defendants object to the Court considering any "facts" contained in footnote 17 on the ground that said "facts" do not conform to the requirements of Local Rule 56.1(B)(1).  Defendants deny they ever authorized the distribution of the "Exotic Dancer Manual" drafted by House Mom Sabrena Swinger, which she admitted she did on her own and it was disseminated only for a very short period of time.  (Swinger Dep. 104-105).**

**Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute the remaining facts contained within this Statement, other than to show that its "Rules of Conduct" are rarely enforced.  (Jordan Dep. 122-124; Sales Dep. 107; Wells Dep. 85:6-22; Hayes Dep. 25-26; Adams Decl., Pars. 9-10).**

118.   These rules were drafted by the corporate office, and are distributed to Defendant Galardi's various clubs for enforcement.  (**Ex. 9:** Williams Feb. 10 Dep. at 17; **Ex. 13:** Hayes Dep. at 16.)

**RESPONSE:  Denied.  (Wells Dep. 85:6-22; Jordan Dep. 122-124).**

119.   Not all of the rules are always enforced as written; however, management has discretion to enforce the rules as they see fit.  (**Ex. 13:** Hayes Dep. at 25, 72; **Ex. 3:** Adams Dep. at 85-86; see also **Ex. 2:** Williams Feb. 3 Dep. at 49-50.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citations do not support this Statement.  Subject to that objection, the Statement is denied as written.   (Wells Dep. 85:6-22; Sales Dep. 107; Jordan Dep. 122-124).**

120.   Upon being hired by Onyx, entertainers are usually given and/or required to sign their assent to the rules of conduct.  (**Ex. 2:** Williams Feb. 3 Dep. at 53, Ex. 9; **Ex. 15:** Swinger Dep. at 24-25; **Ex. 3:** Adams Dep. at 88-90.)

**RESPONSE:   Defendants object to the Court considering any "facts" included in Plaintiffs' footnote no. 18 on the ground they do not comply with the requirements of LR 56.1(B)(1).   Defendants further object to this Statement on the ground that Plaintiffs' citation to the depositions of Mr. Adams and Ms. Swinger do not support this Statement.   Subject to those objections, the Statement is denied.   (Swinger Dep. 20:21-22.   *See also:* Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 6).**

121.   After an entertainer has a successful audition (described below) and presents a permit to work from the City of Atlanta, Onyx usually gives the entertainer the rules of conduct described above.  (**Ex. 13:** Hayes Dep. at 15-16.)

**RESPONSE:  Denied.  (Hayes Dep. 15:14-20).**

122.   At that point, the house mom generally goes over the amounts entertainers are required to pay the DJ and house mom with the entertainer and

walks through the club's general expectations.  (**Ex. 15:** Swinger Dep. at 57, 70-71.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

123.   Onyx has required that entertainers also attend meetings where management goes over Onyx's rules and policies and things like changes in city laws, promotional events, and club décor.  (**Ex. 3:** Adams Dep. at 21-22; **Ex. 13:** Hayes Dep. at 67-68.)

**RESPONSE:     For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that, on very rare occasions, meetings called at Club Onyx at which entertainers are asked to attend.  (Hayes Dep. 67:25).**

124.   At one such meeting, entertainers were given a copy of the rules described above and asked to sign that they received the copy.  (**Ex. 15:** Swinger Dep. at 20-24, Ex. 4.)

**RESPONSE:  Denied.  (Defs' Resp. to Request for Admission No. 4)[Doc. 212-12, p. 48].  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that they re-distributed certain forms and documents to entertainers upon discovering that previously-signed documents**

**had been stolen from an unsecured file cabinet (formerly) maintained in the entertainers' dressing room or destroyed by a flood at Club Onyx, but Defendants deny any implication that entertainers were "required" by Club Onyx to sign the documents, or that doing so had anything to do with this litigation.  (Swinger Dep. 20:21-22, 104; Adams Decl., Par. 12).**

Undisputed Examples of Additional Disciplinary Actions

125.   Another mandatory meeting was hosted by Defendant Kap at which Named Plaintiffs Kiesha Pough, Monica Leaphart, Naturee Wells, Summer Sales, Jammie Parker, and then-Plaintiff Jessica Appling were told that they could not return to work at Onyx unless they dismissed the instant suit.  (**Ex. 3:** Adams Dep. at 23; Leaphart Dec. at ¶¶ 63-70; Parker Dec. ¶¶ 57-63; Wells Dec. ¶¶ 62-69; Pough Dec. ¶¶ 58-64; Sales Dec. ¶¶ 59-67; Appling Dec. ¶¶ 54-61; **Ex. 18:** Aug. 11 Meeting Tr. at 14-15 (certified copy dated Aug. 13, 2009).)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, the Statement is denied in part.  Defendants show that Plaintiff Jammie Parker's relationship with Club Onyx has previously ended on August 8, 2009, prior to the referenced "meeting."  (Adams Decl., Par. 3).**

126.   Onyx's General Manager Rick told the same to Named Plaintiff Karenza Clincy in a separate conversation.  (First Supp. Clincy Dec.; **Ex. 19:** Aug. 13 Meeting Tr. (certified copy dated August 14, 2009).)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).**

127.   Prior to this meeting, Defendant Kap met with Onyx management and informed them that the Named Plaintiffs would be "indefinitely suspended" because of a "conflict of interest."  (**Ex. 3:** Adams Dep. at 30.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).**

128.   Another form of discipline includes the corrective action notices discussed above.  (See e.g., **Ex. 15:** Swinger Dep. Exs. 2, 5-11 (bearing house mom and management signatures).)

