FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 1 8 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

Karenza Clincy, Jammie Parker,
Kiesha Pough, Kimberly Jordan,
Naturee Wells, Monica Leaphart,
and Summer Sales, Individually
and on behalf of others similarly
situated,

        Plaintiffs,

**MEMORANDUM OF LAW
IN SUPPORT OF JOINT
MOTION FOR
SETTLEMENT
APPROVAL**

Galardi South Enterprises, Inc.
d/b/a/ The Onyx, Galardi South
Enterprises Consulting, Inc.
d/b/a/ The Onyx, Pony Tail, Inc.
d/b/a/ The Onyx, Michael Kapp
and Jack Galardi.

        Defendants.

Court File No. 09-CV-2082 (RWS)

## PRELIMINARY STATEMENT

Following Court-ordered mediation and subsequent arms-length negotiations
between Counsel, the parties reached a proposed settlement in this case, and now
jointly move the Court for approval of that proposed settlement. The Court should
grant the parties' motion because their settlement is a fair and reasonable
resolution of the parties' *bona fide* disputes as to liability and damages under the
federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

## RELEVANT BACKGROUND

## I.    SUMMARY OF LITIGATION.

On July 31, 2009, Named Plaintiffs Karenza Clincy, Jammie Parker, Kiesha Pough, Kimberly Jordan, Naturee Wells, Monica Leaphart, and Summer Sales[1]— on behalf of themselves and other former and current adult entertainers who worked at the Club Onyx in Atlanta—(collectively, "Plaintiffs") filed a lawsuit against Defendants Galardi South Enterprises, Inc. d/b/a/ The Onyx, Galardi South Enterprises Consulting, Inc. d/b/a/ The Onyx, Pony Tail, Inc. d/b/a/ The Onyx, Michael Kapp and Jack Galardi (collectively, "Defendants").   (ECF No. 1.) Plaintiffs pled their case as a collective action and alleged that Defendants misclassified the adult entertainers at Club Onyx as independent contractors, failed to pay them any wages, and charged them fines and fees in order to work in violation of the FLSA.   (See generally id.)   Plaintiffs sought a determination that the entertainers are employees under the FLSA and are entitled to back wages, liquidated damages, and attorneys' fees and costs.   (See generally id.)[2]

For their part, Defendants denied liability, denied that any Defendant other than Pony Tail, Inc. would be the entertainers' employer if misclassification was

---

[1]  Erica Hammond also filed this lawsuit as a Named Plaintiff; however, Ms. Hammond was later dismissed by the Court. (ECF No. 187.)

[2]  Plaintiffs later added a claim for retaliation as a result of Defendants firing the Named Plaintiffs for filing this lawsuit. (Sec. Amend. Compl., ECF No. 45; see also TRO Order, ECF No. 32.)

1

found, asserted other affirmative defenses, and claimed certain offsets against any wages owed. (Sec. Amend. Answers, ECF Nos. 52-55, 63.)

On March 12, 2010, this Court granted Plaintiffs' motion for conditional collective certification under Section 216(b) of the FLSA and authorized the mailing of judicial notice to current and former entertainers at Club Onyx. (ECF No. 147; see also ECF No. 187.) Seventy-four individuals opted into the collective over the course of this case.[3] (Consent Forms, ECF Nos. 3, 6, 50, 72, 75-79, 81, 86-90, 92, 100, 109-110, 112, 119-120, 122-123, 127, 138, 142, 144, 161-163, 176-177, 198-199, 201-209, 221-222, 226, 236, 245-247, 267; ECF No. 287 (allowing inclusion of additional opt-in plaintiffs).) Including the Named Plaintiffs, the collective is now comprised of 80 individuals. (Id.)

In the fall of 2010, after the close of fact discovery on the issue of misclassification, the parties filed cross motions for summary judgment. (ECF Nos. 211, 218.) On September 7, 2011, this Court ruled that the entertainers at Onyx are employees under the FLSA as a matter of law. (ECF No. 287.) The Court then ordered the parties to attend mediation before a magistrate judge in the District. (Id.)[4]

---

[3] One non-entertainer opted into this action and has since been dismissed by the Court. (ECF No. 314.) Another opt-in plaintiff voluntarily withdrew her Consent Form. (ECF No. 21.)

