UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 1 8 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

Karenza Clincy, Jammie Parker,
Kiesha Pough, Kimberly Jordan,
Naturee Wells, Monica Leaphart,
and Summer Sales, Individually
and on behalf of others similarly
situated,

        Plaintiffs,

v.

Galardi South Enterprises, Inc.
d/b/a/ The Onyx, Galardi South
Enterprises Consulting, Inc.
d/b/a/ The Onyx, Pony Tail, Inc.
d/b/a/ The Onyx, Michael Kapp
and Jack Galardi.

        Defendants.

DECLARATION OF
ANNA P. PRAKASH

Court File No. 09-CV-2082 (RWS)

I, Anna P. Prakash, hereby declare the following:

1.     I am Plaintiffs' Counsel in the above matter.

2.     I submit this Declaration in Support of the parties' Joint Motion for Settlement Approval.

3.     In advance of mediation, Plaintiffs calculated their damages based on good faith estimates gathered from 73 of the Plaintiffs in the case. Specifically, the information gathered covered Plaintiffs' length of employment, hours worked per

week, fines paid per week, house fees paid per week and tip outs paid per week. Based on that information, Plaintiffs' Counsel then calculated the number of hours each Plaintiff would have worked during the class period. Each Plaintiff's weekly hours were then multiplied by the applicable minimum wage and each Plaintiff's total weekly payments were added to this number to arrive at total minimum wage damages. To ensure a conservative estimate Plaintiffs' Counsel then reduced the overall number by 10%. Using this methodology, the sum of all 80 Plaintiffs' unliquidated minimum wage damages total $3.1MM. Considering this, liquidated damages, retaliation damages, and fees and costs, Plaintiffs made a pre-mediation demand of $5.2 MM.

4. Following the settlement conference, the parties continued arms-length negotiations between counsel, exchanging settlement proposals and potential terms over the next few months.

5. On March 12, 2012, the parties finalized a proposed settlement agreement, which was fully executed on March 13, 2012.

6. Each of the seven Named Plaintiffs assisted Counsel in the preparation of the Complaint, sat for one to three depositions, provided detailed discovery responses, and attended the full day settlement conference in October 2011. Named Plaintiff Kimberly Jordan was unable to attend the settlement conference in person as she resides out of state, but was available by phone. All of

the Named Plaintiffs were involved in the settlement negotiations and discussions that followed the October conference.

7. Plaintiffs' Counsel have, to date, incurred $947,435 in attorneys' fees, and having taken the case on a contingency fee basis, have not received any compensation. Prior to the settlement being reached, Plaintiffs' Counsel had engaged in extensive discovery and motion practice, including but not limited to, conditional certification of the collective, administering notice and collecting consent forms from collective opt-in Plaintiffs, document collection from opt-ins, review of Defendants' produced documents, taking and defending of multiple depositions requiring travel, cross-motions for partial summary judgment, and detailed damages analysis for the collective.

8. Plaintiffs' legal services agreement informed Plaintiffs that Plaintiffs' Counsel would request 33 and 1/3% of any approved settlement for attorneys' fees plus costs advanced over the course of litigation. Although some Plaintiffs did not return legal services agreements, they did return consent forms, as did all Plaintiffs, choosing to join this case and to be represented by Plaintiffs' Counsel.

9. Plaintiffs' Counsel have advanced extensive litigation expenses throughout this case, such expenses totaling $63,037.70. These expenses have included, but are not limited to, initial case filing fee, admission fees, process server costs, court reporter and transcript costs, travel costs for depositions and

hearings, judicial notice printing and mailing costs, and legal research costs.

10. Plaintiffs' Counsel have also incurred $5,719.80 in settlement administration costs and anticipate spending this much again and more to conclude the process. In regards to settlement administration, Plaintiffs' Counsel have: (1) determined the total settlement allocation amounts for each Plaintiff; (2) prepared individualized Notices and Claim Forms for each Plaintiff; (3) printed and mailed the Notices and Claim Forms; (4) handled questions from Plaintiffs regarding settlement process; (5) updated addresses and re-mailed Notice when necessary; (6) collected and tracked timely Claim Forms. Future settlement administration tasks will include, but not be limited to: (1) determining each cycle's check amounts for participating Plaintiffs; (2) issuing and mailing of checks for seven cycles; (3) tracking un-cashed checks, stopping payment and re-issuing checks when necessary; (4) updating addresses and re-mailing checks when necessary.

11. Plaintiffs' Counsel mailed the settlement notice to the Named and Opt-in Plaintiffs in this case on March 20, 2012. As of the May 4, 2012 deadline, 73 Plaintiffs had accepted the settlement by sending back a signed claim form. Six Opt-in Plaintiffs failed to return a Claim Form and no Plaintiffs rejected the settlement or otherwise objected to the provisions described in the Notice. One Opt-in Plaintiff submitted a late Claim Form.

12. A true and correct copy of the following are attached hereto as

Exhibits:

**EXHIBIT 1:** Settlement Agreement;

**EXHIBIT 2:** Revised settlement allocations;

**EXHIBIT 3:** Claim Forms received by May 4 deadline.

The foregoing statement is made under penalty of perjury and is true and correct to the best of my knowledge and belief.

Dated: May 17, 2012                     s/Anna P. Prakash
                                        Anna P. Prakash