**RESPONSE:  Denied.  (Swinger Dep. 106:16-24).**

129.   The written notices of corrective action, which are kept in the management office at Onyx, are a way of "keeping a log of what [entertainers] are not doing."  (**Ex. 15:** Swinger Dep. at 29, 35; **Ex. 13:** Hayes Dep. at 52.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation do not support this Statement.    Subject to that objection, the Statement is denied.  (Swinger Dep. 106:16-24).**

130.   Management has discretion to impose fees as part of corrective actions.  (**Ex. 15:** Swinger Dep. Ex. 11.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

131.   It is always up to Onyx management whether any corrective actions will be taken; though, they do sometimes consult with Defendant Kap and Defendant Galardi on this.  (**Ex. 2:** Williams Feb. 3 Dep. at 44-45.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

132.   For example, if house mom Sabrina Swinger notices an entertainer doing something that would warrant corrective action (i.e., a violation of Onyx rules), she lets management know, and management gives Ms. Swinger the form to complete.  (**Ex. 15:** Swinger Dep. at 30.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute the fact that Club Onyx's house moms are generally the individuals who document incidents which occur during**

**their shifts.  Defendants deny the Statement to the extent it implies that every time a Notice of Corrective Action is completed by a house mom that there is a corresponding "consequence" to the entertainer(s) in question.  (Swinger Dep. 101-102, 104-107).**

133.   Additionally, if anyone in the club notices an entertainer doing something that warrants corrective action, they can bring the issue to the house mom's attention and a corrective action form may be completed.  In other words, the house mom need not have personal knowledge of each action to complete and sign the corrective action form.  (**Ex. 15:** Swinger Dep. at 41-42; <u>see also</u> **Ex. 2:** Williams Feb. 3 Dep. at 45-46 (testifying to staff responsibility to alert management if they see an entertainer providing "unsatisfactory performance," such as not dancing).)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

134.   Onyx management is responsible for determining if an entertainer will be verbally counseled or warned and disciplined, counseled and/or warned entertainers for being insubordinate and using inappropriate language.  (**Ex. 2:** Williams Feb. 3 Dep. at 37, 44; **Ex. 13:** Hayes Dep. at 51, 52; **Ex. 3:** Adams Dep. at 10.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

135.   Sometimes management consults with Defendant Kap about whether or how to discipline an entertainer.  (**Ex. 13:** Hayes Dep. at 68.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).**

136.   In addition to corrective action forms, management has the authority to fine entertainers.  (**Ex. 3:** Adams Dep. at 71; **Ex. 2:** Williams Feb. 3 Dep. at 37.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

137.   The house mom generally collects these fines the night they are imposed.  (**Ex. 15:** Swinger Dep. at 115; **Ex. 3:** Adams Dep. at 71.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

138.   In addition to the fines discussed above and in the written rules of conduct, management can fine entertainers for bringing in outside food, breaking Onyx's rules and policies, breaking the law, or arguing or fighting with customers.  (**Ex. 3:** Adams Dep. at 34; **Ex. 13:** Hayes Dep. at 48.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

139.   Named Plaintiff Summer Sales was fined multiple times for not having a garter belt.  (**Ex. 17:** Sales Dep. at 91.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that it is a violation of City of Atlanta vice laws for an entertainer to walk on the Club's floor without covering her private areas, and that Club Onyx can lose its liquor license with the City of Atlanta if certain rules are not enforced (such as walking around not wearing bottoms).  (Adams Dep. 18:21-23).**

140.   Entertainers can be fined for leaving the stage early.  (**Ex. 8:** Parker Dep. at 76-77.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

141.   Named Plaintiff Clincy has even been fined despite management not even being able to remember the reason for the fine at the time it was imposed.  (**Ex. 6:** Clincy Dep. at 59.)

**RESPONSE:  Defendants object to this Statement on the ground that Ms. Clincy is not plainly competent to testify about what others people can or**

cannot remember, as such information is clearly beyond the scope of her personal knowledge.

## UNDISPUTED FACTS RELATED TO OPPORTUNITY FOR PROFIT OR LOSS

142.   The decision to have Onyx cater to the African American community, as opposed to a broader audience, was made by Defendants Galardi and Kap, Mr. Williams, and Onyx's general manager.  (**Ex. 2:** Williams Feb. 3 Dep. at 59-60.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion for Partial Summary Judgment. LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, other than to show that, Plaintiffs, with full knowledge of how Club Onyx is marketed, and the audience to which it is marketed, elected to perform there.**

143.   Decisions about marketing and promotions for Onyx are made collectively with input from Mr. Williams, Defendant Kap, and GSE and GSEC's Director of Marketing, Jack Pepper.  (**Ex. 2:** Williams Feb. 3 Dep. at 28.)

**RESPONSE:    For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, other than to show that**

**entertainers are free to and do promote themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73; Wells Dep. 73; Pough Dep. 101).  Club Onyx does discuss with its entertainers its upcoming promotional events.  (Adams Dep. 21).**

144.   Defendant Pony Tail's corporate representative testified that Pony Tail pays all of the costs associated with advertising, marketing, and promoting for Club Onyx.  (**Ex. 2:** Williams Feb. 3 Dep. at 16.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, other than to show that entertainers are free to and do promote themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73; Wells Dep. 73; Pough Dep. 101).**

145.   Defendant Pony Tail contracts with other corporate entities to market Club Onyx.  (**Ex. 2:** Williams Feb. 3 Dep. at 16.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Pony Tail, Inc. enters into agreements with outside vendors to market Club Onyx, but shows that entertainers are free to and do promote themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73; Wells Dep. 73; Pough Dep. 101).**

146.   Defendant Jack Galardi is the ultimate decisionmaker about the manner in which Onyx will be marketed and advertised.  (**Ex. 2:** Williams Feb. 3 Dep. at 17.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Mr. Galardi owns the corporate entity which operates Club Onyx, and   therefore, he has the ultimate authority with respect to all matters affecting Club Onyx, including its marketing and advertising.   However, entertainers remain free to market themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73; Wells Dep. 73; Pough Dep. 101).**

147.   The corporate office maintains the website www.showbars.com, which includes Onyx's website.  (**Ex. 2:** Williams Feb. 3 Dep. at 27.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground that Plaintiffs' citation does not support this Statement.  Subject to those objections, the Statement is denied. Jack Pepper, not "the corporate office" maintains the showbars.com website. (Williams Dep. 27:16-24; Pepper Dep. 6:22-25).**

148.   Mr. Pepper works on updating Onyx's website with information from Onyx management, as well as designing advertisements for Onyx.   (**Ex. 2:** Williams Feb. 3 Dep. at 27; **Ex. 11:** Pepper Dep. at 7.)