[4] Defendants filed a request to file an interlocutory appeal following the Court's

2

## II.   SUMMARY OF PRE-MEDIATION DAMAGE CALCULATIONS.

In advance of mediation, Plaintiffs calculated their damages based on good faith estimates gathered from 73 of the Plaintiffs in this case. (Declaration of Anna P. Prakash ("Prakash Decl.") at ¶ 3.)[5]  Specifically, Plaintiffs gathered information on their (1) length of employment; (2) hours worked per week; (3) fines paid per week; (4) house fees paid per week; and (5) "tip outs" paid per week.  (Id.) Based on this information, Plaintiffs' Counsel then calculated the number of hours each Plaintiff would have worked during the class period.  (Id.) Each Plaintiff's weekly hours were multiplied by the applicable minimum wage and each Plaintiff's total weekly payments were added to this number to arrive at total minimum wage damages.  (Id.) To arrive at what Plaintiffs' Counsel believes to be a conservative estimate, Plaintiffs' Counsel reduced the overall number by 10%.  (Id.)  Using this methodology, the sum of all 80 Plaintiffs' unliquidated minimum wage damages total $3.1MM.  (Id.)  Considering this, liquidated damages, retaliation damages, and fees and costs,[6] Plaintiffs made a pre-mediation demand of $5.2MM. (Id.)

---

determination. (ECF No. 288.)  The parties reached the instant settlement and the case was stayed prior to any determination on Defendants' request. (ECF No. 311.)

[5] Defendants do not have payroll or complete timeclock records for the entertainers and do not have complete records of all fees and fines paid.

[6] Plaintiffs' fees and costs are discussed in greater detail below.  (See infra Sections "Relevant Background," IV.F and "Argument" IV.)

3

Defendants believe their exposure to potential liability was significantly less than Plaintiffs' pre-mediation demand of $5.2MM. Defendants disagreed with what they view as largely self-serving estimates of hours worked by the Plaintiffs/Opt-In Plaintiffs which, in many instances, was simply not borne out in those timesheets Defendants maintained of Plaintiffs' working hours. Moreover, not only did Defendants hope to take an interlocutory appeal of the Court's Order on Plaintiffs' Motion for Summary Judgment which found Plaintiffs to have been misclassified as a matter of law, Defendants also intended to (a) move the Court for Decertification of the conditional class at the close of the Phase II of the discovery period; (b) move for summary judgment on the issue of whether Defendants Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc. and Mike Kap were "employers" or "joint employers" subject to liability under the FLSA; (c) move for summary judgment on Plaintiffs' claims for unpaid overtime wages, since none of the Plaintiffs ever testified or established that she had ever worked more than 40 hours in a given workweek; (d) move for summary judgment on whether any FLSA exemption applied to the Plaintiffs, including without limitation, the creative professional exemption; (e) move for summary judgment on whether any Plaintiff could prove that she did not earn at least the federal tipped minimum wages after applying applicable tip credits and credits for tableside dance fees were deducted from any minimum wage liability; and (f)

4

move for summary judgment on the Named Plaintiff's claims for emotional distress damages which, Defendants believe, are not awardable under the FLSA. In light of the above, Defendants believed their exposure to potential liability was less than what they ultimately agreed to pay due to the uncertainty of litigation and the future cost of defending the litigation.

## III.   SUMMARY OF MEDIATION AND SETTLEMENT DISCUSSIONS.

The parties attended Court-ordered mediation before U.S. Magistrate Judge Russell Vineyard on October 24, 2011. (See ECF No. 291.) The parties were unable to reach a settlement during the October 24 conference, but the matter was held open to allow for more discussions. (ECF No. 300.) On November 4, 2011, the Court determined the settlement conference concluded, and U.S. Magistrate Judge Vineyard was terminated as mediator. (ECF No. 302.)

The parties continued arms-length negotiations between counsel over the following months, exchanging settlement proposals and potential terms. (Prakash Decl. at ¶ 4.) On March 12, 2012 the parties finalized a (proposed) settlement agreement, which was fully executed on March 13, 2012. (Id. at ¶ 5; Exhibit 1.)[7] This case was then stayed and Defendants' motion to file the instant motion under seal granted. (ECF Nos. 311, 312.)