**RESPONSE:   Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Defendants further object to this Statement on the ground that Plaintiffs' citation do not support the Statement that it is "Onyx's website."   Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

149.   Mr. Pepper takes direction from Defendants Kap and Galardi, Mr. Williams, and Onyx's managers, with the management team approving advertisements prior to circulation.   (**Ex. 11:** Pepper Dep. at 16, 35.)

**RESPONSE:   Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

150.   Once an advertisement is designed, Onyx's managers usually have the responsibility of placing it in circulation.   (**Ex. 11:** Pepper Dep. at 27.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

151.   Entertainers are not consulted regarding advertising and marketing for Onyx, including the design or content of Onyx's website.  (Wells Dec. at ¶¶ 44-47; Pough Dec. at ¶¶ 40-43; Parker Dec. at ¶¶ 42-45; Leaphart Dec. at ¶¶ 45-48; Jordan Dec. at ¶¶ 44-47; Sales Dec. at ¶¶ 44-47; Clincy Dec. at ¶¶ 40-43; Jefferson Dec. at ¶ 46; Bloedoorn Dec at ¶ 45; Martin Dec. at ¶¶ 42-43; Appling Dec. at ¶¶ 40-43; Hughes Dec. at ¶ 46.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, other than to show that entertainers remain free to market themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73).**

152.   Onyx management made the decision to provide customers with free tableside dances from entertainers on the customer's birthday.  (**Ex. 2:** Williams Feb. 3 Dep. at 60-61.)

**RESPONSE:  Denied.  (Adams Dep. 64:21-24).**

153.   Onyx management is responsible for making sure that the club has enough dollar bills or small currency for customers to purchase/exchange larger bills in order to "make it rain."  (**Ex. 2:** Williams Feb. 3 Dep. at 60-61.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.   LR  56.1B(2)(a)(2)(iii). Defendants further object to the Court considering any "facts" contained in Plaintiffs' footnote no. 19, as such proffered "facts" do not comply with the requirements of LR 56.1(B)(1).**

154.   Onyx has run out of one dollar bills to give to customers before.  (**Ex. 13:** Hayes Dep. at 81; Sales Dec. at ¶ 37; Jordan Dec. at ¶ 37; Leaphart Dec. at ¶ 38; Parker Dec. at ¶ 35; Wells Dec. at ¶ 37; Pough Dec. at ¶ 33; Clincy Dec. at ¶ 33; Bloedoorn Dec. at ¶ 36; Martin Dec. at ¶ 34; Appling Dec. at ¶ 33; Hughes Dec. at ¶ 37.)

**RESPONSE:  Denied.  (Hayes Dep. 81; Leaphart Dep. 163).**

155.   There is an ATM inside Onyx and, when the ATM runs out of money, it is the responsibility of Onyx's managers to call the vendor to restock the machine.  (**Ex. 2:** Williams Feb. 3 Dep. at 61; **Ex. 3:** Adams Dep. at 65.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).    Subject to**

that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.

156. To enter Onyx, customers must pay a door fee of between $10 and $40. (**Ex. 3:** Adams Dep. at 83.)

**RESPONSE: Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion. LR 56.1B(2)(a)(2)(iii). Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

157. Whether a customer is allowed inside Onyx is ultimately management's decision. (**Ex. 2:** Williams Feb. 3 Dep. at 62.)

**RESPONSE: Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion. LR 56.1B(2)(a)(2)(iii). Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

158. Floormen are responsible for dealing with customers who behave badly in the club and, together with management, make the ultimate decision about whether a customer will be asked to leave. (**Ex. 2:** Williams Feb. 3 Dep. at 62-63.)

**RESPONSE: Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion. LR 56.1B(2)(a)(2)(iii).**

159.   If a customer refuses to pay an entertainer, the entertainer is supposed to inform the floormen.  Management then addresses the situation by making a decision as to whether there is truth to the claim, and only if they believe the entertainer will management pursue the customer.  (**Ex. 3:** Adams Dep. at 65-66.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to this Statement on the ground it contains multiple facts and therefore does not comply with the requirements of LR 56.1(B)(1).  Subject to those objections, this Statement is denied.  (Wells Dep. 45:1-4).**

160.   There is a two-drink minimum for customers at Onyx.  (**Ex. 13:** Hayes Dep. at 75.)

**RESPONSE:  Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

161.   Stage sets are at specific times, not determined by entertainers, who may not be guaranteed a turn on stage if they arrive late or miss their name being called.  (**Ex. 13:** Hayes Dep. at 24.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement.**

162.   When there are disputes about the mandatory split of stage tips, management and/or the house mom resolve the disputes.  (**Ex. 13:** Hayes Dep. at 58; **Ex. 3:** Adams Dep. at 75; **Ex. 15:** Swinger Dep. at 54.)

**RESPONSE:   Defendants object to this Statement on the grounds it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx's management and/or house moms occasionally aid and assist entertainers by resolving disputes among them regarding stage tips.**

163.   Onyx's general manager has testified to terminating an entertainer because she was "a bad look for Club Onyx and made the other entertainers look bad."  (**Ex. 13:** Hayes Dep. at 65.)

**RESPONSE:   Defendant objects to this Statement on the ground that Plaintiffs' citation does not support this Statement.   The Club ended its business relationship with the entertainer in question and asked her not to return to Club Onyx because the entertainer was caught stealing from a customer.  (Hayes Dep. 65).**

164.   Onyx controls: advertising and marketing, drink prices, dance prices, entertainer hiring, music selection, club layout, lighting, hiring of waitstaff, security and other employees who interact with customers, club hours, club amenities and cleanliness, food selection and pricing, cover charge and overall club atmosphere.  (Clincy Dec. at ¶ 32; Pough Dec. at ¶ 32; Wells Dec. at ¶ 36; Parker Dec. at ¶ 34; Leaphart Dec. at ¶ 37; Jordan Dec. at ¶ 36; Sales Dec. at ¶ 36; Bloedoorn Dec. at ¶ 35; Martin Dec. at ¶ 33; Appling Dec. at ¶ 32; Hughes Dec. at ¶ 36; Jefferson Dec. at ¶ 36.)