---

[7] The parties' Settlement Agreement is attached as Exhibit 1 to the Prakash Decl., as are the other exhibits cited herein.

## IV.   SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT.

### A. Total Settlement Amount.

The parties' proposed settlement agreement provides that Defendants will pay a total of $1.55MM dollars to settle this litigation. (Ex. 1 at ¶ 7.1.)  Of that amount, $2,000 will be used as a "contingency fund" to cover any unexpected costs associated with the proposed settlement; the remainder will be used to pay the Plaintiffs and any amounts awarded to their Counsel.  (Id. at ¶ 7.2.)  Any money remaining in the contingency fund after payments are made to Plaintiffs and Counsel will be donated to the parties' chosen *cy pres* organization, the Georgia Coalition Against Domestic Violence. (Id.)

### B. Schedule of Payments by Defendants.

The parties have agreed that the proposed settlement amount will be paid and distributed in cycles.  (Id. at § 8.)  Specifically, if the Court approves this settlement:

- Three (3) days following approval, Defendants[8] shall deposit two hundred fifty thousand dollars ($250,000) into the Client Trust Account held by Plaintiffs' Counsel. (Id. at ¶ 8.1.)

- On or before sixty (60) days following approval, Defendants shall deposit a second payment of two hundred fifty thousand dollars ($250,000) into the Client Trust Account. (Id. at ¶ 8.2.)

---

[8] Due to his personal financial condition, the parties have agreed to dismiss Defendant Michael Kap upon approval of settlement; he will not be required to fund the settlement. (Id. at ¶¶ 17.1, 8.1.)

- Beginning thirty (30) days following the second payment of two hundred fifty thousand dollars ($250,000) and for a period of fifty-two (52) weeks thereafter, Defendants shall deposit ten thousand dollars ($10,000) weekly into the Client Trust Account. (Id. at ¶ 8.3.)

- On or before thirty (30) days following the last scheduled $10,000 weekly payment, Defendants shall deposit $530,000 into the Client Trust Account. (Id. at ¶ 8.4.)

The parties have agreed that these payments will be secured by a Consent Judgment against Defendants Jack Galardi, Pony Tail, Inc., Galardi South Enterprises, Inc., and Galardi South Enterprises Consulting, Inc. in the amount of three million dollars ($3,000,000). (Id. at ¶ 9.1.) In the event Defendants do not make any of their scheduled payments as described above and do not cure the deficiency within 15 days of Defendants' Counsel receiving written notice of the deficiency, Plaintiffs will file the Consent Judgment and shall be immediately entitled to full payment of the three million dollars ($3,000,000) by Defendants Jack Galardi, Pony Tail, Inc., Galardi South Enterprises, Inc., and Galardi South Enterprises Consulting, Inc. (Id. at ¶ 9.3.) The three million dollars ($3,000,000) owed under the Consent Judgment shall be reduced by amounts already paid under this Agreement as of the date the Consent Judgment is filed, if necessary. (Id.)

### C. Settlement Administration and Schedule of Payments to Plaintiffs.

Per the parties' proposed settlement agreement, Plaintiffs' Counsel shall serve as settlement administrator. (Id. at ¶ 13.1) Subject to Court approval, the

7

following schedule shall apply for Plaintiffs' Counsel to make payments from the

amounts deposited in the Client Trust Account as discussed above:

- Thirty (30) days following the initial payment of two hundred fifty thousand dollars ($250,000) by Defendants, (1) Plaintiffs' Counsel shall be paid any awarded Litigation Expense and any awarded Administration Costs incurred by that date; and (2) the balance of the two hundred fifty thousand dollars ($250,000) shall be paid to Plaintiffs in proportion to the amount of their total settlement allocations. (Id. at ¶ 13.2.1; see also *infra* pp. 9-10 regarding settlement allocations.)

- Ten (10) days following the second payment of two hundred fifty thousand dollars ($250,000) by Defendants, (1) Plaintiffs' Counsel shall be paid any awarded and unpaid Administration Costs incurred by that date; and (2) the balance of the payment of two hundred fifty thousand dollars ($250,000) shall be paid to Plaintiffs and Plaintiffs' Counsel in proportion to the amount of their total settlement allocations and awarded Attorneys' Fees, respectively. (Ex. 1 at ¶ 13.2.2.)