**RESPONSE:  Denied in part.  Defendants deny that entertainers were not free to negotiate special prices for dancing for patrons, including spending time with patrons in Club Onyx's VIP rooms.  (Wells Dep. 47, 51-52; Leaphart Dep. 92; Pough Dep. 71).  Defendants also show that entertainers are free to market themselves as they see fit.  (Hayes Dep. 94:11-12; Wilson Dep. 73; Pough Dep. 101).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that they bear the remaining costs identified.**

165.  Onyx allows "birthday sets" or "birthday parties" for entertainers, during which the entertainer whose birthday it is gets to perform on stage for a set of songs with the entertainers of her choosing.  The entertainer whose birthday it is

typically dances more prominently than the other entertainers and, at the end of the stage set, she gets to keep all of the tips customers gave to or threw at the entertainers during the set.  (Bloedoorn Dec. at ¶ 40; Hughes Dec. at ¶ 41.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

166.   In order to have a birthday set or birthday party, an entertainer needs to sign up in the management office at Onyx and, generally, can only sign up if no one else already has.  (**Ex. 13:** Hayes Dep. at 94-95.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).    Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

167.   Although entertainers who have birthday parties can decorate the club with balloons and sometimes print advertisements for their birthday party, management makes the ultimate decision about whether an entertainer is even allowed to have a birthday party.  (**Ex. 13:** Hayes Dep. at 94-95; **Ex. 6:** Clincy Dep. at 74-75; Bloedoorn Dec. at ¶ 40; Thorpe Dec. at ¶¶ 7-13 ("Entertainers who worked the day shift were not allowed to have birthday parties.").)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Mr. Hayes's deposition does not support this Statement. Subject to those objections, the Statement is denied.  (Hayes Dep. 94-95).**

168.   For example, when opt-in Plaintiff Judith Bloedoorn asked the house mom if she could have a birthday party, the house mom said that she could not because she had not worked enough days at Onyx.  (Bloedoorn Dec. ¶ 40.)

**RESPONSE: Denied.  (Swinger Dep. 109:1-4).**

169.   When Named Plaintiff Kimberly Jordan asked the house mom if she could have a birthday party, the house mom told her she could not.  (**Ex. 16:** Jordan Dep. at 107-108.)

**RESPONSE: Denied.  (Hayes Dep. 94-95).**

170.   Onyx has denied entertainers' requests to promote the club by using the club's van or on the radio.  (Thorpe Dec. at ¶¶ 14-15.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Summary Judgment, Defendants do not dispute this Statement.**

## UNDISPUTED FACTS RELATED TO INVESTMENT IN THE BUSINESS AND CONTROL OF PREMISES

171.   The Named Plaintiffs have not made any capital investment in the facilities, advertising, maintenance, sound system, lights, food, beverage, other inventory, or staffing efforts undertaken on behalf of Onyx and were not consulted

regarding the same.  (Sales Dec. at ¶ 46; Jordan Dec. at ¶ 46; Leaphart Dec. at ¶ 47; Parker Dec. at ¶ 44; Wells Dec. at ¶ 46; Pough Dec. at ¶ 42; Clincy Dec. at ¶ 42; <u>see also</u> Bloedoorn Dec. at ¶ 46; Martin Dec. at ¶ 44; Appling Dec. at ¶ 42; Hughes Dec. at ¶ 47; Jefferson Dec. at ¶ 47.)\

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement, but show that Plaintiffs have made and do make significant capital investment in their own dancing careers in the form of hairstyling, cosmetics, nails, costumes, and shoes, all of which they purport to total at the end of each tax year and deduct from their gross receipts on their annual income tax returns.  (Wells Dep. 57-62, 101).**

172.   Defendant Pony Tail has leased the premises where Onyx is located at all times since July of 2006.  (**Ex. 12:** Pony Tail Admission No. 14.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

173.   Defendant Pony Tail has admitted to owning and controlling Club Onyx.  (**Ex. 12:** Pony Tail Interrog. Resp. No. 2.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

174.   Defendant Pony Tail's corporate representative has testified that Pony Tail employs bartenders, waitresses, door people, floormen, management, and shooter girls to work at Club Onyx.  (**Ex. 2:** Williams Feb. 3 Dep. at 8-9.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

175.   Pony Tail uses an outside payroll company to do payroll for these employees.  (**Ex. 2:** Williams Feb. 3 Dep. at 21-22.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

176.   Onyx, not entertainers, provides the stage and poles on which entertainers dance.  (**Ex. 2:** Williams Feb. 3 Dep. at 77.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation does not support this Statement.**

177.   In January of 2007, there was a severe fire at Onyx—the club sustained significant damage.  (**Ex. 2:** Williams Feb. 3 Dep. at 73-74.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to**

that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx was the victim of an arson fire on January 1, 2007, during which it sustained significant damage and had to close its doors for approximately six months.  (Adams Decl., Par. 12; Williams Dep. 73-74 (Feb. 3, 2010)).

178.   When the club was rebuilt, it was rebuilt with funds from an insurance company and Defendant Galardi.  Defendant Pony Tail's corporate representative has testified that Pony Tail was the holder of the policy, as was the building's landlord.  Defendant Galardi personally paid amounts necessary for rebuilding in excess of what was paid by insurance and the landlord.  (**Ex. 2:** Williams Feb. 3 Dep. at 74-75.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii). Defendants also object to this Statement on the grounds it contains numerous statements of fact, and for this reason does not conform to the requirements of Local Rule 56.1(B)(a).  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

179.   Onyx has a video surveillance system, which was installed by a professional company and which is maintained in the management office.  (**Ex. 2:** Williams Feb. 3 Dep. at 64-66.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

180.   Onyx management is in charge of day-to-day purchasing (liquor, lightbulbs, etc.).  (**Ex. 2:** Williams Feb. 3 Dep. at 25-26.)