- Every ninety (90) days thereafter for a period of fifty-two (52) weeks, (1) Plaintiffs' Counsel shall be paid any awarded and unpaid Administration Costs incurred by that date; and (2) the balance of the Settlement Fund amounts remaining in the Client Trust Account shall be paid to Plaintiffs and Plaintiffs' Counsel in proportion to the amount of their total settlement allocations and awarded Attorneys' Fees, respectively. (Id. at ¶ 13.2.3.)

- Ten (10) days following the last payment of five hundred thirty thousand dollars ($530,000) by Defendants, (1) Plaintiffs' Counsel shall be paid any awarded and unpaid Administration Costs incurred by that date; and (2) the balance of the Settlement Fund amounts remaining in the Client Trust Account shall be paid to Plaintiffs and Plaintiffs' Counsel in proportion to the amount of their total settlement allocations and awarded Attorneys' Fees, respectively. (Id. at ¶ 13.2.4.)

The parties have agreed that checks that remain uncashed ninety (90) days after they are mailed will be stopped and the money returned to the Client Trust Account and any Plaintiff whose check was stopped will be allowed to contact Plaintiffs' Counsel and request that the check be reissued. (Id. at ¶ 13.3.) Any Settlement Funds remaining in the Client Trust Account ninety (90) days following the last scheduled mailing of checks will be forwarded to the Georgia Coalition Against Domestic Violence. (Id.)

Defendants will issue and mail a Form 1099 to each Plaintiff for amounts received by Plaintiffs under the parties' settlement yearly. (Id. at ¶ 13.4, § 16.)

## D. Proposed Settlement Allocations.

The amount of each Plaintiff's proposed settlement payment is based on the full damages Plaintiffs' Counsel calculated as described above (see *supra* pp. 3-4), pro-rated based on the total settlement amount less requested fees and costs.[9] The settlement provides for at least a $150 payment to each Plaintiff. (See Ex. F to Ex. 1.)[10] Based on this, and modified as discussed in footnote 10, the allocations range

[9] Exhibit F to the parties' settlement agreement lists the allocations assuming the full amount of fees and costs anticipated to be requested would be awarded. (See Ex. 1 at ¶¶ 15.1, 15.2.) In light of the fact that Plaintiffs' Counsel has not incurred the full amount of anticipated costs, they are requesting a lower amount. (See *infra* p. 18.) As a result, each Plaintiff's allocation has slightly increased; these allocations are attached as Exhibit 2 to the Prakash Decl. filed in support of this motion. (See Ex. 1 at ¶ 15.4 (allowing redistribution for lower fees and/or costs).)
[10] The parties' proposed settlement contains a typo in Paragraph 15.1, which lists a

from \$150 to \$49,089.99. (Ex. 2.)

Additionally, as discussed below, Plaintiffs are requesting that each Named Plaintiff be paid an incentive award of \$5,000 for their work on this case. (See *infra* p. 18.) Notably, the seven Named Plaintiffs in this action have contributed significantly to the litigation and settlement of the case. Each of the Named Plaintiffs assisted Counsel in the preparation of the Complaint, sat for one to three depositions, provided detailed discovery responses, and attended the full-day settlement conference in October 2011.[11] (Prakash Decl. at ¶ 6.) The Named Plaintiffs were also involved in the settlement negotiations and discussions following the October conference. (Id.) These awards are contemplated in the parties' proposed settlement agreement and Defendants do not oppose them. (Ex. 1 at ¶ 14.6.)

## E. Notice and Release of Claims.

The parties agreed on the form and manner of notifying Plaintiffs of this proposed settlement. (Id. at Exs. A-D.) The notices informed each Plaintiff of the above—including the schedule of payments, total settlement allocation each Plaintiff would receive—and that proposed attorneys' fees, litigation expenses, and

---

floor of \$1,000. (Ex. 1 at ¶ 15.1.) The \$150 floor, however, was the number applied to calculate allocations.