**RESPONSE:    For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

181.   Many of the corporations falling under GSE and GSEC have joint purchasing power for things like advertising, linen, sanitations, phone, and utility services at the clubs.  (**Ex. 2:** Williams Feb. 3 Dep. at 26-27.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

182.   Defendant Galardi owns several closely held corporations.  He uses money from those corporations for improvement or cash flow needs associated with Pony Tail if necessary.  (**Ex. 2:** Williams Feb. 3 Dep. at 11.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

183.   Defendant Pony Tail uses an accountant to account for Onyx's money.   That accountant is likely paid under an arrangement with Defendant Galardi, but is not paid by entertainers.  (**Ex. 2:** Williams Feb. 3 Dep. at 12.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii). Defendants further object to this Statement on the ground it contains multiple facts in violation of LR 56.1(B)(1). Defendants further object on the ground that Plaintiffs' citation to Mr. Williams's deposition does not support that the accountant is "likely paid under an arrangement with Defendant Galardi." Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

184.   Defendant Pony Tail, Inc. produced to Plaintiffs its accounting ledger for years 2007, 2008, and 2009, excluding the following categories listed on the ledger from the production: Credit Card Clearing, Stockholder Loans, Administrative Fees, Medical Expenses, Professional Fees (non-legal), Salaries and Wages, Accumulated Depreciation, Dividends Paid (and all sub-categories underneath), Legal Fees, Taxes (and all sub-categories underneath), Interest Income, Amortization, Depreciation, General Account, CC Account, General Account, Cash Register Fund, Misc. Payables, Sales Tax Payables, Liquor Tax Payables, Garnishments, Over-Short, Theft/Counterfeit, Services, Bank Service Charges (and all sub-categories), Cash Discounts, Interest Expense (and all sub-categories), Loan, Other Income, No Account, Payroll Clearing Account, and Cash Paid Outs.  (See generally **Ex. 20:** Correspondence between Counsel dating from March 15, 2010 to May 6, 2010.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.   LR 56.1B(2)(a)(2)(iii).   Defendant further objects to this Statement and Plaintiffs' corresponding citation to the record on the ground these are not facts related to the underlying merits of this litigation, rather this statement purports to describe the substance of a negotiated agreement between counsel reached following the Court's direction**

in response to a discovery dispute raised by Plaintiffs, about which portions of Pony Tail, Inc.'s General Ledger were to be produced by Defendants to Plaintiffs.  This is not evidence.  Nor is correspondence from Defendants' counsel to Plaintiffs' counsel between March and May, 2010 evidence; rather the only apparent purpose in asserting this Statement is to suggest to the Court that Defendants have somehow been less than forthcoming with their accounting records, when Defendants have produced everything which Plaintiffs have requested, and which was agreed upon by counsel for the parties.

185.   The partial accounting records produced show Defendant Pony Tail, Inc. to have incurred expenses exceeding $1,000,000 in each 2007, 2008 and 2009 to operate Onyx.  These expenses include but are not limited to expenses for taxes, bar supplies, internet, print media, property and liability insurance, janitorial expenses, office supplies and equipment, rent, building maintenance and repairs, lighting and sound, pest control, linens, and utilities (such as gas, electric, refuse, water, and sewer).  (See generally **Ex. 21:** Defs.' Acct. Ledger.)

**RESPONSE:   Defendants object to this Statement because of Plaintiffs' characterization of Defendant Pony Tail, Inc.'s documents produced in this litigation as its "partial accounting records," which were produced following**

lengthy negotiation and agreement between counsel.   Defendants further object to this Statement on the ground that not all of the expenses identified in this Statement are appropriately counted or considered as it relates to Club Onyx's investment in its business for purposes of the "economic realities test."

## FACTS RELATED TO DEGREE OF SKILL REQUIRED OF ENTERTAINERS

186.   There is no requirement that entertainers have past experience in order to work at Onyx.  (**Ex. 15:** Swinger Dep. at 57.)

**RESPONSE:  Denied.  (Williams Dep. 37 (Feb 3, 2010)).  Defendants show that the vast majority of Club Onyx's entertainers have prior experience dancing in other clubs before performing at Club Onyx.  (Williams Dep. 37 (Feb. 3, 2010); Clincy Dep. 20-21, 30; Sales Dep. 20, 99; Jordan Dep. 24-25, 46; Leaphart Dep. 17-19, 24, 40-47, 160; Pough Dep. 38; Adams Decl., Par. 13;** *See also:* **Affidavits of Tammy McAdoo, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Pars. 3 & 11).**

187.   There is no requirement that entertainers have formal dance training in order to work at Onyx.  (**Ex. 13:** Hayes Dep. at 13; **Ex. 15:** Swinger Dep. at 57.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute that Club Onyx does not formally**

require its entertainers to have formal dance training, but shows that it prefers dancers with prior dance experience and the vast majority of its entertainers do have prior experience dancing in other clubs before performing at Club Onyx. **(Williams Dep. 37 (Feb. 3, 2010); Clincy Dep. 20-21, 30; Sales Dep. 20, 99; Jordan Dep. 24-25, 46; Leaphart Dep. 17-19, 24, 40-47, 160; Pough Dep. 38; Adams Decl., Par. 13;** *See also:* **Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Pars. 3 & 11).**

188.   Onyx's manager, Cliff Adams, has never called and asked for references when he wants to hire an entertainer.  (**Ex. 3:** Adams Dep. at 97.)

**RESPONSE:   Defendants object to Plaintiffs' use of the term "hire" in relation to an entertainer to the extent it suggests or implies a formal employer-employee relationship as opposed to an independent contractor relationship with Club Onyx.   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

189.   When an individual wants to work as an entertainer at Onyx, she comes to the club and is directed to the house mom.  (**Ex. 3:** Adams Dep. at 14-15; **Ex. 13:** Hayes Dep. at 8.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

190.   The house mom then speaks with the entertainer and does a "body check" to determine whether the entertainer's body is suitable for performing at Onyx.  The body check includes looking for stretch marks, obesity, bad tattoos, or other physical appearance factors that are not what Onyx is looking for in an entertainer.  (**Ex. 13:** Hayes Dep. at 9; **Ex. 3:** Adams Dep. at 16; **Ex. 15:** Swinger Dep. at 55-58.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

191.   The house mom Sabrina Swinger has turned away girls after body checks because, as one example, they just gave birth and might have stretch marks or discolored skin.  (**Ex. 15:** Swinger Dep. at 55-58.)