[11] Named Plaintiff Kimberly Jordan was unable to attend the settlement conference in person as she resides out-of-state. She was available by telephone. (Prakash Decl. at ¶ 6.)

administration costs had already been deducted from their listed settlement allocations and are subject to Court approval. (Id.) Additionally, the notice informed each Plaintiff that they would have 45 days from the date the notices were mailed to accept or reject settlement. (Id.) The notice informed Plaintiffs that—subject to Court approval—they would not release any claims if they rejected the settlement; their claims would be dismissed with prejudice and money donated to the *cy pres* organization if they did not respond to the settlement; and their claims would be dismissed with prejudice and that they would be paid if they accepted settlement by timely returning a claim form. (Id.)[12]

## F. Attorneys' Fees, Litigation Expenses, and Settlement Administration Costs.

The parties agreed that Plaintiffs could make a request for Attorneys' Fees not to exceed five hundred sixteen thousand six hundred and sixty-seven dollars ($516,667)[13] and that any amount awarded would be paid from the total settlement fund. (Ex. 1 at ¶ 14.3.) Similarly, the parties agreed that Plaintiffs could request reimbursement of litigation expenses incurred in this case in an amount not to exceed $75,000 and any awarded amounts would be paid from the total settlement

---

[12] Opt-in Plaintiffs were informed that they would only be releasing the claims alleged in this case, and the Named Plaintiffs were informed that they would be releasing all claims they had against Defendants. (Id.) Defendants agreed to release all claims they had against the Named Plaintiffs. (Id. at ¶ 10.11.)

[13] One-third or thirty-three and one-third percent of the $1.55MM settlement.

11

fund. (Ex. 1 at ¶ 14.5.) The parties also agreed that Plaintiffs could request reimbursement for the costs of settlement administration in an amount not to exceed $10,470 and any awarded amounts would be paid from the total settlement fund. (Ex. 1 at ¶ 14.4.) The $10,470 amount was the lower of two administration estimates Plaintiffs' Counsel obtained from two reputable settlement administrators. (Ex. 1 at ¶14.4.)

Notably, Plaintiffs' Counsel have, to date, incurred $947,435 in attorneys' fees[14] and, having taken this case on a contingency fee basis, have not received any compensation for the time and resources spent litigating and settling this matter. (Prakash Decl. at ¶ 7(summarizing Counsel's work on this case).) Moreover, Plaintiffs' legal services agreement informed Plaintiffs that Plaintiffs' Counsel would request 33 and 1/3 % of any approved settlement for attorneys' fees plus costs advanced over the course of litigation.[15] (Id. at ¶ 8.) To date, Plaintiffs' Counsel have advanced $63,037.70 in litigation expenses. (Id. at ¶ 9 (summarizing expenses advanced over the course of litigation).) Additionally, in administering the Notice and Claim Form process discussed below, Plaintiffs' Counsel have incurred $5,719.80 in settlement administration expenses and anticipate spending

---

[14] Plaintiffs are happy to provide detailed reports of their attorneys' fees, litigation expenses, and administration costs at the Court's request.

[15] Although some Plaintiffs did not return legal services agreements, they did return consent forms, as did all Plaintiffs, choosing to join this case and to be represented by Plaintiffs' Counsel. (Prakash Decl. at ¶ 8.)

this amount and more to conclude the settlement administration process by issuing and mailing settlement checks over the seven payment cycles contemplated by the settlement. (Id. at ¶ 10 (summarizing settlement administration efforts to date and those anticipated to occur following approval).)

## V.     SUMMARY OF THE NOTICE AND CLAIM FORM PROCESS.

Per the parties' proposed settlement agreement, Plaintiffs' Counsel mailed the settlement notice to the Named and Opt-in Plaintiffs in this case on March 20, 2012. (Id. at ¶ 11.) As of the May 4, 2012 acceptance and rejection deadline, 73 of these individuals had accepted the settlement by sending back a signed Claim Form. (Id.)[16] Six (6) Opt-in Plaintiffs failed to return a Claim Form, and **none** of the Named or Opt-in Plaintiffs have rejected the settlement or otherwise objected to the provisions described in the Notice. (Id.)