**RESPONSE:  Defendants object to this Statement on the ground Plaintiffs'**

**citation to Ms. Swinger's deposition misstates evidence.  (Swinger Dep. 55-56).**

192.   After the body check, the entertainer usually auditions by dancing on stage to three to five songs for the house mom and management.  (**Ex. 3:** Adams Dep. at 14-15; **Ex. 13:** Hayes Dep. at 8; **Ex. 15:** Swinger Dep. at 56.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary**

**Judgment, Defendants do not dispute this Statement.**

193.   Not all entertainers have been required to audition to work at Onyx; however, they have had to undergo some kind of physical evaluation or "body check."  (See e.g., **Ex. 6:** Clincy Dep. at 32; Bloedoorn Dec. at ¶ 7; Jefferson Dec. at ¶ 7.)

**RESPONSE:   Defendants object to Plaintiffs' reliance upon Plaintiffs'**

**citations in support of this Statement on the ground that these individuals are**

**not competent to know whether all entertainers undergo a physical evaluation**

**or body check; each is only competent to testify about things within her own**

**personal knowledge.**

194.   During the audition, management evaluates how the entertainer moves on stage, if she has rhythm, how experienced she appears to be, whether she

maintains eye contact, and "how well [she] capture[s] the crowd."  (**Ex. 3:** Adams Dep. at 15; **Ex. 13:** Hayes Dep. at 10.)

**RESPONSE:   For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

195.   Generally speaking, the criteria Onyx uses for hiring entertainers include appearance, ability to dance, communication skills, costumes, weight, hair, demeanor, nails, cleanliness, perceived sexiness, and comfort being naked.  (**Ex. 2:** Williams Feb. 3 Dep. at 34-36.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiff's Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

196.   The Named Plaintiffs do not have or do not use formal dance training in their work as entertainers for Onyx.  (Clincy Dec. at ¶ 44; Pough Dec. at ¶ 44; Wells Dec. at ¶ 48; Parker Dec. at ¶ 46;  Leaphart Dec. at ¶ 49; Jordan Dec. at ¶ 48; Sales Dec. at ¶ 48; **Ex. 16:** Jordan Dep. at 48 ("I mean, it's nothing really to it. You just have to be pretty."); see also Bloedoorn Dec. at ¶ 48; Martin Dec. at ¶ 46; Appling Dec. at ¶ 44; Hughes Dec. at ¶ 49; Jefferson Dec. at ¶ 49.)

**RESPONSE:  Denied.  Defendants show that the vast majority of entertainers who perform at Club Onyx have prior dance experience performing at other clubs.  (Williams Dep. 37 (Feb. 3, 2010); Clincy Dep. 20-21, 30; Sales Dep. 20, 99; Jordan Dep. 24-25, 46; Leaphart Dep. 17-19, 24, 40-47, 160; Pough Dep. 38;  Adams Decl., Par. 13; *See also:*  Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 3).  Defendants further show that no two dancers dance exactly alike and that the entertainers do perform exercise special skills when performing "pole-dancing."  (Sales Dep. 99).**

<u>FACTS RELATED TO PERMANENCY OF RELATIONSHIP</u>

197.   There have been entertainers at Onyx who have performed there for a period of one year or longer, inclusive of breaks.  (**Ex. 12:** Pony Tail Admission No. 35; <u>see also</u> **Ex. 15:** Swinger Dep. at 13-14 (testifying to getting to know entertainers well over the course of their work for Onyx).)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms. Swinger's deposition does not support this Statement (stating only that some entertainers have been at Club Onyx "for a**

while.")(Swinger Dep. 14:1-3).   **Subject to that objection, for purposes of Plaintiffs' Motion for Summary Judgment, Defendants do not dispute that some entertainers have performed at Club Onyx for more than a year, but Defendants show that many dancers' relationship with Club Onyx are relatively short-lived.   (Adams Decl., Par. 13).   Plaintiffs' counsel has even characterized the nature those who perform in the exotic dancing industry as "transient," demanding Defendants supply Plaintiffs' counsel with entertainers addresses, SSNs and dates of birth for purposes of notifying them of this civil action.  [Doc. 12-1, fn. 11; Doc. 47 at 10.]**

198.   Named Plaintiff Naturee Wells worked as an entertainer at Onyx from approximately July of 2007 to August of 2009.  (Wells Dec. at ¶ 1; **Ex. 5:** Wells Dep. at 17.)

**RESPONSE:  Denied.  (Wells Dep. 15, 17).**

199.   Named Plaintiff Summer Sales worked as an entertainer at Onyx from approximately May of 2008 to August of 2009.  (Sales Dec. at ¶ 1; **Ex. 17:** Sales Dep. at 27-28.)

**RESPONSE:   Denied.   (Summer Sales's Resp. to Defendants' First Interrogatories, No. 1)(Sales stated under oath she performed at Club Onyx May <u>2009</u> – August 2009).**

200.   Named Plaintiff Karenza Clincy has worked as an entertainer at Onyx from approximately June of 2007 to fall of 2010.  (**Ex. 6:** Clincy Dep. at 20-29; **Ex. 22:** Correspondence from Counsel dated October 1, 2010.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to the deposition of Ms. Clincy does not support when she stopped working at Club Onyx.  Defendants further object to this Statement on the ground that Plaintiffs' citation to correspondence from counsel dated October 1, 2010 is not proper record evidence.  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

201.   Named Plaintiff Monica Leaphart has worked as an entertainer at Onyx from approximately June of 2008 to the present.  (**Ex. 4:** Leaphart Dep. at 23-24.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation to Ms.  Leaphart does not support it.  Subject to that objection, the Statement is denied.  (Leaphart Dep. 23-26).**

202.   Named Plaintiff Kiesha Pough has worked as an entertainer at Onyx from approximately May of 2008 to the present.  (Pough Dec. at ¶ 1; **Ex. 7:** Pough Dep. at 28-29.)