## ANALYSIS

## I.     STANDARD FOR APPROVAL OF SETTLEMENT OF FLSA COLLECTIVE ACTION.

FLSA rights cannot be waived; thus, settlement of private actions for back wages pursuant to 29 U.S.C. § 219(c) must be approved by the district court. Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982.) The

---

[16] Copies of the returned Claim Forms are attached as Exhibit 3 to the Prakash Decl. Additionally, one claim form was received nearly two weeks after the May 4 deadline and, per the parties' agreement, will not be honored as timely.

decision to approve settlement of an FLSA collective action lies within the trial court's discretion. See id. at 1350. In order to approve a settlement proposed by an employer and employees, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. Id. at 1355. If a settlement in an FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Id. at 1354. Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." Id. Settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context." Id.

## II.   THIS LITIGATION PRESENTED BONA FIDE DISPUTES.

This litigation involved multiple disputed issues. This Court has already resolved one of the issues, the question of whether Plaintiffs are employees under the FLSA. (ECF No. 287.) However, Defendants contest that decision and have requested permission to file an interlocutory appeal. Should litigation continue, that issue would have to be resolved, as would the issues of Plaintiffs' retaliation claims, Defendants' affirmative defenses, and the extent of damages owed to the Plaintiffs. All of this supports the conclusion that this settlement is not "a mere

14

waiver of statutory rights brought about by an employer's overreaching." Lynn's Food Stores, 679 F.2d at 1354. Rather, there are outstanding *bona fide* disputes in this case and the parties' settlement resolves those disputes.

## III. THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE COMPROMISE.

The proposed individual settlement allocations offered to each Plaintiff are based on her (1) length of employment; (2) hours worked per week; (3) fines paid per week; (4) house fees paid per week; and (5) "tip outs" paid per week and then pro-rated based on the total settlement amount, less requested fees, litigation expenses, settlement administration costs, and incentive awards. The five factors used to determine allocations are representative of the claims at issue and, in fact, are the factors Plaintiffs would use to prove damages if litigation were to continue. This method of allocation has been determined fair and reasonable in the context of FLSA lawsuit and should be so determined here as well. See e.g., Rotuna v. West Customer Management Group, LLC, No. 4:09CV1608, 2010 WL 2490989 at *6 (N.D. Ohio June 15, 2010) ("The Court approves the method of calculation and proposed distribution of settlement payments as fair and equitable. The total Settlement Payment, after deduction of the Service Awards to the Representative Plaintiffs and attorneys' fees and expense reimbursements to Class Counsel and the Class Administrator, is to be distributed to the Class Members, which are to be

15

calculated on a proportional basis based on the individuals' relevant workweeks and shifts during the Calculation Period, according to payroll information maintained by Defendant and provided to Class Counsel....").[17]

Moreover, the proposed settlement provides each Plaintiff with substantive compensation for the release of her FLSA claim, and the compromise between the total settlement amount and the amount Plaintiffs' Counsel determined as total unliquidated damages is reasonable in light of the risks of continued litigation. Settling this case now avoids increasing costs, as well as other risks associated with continued litigation. Specifically, the remaining disputed issues would have required further discovery, detailed motion practice, and potentially a trial and appeals. Further, if Defendants ultimately prevailed on their offset theory or view of damages, then Plaintiffs could be faced with monetary recovery lower than that of the present settlement. Likewise, if Plaintiffs ultimately prevailed on all outstanding issues, Defendants could be faced with an even more significant obligation to pay than they are faced with under this settlement and with increased

---

[17] Here, because Defendant's records of entertainers' work hours and amounts paid are incomplete, Plaintiffs relied on their own good faith estimates. This method of allocating funds was the most practicable and is consistent with established wage and hour practice outside the context of settlement. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946) (allowing good-faith employee estimates in solving the problem of how an employee can prove damages when the employer fails to keep the accurate records).

costs and attorneys' fees.[18] While the parties firmly believe in their respective positions, they also understand that either outcome was possible. The complexity, expense and likely duration of future litigation of this matter weighs heavily in favor of finding that the settlement is a reasonable resolution of a *bona fide* dispute. See Wingrove v. D.A. Technologies, Inc., 1:10-CV-3227-HLM, 2011 WL 7324219 at \*2 (N.D.Ga. Feb. 14, 2011) (determining FLSA settlement fair and reasonable, in part because "The parties each faced litigation risk. Specifically, plaintiffs faced the prospect of failing to convince a jury to award any damages, or of obtaining a reduced amount of damages. Defendant's risk was that a jury would credit plaintiffs' allegations in full and award the full amount of damages sought. Moreover, defendant is operating at a monetary loss and undergoing a liquidation and sale of assets.") (internal brackets and citations omitted); see also Officers for Justice v. Civil Service Com'n of City and County of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982) (Rule 23 class action) "Ultimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made."); In re

---

[18] In that vein, continued litigation also presents both parties with the possibility that Defendants' financial condition could deteriorate and may leave no monetary recovery for Plaintiffs even if they ultimately obtained a judgment from the Court or at trial.