**RESPONSE:    Defendants  object  to  this  Statement  on  the  ground  that Plaintiffs' citation do not support it.  Subject to that objection, the Statement is denied.  (Pough Dep. 26-29).**

203.   Named Plaintiff Jammie Parker worked as an entertainer at Onyx from approximately the latter half of 2008 to August of 2009.  (Parker Dec. at ¶ 1; **Ex. 8:** Parker Dep. 32- 36.)

**RESPONSE:  Denied.  (Parker Dep. 32-33).**

204.   Plaintiff Kimberly Jordan worked as an entertainer at Onyx from approximately 2007 to 2009.  (Jordan Dec. at ¶ 1; **Ex. 16:** Jordan Dep. at 31-32, 36.)

**RESPONSE:    Defendants  object  to  this  Statement  on  the  ground  that Plaintiffs' citation to Ms. Jordan's deposition does not support this Statement. Defendants  further  object  to  this  Statement  on  the  grounds  her  sworn deposition testimony (claiming she began working at Club Onyx in 2005-2006 timeframe)(Jordan Dep. 30-31) conflicts with her own Declaration that she started at Club Onyx in "approximately 2007."  (Jordan Decl., Par. 1).**

205.   Opt- in Plaintiff Judith Bloedoorn worked as an entertainer at Onyx from approximately October 2007 to July 2009.  (Bloedoorn Dec. at ¶ 1.)

**RESPONSE:  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

206.  Opt-in Plaintiff Amber Jefferson worked as an entertainer at Onyx for approximately two years.  (Jefferson Dec. at ¶ 1.)

**RESPONSE:  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

207.  Opt-in Plaintiff British Martin worked as an entertainer at Onyx for approximately one year on two separate occasions.  (Martin Dec. at ¶ 1.)

**RESPONSE:  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

208.  Opt-in Plaintiff Brykelas Thorpe worked as an entertainer at Onyx for approximately nine months.  (Thorpe Dec. at ¶ 1.)

**RESPONSE:  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

209.  Opt-in Plaintiff Torey Hughes worked as an entertainer at Onyx for approximately one year.  (Hughes Dec. at ¶ 1.)

**RESPONSE:  For purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

210.   Although the Named Plaintiffs may have taken breaks during their tenure at Onyx or worked for other clubs at the time they were working for Onyx, they considered Onyx their "home club," working a minimal amount, if any, at other clubs, and not working at other clubs during times they were scheduled to work at Onyx.   (Clincy Dec. at ¶ 29; Sales Dec. at ¶ 29; Jordan Dec. at ¶ 29; Leaphart Dec. at ¶ 30; Parker Dec. at ¶ 29; Wells Dec. at ¶ 29; Pough Dec. at ¶ 29; see also Bloedoorn Dec. at ¶ 30; Martin Dec. at ¶ 30; Appling Dec. at ¶ 29; Hughes Dec. at ¶ 29; Jefferson Dec. at ¶ 30; see e.g., **Ex. 6:** Clincy Dep. at 27-28 (testifying to quitting job at other club because she could not work there and maintain Onyx's schedule).)

**RESPONSE:  Denied.  (Clincy Dep. 20-21, 30; Sales Dep. 20, 99; Jordan Dep. 24-25, 46; Leaphart Dep. 17-19, 24, 40-47, 160; Pough Dep. 38; Adams Decl., Par. 13; *See also:*   Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, Karen Robinson at Par. 11).**

211.   Onyx's general manager has fired entertainers for working at another club on days they were scheduled to work at Onyx.  (**Ex. 13:** Hayes Dep. at 86.)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation does not support the Statement.   Subject to that objection, the Statement is denied.   *See:*  Adams Decl., Par. 5(f); Affidavits of Fe Simien-Hicks, Ashley Seals, Keyarra Johnson, Alice Taylor, Tammy McAdoo, Lauren Smith, Chidinma Obioma, Shamariah Blair, Janell Hall, Daphne Reed, Chanel Adrienne Meadows, Latanjula Thomas, Ronnie Barfield, Rachel Hardeman, Alexzia Gonzalez, and Karen Robinson at Par. 7(g).**

### FACTS RELATED TO HOW INTERGRAL ENTERTAINERS ARE TO THE BUSINESS

212.   It is well-known in and around Atlanta that Onyx is a strip club.  (**Ex. 3:** Adams Dep. at 56.)

**RESPONSE:   Defendants object to this Statement on the ground the cited testimony is not fact, but opinion, speculation and a conclusory on the part of Mr. Adams in response to a question by Plaintiffs' counsel which called for him to speculate.**

213.   Onyx is busy because of the entertainers.  (**Ex. 3:** Adams Dep. at 60 ("Girls make the club busy.  As far as if you don't have enough girls in the building, your customers won't stay, you know.").)

**RESPONSE:   Defendants object to this Statement on the ground that the testimony solicited by Plaintiffs' counsel called for Mr. Adams to speculate**

about why patrons visit Club Onyx and what causes patrons to come or go. The cited testimony is Mr. Adams's opinion; not fact, and therefore, Defendants object to this Statement. Subject to that objection, the Statement is denied. (Williams Dep. 67 (Feb. 3, 2010); Adams Dep. 37-38; Hayes Dep. 31-32, 35, 39).

214.   Onyx has one main dancing stage and two satellite stages.  (**Ex. 3:** Adams Dep. at 73.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

215.   The main stage is visible from almost every location in the club, and, the areas where the main stage is not visible have their own smaller stages.  (**Ex. 13:** Hayes Dep. at 69.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

216.   Photographs of the inside of Onyx show that poles and stages are central to the layout of the club.  (Landis Aff. Ex. B p. NKA0005081-0005095.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendants further object to Plaintiffs' reliance upon and citation to the Affidavit of Dana C. Landis, an individual employed by Plaintiffs' lawyers' law firm, whose Affidavit has never been produced by Plaintiffs during the discovery phase of this litigation, nor has Ms. Landis ever been identified by Plaintiffs as an individual with information or knowledge about any issue in this litigation. Defendants further object to this Statement and the attachments to Ms. Landis's Affidavit on the grounds they constitute inadmissible hearsay evidence which the Court may not consider.**

217.   Onyx's own website demonstrates that naked or scantily clad women are at the heart of the business.  (Landis Aff. Ex. A; <u>see also</u> Landis Aff. Ex. B.)