17

Corregated Container Antitrust Litig., 659 F.2d 1322, 1325 (5th Cir. 1981) (Rule 23 class action) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

For these reasons, the parties' proposed settlement should be approved.

## IV.   THE REQUESTED ATTORNEYS' FEES, LITIGATION EXPENSES, ADMINISTRATION EXPENSES, AND INCENTIVE AWARDS ARE REASONABLE AND SHOULD BE APPROVED.

Pursuant to the parties' proposed settlement agreement, Plaintiffs are requesting the following:

(1) Attorneys' fees in the amount of $516,667;

(2) Litigation expenses in the amount of $63,037.70;

(3) Settlement administration costs in the amount of $10,470; and

(4) Incentive awards in the amount of $5,000 for each Named Plaintiff.

These requests are reasonable and should be awarded as proposed.

### A. The proposed incentive awards to the Named Plaintiffs are reasonable and should be approved.

Here, under the terms of the settlement, in addition to their individualized *pro rata* distributions from the settlement fund, and subject to Court approval, the Named Plaintiffs will each receive an additional award of $5,000 in recognition of their service as Class Representatives. Notably, no Plaintiff nor any Defendant has

18

objected to these awards. Further, the combined amount of the awards to the Named Plaintiffs totals only a modest two (2%) percent of the total settlement amount. (See *supra* pp. 6 and 18.)

Most importantly, the Named Plaintiffs have conferred a substantial benefit on the settlement class by initiating the instant lawsuit, without which this settlement would not exist, to wit: participating in extensive discovery, and in settlement negotiations. (See *supra* p. 10.) Their actions are all the more considerable in light of the fact that, at the time the lawsuit was filed, all were still working at Club Onyx and allege they were fired for bringing this lawsuit. (See ECF Nos. 9 and 32.)

In light of the foregoing, the Court should award the $5,000 incentive payments to each Named Plaintiffs. See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (awarding named plaintiff recognition payment where named plaintiff sued employer and noting, "Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."); Heath v. Hard Rock Cafe Intern. (STP), Inc., 6:10-cv-344-orl, 2011 WL 5877506 at *4-5 (M.D.Fla. Oct. 28, 2011) ("Courts have... awarded incentive fees to named plaintiffs who establish that they faced substantial risks by participating in the

19

lawsuit and incurred actual expenses during the litigation."); see also Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (awarding $5,000 incentive payment to each Named Plaintiff and stating, "Small incentive awards, which serve as premiums to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.").

## B. Plaintiffs' Counsel's fees and litigation expenses are subject to private agreements with their clients and should be approved.

Unlike a Rule 23 class, where class members are part of a certified class unless they decide to opt-out, each Plaintiff in this FLSA collective action affirmatively chose to join the case. In so doing, they chose to be represented by Plaintiffs' Counsel. The legal services agreements with these Plaintiffs expressly provide for payment of attorneys' fees to counsel in the amount of one-third of any settlement plus costs advanced. (See *supra* pp. 12-13.) Moreover, each Plaintiff was advised through the settlement notice that attorneys' fees and costs were being paid from the total settlement amount, were presented of their resultant settlement allocation, and none has objected. (Id. at pp. 10-13.) Based on this, the Court should honor those private agreements and approve the payment of attorneys' fees on a contingency basis. See Scott v. Memory Co., LLC, 3:09-cv-290-SRW, 2010

20

WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney).

Additionally, Plaintiffs' Counsel's requested fee award of one-third of the total settlement is a commonly awarded percentage in FLSA settlements such as this one. See e.g., Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (33.3% of the total settlement amount is appropriate in an FLSA action); Faican v. Rapid Park Holding Corp., 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in an FLSA action).