**RESPONSE:  Defendants object to Plaintiffs' reliance upon and citation to the Affidavit of Dana C. Landis, whose declaration was never produced during the discovery period, nor was she ever identified by Plaintiffs as an individual with information or knowledge concerning any issue in this litigation. Defendants further object on the ground that Defendants do not have control**

**over everything published on the internet concerning Club Onyx; and the witness is not competent to testify that the materials she may have found on the internet were, in fact, placed there by Defendants.  Defendants further object to this Statement and the attachments to Ms. Landis's Affidavit on the ground they constitute inadmissible hearsay evidence which the Court may not consider.**

218.   A search of publically (sic) available internet sites also shows that the theme of naked or scantily clad women is prevalent throughout online discussion of Onyx.  (Landis Aff. Ex. C.)

**RESPONSE:  Defendants object to Plaintiffs' reliance upon and citation to the Affidavit of Dana C. Landis, whose declaration was never produced during the discovery period, nor was she ever identified by Plaintiffs as an individual with information or knowledge concerning any issue in this litigation. Defendants further object on the ground that Defendants do not have control over everything published on the internet concerning Club Onyx; and the witness is not competent to testify that the materials she may have found on the internet were, in fact, placed there by Defendants.**

219.   On nights that there are many customers and few entertainers at Onyx, management will call in additional entertainers who work for Onyx.   (**Ex. 15:** Swinger Dep. at 93.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

220.   One of the reasons for disciplining entertainers for spending too much time in the dressing room is that customers leave, depriving Onyx of business, if entertainers are not on the floor dancing.   (**Ex. 15:** Swinger Dep. at 21, 45-47 ("The club has rules to keep their business open"); **Ex. 15:** Swinger Dep. Ex. 11 (stating that "[f]orty customers came and went" as a reason for fining entertainers for remaining in the dressing room.).)

**RESPONSE:   Defendants object to this Statement on the ground that Plaintiffs' citation does not support this Statement.  Ms. Swinger's statement was made in the context of explaining why Club Onyx management asks entertainers to spend no more than one hour in the dressing room getting ready to perform.  In response, Ms. Swinger testified that "[the dancers] complain [to her] about customers leaving," and she explains that the reason**

customers leave is because "[the entertainers] are in the [dressing room] playing and drinking." (Swinger Dep. 21). Defendants further object to Plaintiffs' reliance upon Swinger Dep. Ex. 11, which was not signed or prepared by Ms. Swinger, and she is not competent to testify about either its authenticity or accuracy. The document is inadmissible hearsay evidence.

221. In hiring management for Onyx, Defendant Pony Tail looks for someone with experience in the adult entertainment industry. (**Ex. 2:** Williams Feb. 3 Dep. at 37.)

**RESPONSE: Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion. LR 56.1B(2)(a)(2)(iii). Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

222. Defendant Pony Tail's Fulton County application to register a business under a trade name states that the nature of the business is both adult entertainment and alcohol. (**Ex. 2:** Williams Feb. 3 Dep. at 94, Ex. 20.)

**RESPONSE: Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion. LR 56.1B(2)(a)(2)(iii). Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

223.   Onyx has an adult entertainment license, which Defendant Pony Tail believes has "value."  (**Ex. 2:** Williams Feb. 3 Dep. at 69-70.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

224.  Onyx has advertised in Xcitement magazine, a magazine geared toward the adult entertainment industry.  (**Ex. 11:** Pepper Dep. at 39.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).   Subject to that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.**

225.   Mr. Pepper, who Defendant Galardi chose to do marketing work for his clubs, including Onyx, has spoken at the annual adult entertainment trade show sponsored yearly by Exotic Dancer Publications in Las Vegas.  (**Ex. 11:** Pepper Dep. at 18-19.)

**RESPONSE:  Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Subject to**

that objection, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute this Statement.

226.   Mr. Pepper did design work for the Onyx billboard on Highway 85 in Atlanta and chose to put scantily clad women on it, conveying to the public that Onyx is an adult entertainment nightclub.  (**Ex. 11:** Pepper Dep. at 26, 28.)

**RESPONSE:   Defendants object to this Statement on the ground it is not material to any issue in Plaintiffs' Motion.  LR 56.1B(2)(a)(2)(iii).  Defendant further objects to this Statement on the ground that Plaintiffs' citation to Mr. Pepper's deposition does not support the portion of the Statement that he "chose to put scantily clad women on [the Club Onyx billboard]."  Subject to those objections, for purposes of Plaintiffs' Motion for Partial Summary Judgment, Defendants do not dispute the remainder of this Statement.**

RESPECTFULLY SUBMITTED, this 4th day of November, 2010.

Respectfully submitted,

/s/ Susan Kastan Murphey
SUSAN KASTAN MURPHEY
Georgia Bar No.

/s/ Dean R. Fuchs
DEAN R. FUCHS
Georgia Bar No. 279170

/s/ Matthew P. Shaw
MATTHEW P. SHAW
Georgia Bar No. 101257
COUNSEL FOR DEFENDANTS

SCHULTEN WARD & TURNER, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, Georgia 30303
(404) 688-6800

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KARENZA CLINCY, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **CIVIL ACTION FILE NO.** |
| **v.** | ) **NO. 1:09-CV-2082-RWS** |
| | ) |
| **GALARDI SOUTH ENTERPRISES,** | ) |
| **INC., d/b/a THE ONYX, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that this filing complies with the font size requirements of Local Rule 7.1D and that I have this date served the within and foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS FILED IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** on the following by using the Court's CM/ECF electronic filing system to insure delivery:

Donald H. Nichols:          nichols@nka.com

E. Michelle Drake:          drake@nka.com

Steven A. Smith:            smith@nka.com

Anna P. Prakash:           aprakash@nka.com

Jennifer K. Mason:         jkisermason@yahoo.com

This 4th day of November, 2010.

/s/ Dean R. Fuchs

DEAN R. FUCHS
Georgia Bar No. 279170

SCHULTEN WARD & TURNER, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, Georgia 30303
(404) 688-6800