Further, Plaintiffs' Counsel is requesting $516,667-- significantly less than the $947,435 they have spent in this case. (See *supra* pp. 12.) Indeed, Plaintiffs' Counsel have aggressively litigated this case, expending considerable time and resources. Counsel had engaged in extensive discovery and motion practice, including but not limited to, conditional certification of the collective, document review, taking and defending of multiple depositions requiring travel, cross-motions for partial summary judgment, and detailed damages analysis for the collective. To date, Plaintiffs' Counsel have not been paid for their work. In light of the above, the payment Plaintiffs' Counsel now seek—$516,667— is reasonable and should be awarded.[19]

---

[19] FLSA-only settlements do not require the typical Rule 23 attorneys' fees analysis. See Campanelli v. Hershey Co., No. C 08-1862- BZ, 2011 WL 3583597

Finally, Plaintiffs' Counsel's private agreements with their clients provide for reimbursement of litigation costs in addition to payment of attorneys' fees. (See *supra* pp. 12-13.) To date, Plaintiffs have incurred $63,037.70 in costs. (See id.) Plaintiffs' Counsel incurred these costs on behalf of Plaintiffs and, per their fee agreements with Plaintiffs, now seek reimbursement. The Court should honor Plaintiffs' Counsel's private agreements with its clients and approve the reimbursement of the requested $63,037.70 in costs through this settlement.

## C. Plaintiffs' Counsel's requested costs of settlement administration are reasonable and should be approved.

Plaintiffs' Counsel also funded settlement notice administration in this matter. This process involved determining individual settlement allocations, preparation of individual notices and claim forms, printing and mailing of notice, fielding of Plaintiffs' questions regarding settlement, and collection of claim forms. (See *supra* pp. 12-13.) Plaintiffs' Counsel will also carry the future costs of the settlement if approved by the Court. These future costs will include the printing and mailing of seven cycles of checks to participating Plaintiffs, as well as the tracking of un-cashed checks, and Plaintiffs' addresses for mailing purposes.

---

at *1 (May 4, 2011 N.D. Cal.). However, if the Court decides to apply a different standard to its review of Plaintiffs' Counsel's fees, Plaintiffs' Counsel requests leave to submit additional briefing and itemized records of fees and costs incurred to date.

(See id.) Notably, Plaintiffs' Counsel's request is in line with and lower than costs that Plaintiffs could have incurred had a third-party administrator been used. (See *supra* p. 12.) For these reasons and the lack of any objections or proposed settlement allocations, the Court should award Plaintiffs' requested award of $10,470 for the costs of settlement administration.

## CONCLUSION

The parties jointly and respectfully request that this Court approve the parties' settlement agreement and the distribution of the settlement fund to Plaintiffs and their Counsel as described above. For the reasons discussed above, the parties' settlement is fair and reasonable and should be approved.

Dated: May 17, 2012          NICHOLS KASTER, PLLP

s/E. Michelle Drake
Donald H. Nichols (GA Bar No. 450212)
E. Michelle Drake (GA Bar No. 229202)
Steven Andrew Smith (MN Bar No. 260836)
    *Admitted Pro Hac Vice*
Anna P. Prakash (MN Bar No. 0351362)
    *Admitted Pro Hac Vice*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 338-4878

and

23

CAMPANO & SPERLING
Jennifer K. Mason (GA Bar No. 42418)
3175 Shallowford Road
Chamblee, GA 30341
Work Phone (770) 458-4477
Fax (770) 458-7663

ATTORNEYS FOR PLAINTIFFS

Dated: May 17, 2012          SCHULTEN WARD & TURNER

s/Dean R. Fuchs
Susan Kastan Murphey (GA Bar No. 408498)
Dean R. Fuchs (GA Bar No. 279170)
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
Telephone (404) 688-6800
Fax (404) 688-6840

ATTORNEYS FOR DEFENDANTS

## CERTIFICATION PURSUANT TO L.R. 7.1D

The undersigned hereby certifies that the above memorandum was prepared

in Times New Roman, 14-point font in compliance with L.R. 5.1.

Dated: May 17, 2012          s/E. Michelle Drake
                             E. Michelle Drake

24